UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNLY R. BECKER, THE
BECKER TRUST DATED
MARCH 25, 1991,

                         NO. CIV. S-10-2799 LKK/KJN

    Plaintiffs,

  v.

                         O R D E R

WELLS FARGO BANK, N.A.,
WACHOVIA MORTGAGE
CORPORATION; DOES 1-20,

    Defendants.
                             /

    Plaintiff, proceeding pro se, moves for a preliminary injunction enjoining the foreclosure sale of three residential properties. For the reasons discussed below, plaintiff's motion is granted.

## I. BACKGROUND

**A.   Procedural Background**

    On September 15, 2010, Dennly Becker ("Becker") and the

////

////

1

Becker Trust Dated March 25, 1991 ("Becker Trust"),[1] proceeding pro se, filed a complaint against defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Wachovia Mortgage Corporation ("Wachovia"), and twenty Doe defendants in state court. This complaint concerned plaintiff's loans on nine residential properties. On October 15, 2010, Wells Fargo and Wachovia removed this action to federal court. On October 27, 2010, defendants moved to dismiss plaintiff's complaint. On November 4, 2010, plaintiff filed a motion for leave to file a first supplemental complaint pursuant to Fed. R. Civ. P. 15(d). Plaintiff attached his proposed supplemental complaint to the motion. On November 12, 2010, the Magistrate Judge denied plaintiff's motion on the ground that Fed. R. Civ. P. 15(d) is not the proper section of the rule from which plaintiff may amend his complaint. Rather, the Magistrate Judge instructed plaintiff to file and serve a first amended complaint on or before December 10, 2010 pursuant to Fed. R. Civ. P. 15(a). The Magistrate Judge also denied defendants' motion to dismiss without prejudice. On November 29, 2010, plaintiff filed his verified first amended complaint. This complaint appears to be virtually identical to the proposed supplemental complaint attached to plaintiff's November 4, 2010 motion.

On November 12, 2010, plaintiff filed a motion for a

---

[1] The court treats Becker and the Becker Trust as a singular plaintiff because, as discussed supra, Becker is the sole beneficiary of the Becker Trust.

preliminary injunction. Plaintiff seeks to enjoin foreclosure sales of three properties, which plaintiff represents are scheduled to occur on December 23, 2010.[2] The three properties are located at 865 Shelborne Drive, Tracy, CA ("Shelborne property"), 2416 Third Street, Lincoln, CA ("Third Street property"), and 1896 Larkflower Way, Lincoln, CA ("Larkflower property"). Pursuant to Local Rule 230(a), defendants' opposition to this motion was due on November 22, 2010. Defendants, however, failed to file their three page opposition until November 23, 2010. Defendants incorporated the arguments contained within their two page motion to dismiss, which was denied without prejudice, in their opposition. On November 29, 2010, plaintiff timely filed a reply brief, noting, <u>inter alia</u>, that defendants' opposition was not timely filed.

### B. Factual Allegations and Evidence

Plaintiff's First Amended Complaint ("FAC") is one hundred and thirteen pages long, and contains detailed factual allegations. Plaintiff also enumerates ten causes of action. Essentially, plaintiff alleges that he invested in nine residential properties. He obtained mortgages on all of these properties with Wachovia's predecessor. Currently, Wachovia owns the mortgages. Recently, Wells Fargo purchased Wachovia and continues to run Wachovia mortgage. After he lost his job,

---

[2] The Court declines to refer this motion alone to the Magistrate Judge due to the short time frame in which the Court must enter an order. All other pretrial motions remain referred to the Magistrate Judge.

Becker was not able to afford the mortgage payments on rental income and savings alone. Becker then alleges that he engaged in numerous communications with Wachovia agents to modify his loan payments. Subsequently, Wachovia and its owner, Wells Fargo, initiated foreclosure proceedings on at least three of plaintiff's properties. Becker further alleges that defendants failed to follow California law during this process. Of particular note, Becker alleges that Wachovia's agents repeatedly asked for the same documentation and provided him with inconsistent information. The Court discusses below the factual allegations and evidence presented with respect to the three properties at issue in this motion.

On October 1, 2009, Becker stopped making his mortgage payments on the Shelborne property. FAC ¶ 28. Later that month, Becker was contacted by an agent of Wachovia, who, he alleges, referred him to Wachovia's loan counseling department to discuss loan modification. Id. at ¶ 29. In early November 2009, Wachovia agent Carl Saris ("Saris") asked Becker whether he could afford his payments on this loan and the Third Street and Larkflower property loans if they were reduced by $500. Id. at ¶ 31. Becker told Saris that he could make those reduced payments effective immediately. Id. Saris then represented that as soon as documentation he requested was received, Becker's loan modifications on all three loans would be modified to lower the monthly payments by $500 each per month. Id. Becker submitted documentation as requested by the loan counseling agent. Id. at

4

¶ 32. Later that month, however, Wachovia informed Becker that it would not modify his loans. Id. at ¶ 35.

In December 2009, Wachovia notified Becker that it intended to commence foreclosure on the Shelborne property. Id. at ¶ 39. Subsequently, Becker informed Wachovia to close his loan modification requests for all but the Shelborne property. In January 2010, Wachovia requested that Becker provide it with information concerning modification of the loan on the Shelborne property. Id. at 54. Becker, then engaged in numerous communications with Wachovia agents concerning the status of the loan modification request on the Shelborne property, provided documents to support the request. Id. at ¶¶ 57-86.

In April 2010, Becker decided to cease making payments on the Third Street and Larkflower properties. Id. at ¶ 87. He then requested loan modifications on all of his loans, including the six for which he was still making payments. Id. at ¶ 88. Later that month, Becker was informed that his request for the loan modification on the Shelborne property was denied because he was not an owner resident. Id. at ¶ 92. The next day, Becker received a Wachovia Forbearance Agreement, which stated "The purpose of this Agreement is to determine Borrower's capacity and willingness to make monthly mortgage payments. Upon completion of the payments referenced in this Agreement, Borrower will be required to (1) move forward with any necessary actions to result in payoff of the loan, (2) fully reinstate the loan and/or cure the default, or (3) you may choose to apply for

a permanent modification." Id. at ¶ 93. The Agreement required Becker to make three monthly payments, starting in June 2010, that were $360 more than the amount to which Saris had represented that his loan would be modified. Id. Becker then engaged in numerous communications with Wachovia agents in which he tried to determine whether it was necessary for him to enter the Forbearance Agreement and the status of his requests for loan modification. Id. at ¶¶ 94-101. He received some conflicting and otherwise confusing information. Id. Additionally, Wachovia agents failed to respond to some of his communications. Id. Ultimately, Becker altered his income from his retirement funds in order to meet the income he was informed was necessary for the modification. Id.

In May 2010, Becker received a letter from Wachovia indicating that his loan modification file had been closed due non-receipt of documentation and information. Id. at ¶ 102. The letter indicated that Wachovia intended to move forward with collection efforts. Id. In response to this letter, Becker signed the Forbearance Agreement. Id. at 103. Becker also included a letter to Wachovia in which he expressed his belief that Wachovia was engaging in unfair business practices because it denied his request for a loan modification even though he adjusted his income to the levels Wachovia's agents indicated would be necessary to qualify for the modification. Id. The Forbearance Agreement was subsequently approved by Wachovia. Id. at 106. Around the same time, Becker was notified by Wachovia

1  that he was not entitled to any in-house loan modification
2  programs on the Shelborne property because he was not an owner
3  resident. Id. at 107. Becker was surprised by this letter
4  because Wachovia had advised him to apply for loan modifications
5  and because through all of his communications with Wachovia
6  about loan modification he was never informed that he could not
7  qualify, but rather that if he should provide proper
8  documentation and adjust his income to qualify. Id.
9       Later that month, Becker received notices of intent to
10 foreclose from Wachovia on the Third Street and Larkflower
11 properties. Id. at 112. The notices included information on loan
12 modification. Id. He subsequently received three more letters
13 from Wachovia encouraging him to seek loan modification on those
14 properties. Id. at 113-15. In June 2010, Becker sent Wachovia a
15 request for loan modification on the Third Street and Larkflower
16 properties along with documentary support of his current income.
17 Id. at 116. Several weeks later, plaintiff was informed by
18 Wachovia that the mortgages on the Third Street and Larkflower
19 properties would not be modified. Id. 124-25. Wachovia indicated
20 that they intended to commence foreclosure upon these properties
21 as well. Id. at 125.
22      After several attempts to speak with Keith Cardenas
23 ("Cardenas"), an employee with the Wachovia Office of the
24 President, whom Becker was instructed to call about his requests
25 for modifications of the loans on the Third Street and
26 Larkflower properties, Cardenas returned Becker's calls. Id. at

7

¶ 129. Cardenas indicated that he would be handling Becker's requests directly, and that he need not contact Wachovia Loss Mitigation or Loan Counseling. Id.

In July 2010, Becker received two letters from Wachovia concerning his loan on the Shelborne property. Id. at ¶ 142. He had made the three payments on the loan under the Forbearance Agreement. Id. at ¶¶ 109, 119, 132. While Becker made these payments early, according to the terms of the Forbearance Agreement, they were due on June 1, 2010, July 1, 2010, and August 1, 2010. Id. at ¶ 93. The final payment was sent on July 15, 2010. Id. at ¶ 132. The first letter was dated July 14, 2010, and thanked Becker for his participation in the temporary program and advised him that he could then apply for a permanent loan modification. Id. at 142. However, several days later, plaintiff received a Notice of Intent to Foreclose on the Shelborne property, which was dated July 22, 2010. Id. On July 28, 2010, Wachovia agent Lindsay Vasquez ("Vasquez") called Becker concerning his loan modification request on the Shelborne property. Id. at ¶ 146. During this call, Vasquez told Becker that a monthly payment of $1,800, a $500 reduction in his monthly payment, was acceptable to Wachovia. Id. Despite this commitment by Wachovia's agent, in October 4, 2010, Wells Fargo filed a Notice of Default on the Larkflower property. Id. at ¶ 168. A Notice of Default was also recorded on the Third Street property. See id. at ¶ 174.

Defendants have not presented any evidence in opposition to

plaintiff's motion for a preliminary injunction. Even though plaintiff's amended complaint was not filed before their opposition was due, nearly all of the relevant facts testified to above were part of plaintiff's original complaint, which "Wells Fargo and Wachovia are treating . . . as the operative one" in their opposition. Opposition at 2. Further, nowhere in defendants filings do they challenge the authenticity or veracity of plaintiff's averments. Thus, for purposes of this motion, the court considers the only evidence before it: plaintiff's verified first amended complaint and his declarations.

## II. STANDARD OF REVIEW FOR FED. R. CIV. P. 65 MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Resources Defense Council, Inc., ___ U.S. ___, 129 S. Ct. 365, 376 (2008) (internal citation omitted). When a court considers whether to grant a motion for a preliminary injunction, it balances "the competing claims of injury, . . . the effect on each party of the granting or withholding of the requested relief, . . . the public consequences in employing the extraordinary remedy of injunction," and plaintiff's likelihood of success. Id. at 374, 376-77 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982). In order to succeed on a motion for a preliminary injunction, the plaintiff must establish that "he is likely to succeed on the merits, that he is likely to suffer

1  irreparable harm in the absence of preliminary relief, that the
2  balance of equities tips in his favor, and that an injunction is
3  in the public interest." Winter, 129 S. Ct. at 374.
4      An even more stringent standard is applied where mandatory,
5  as opposed to prohibitory, preliminary relief is sought. The
6  Ninth Circuit has noted that although the same general
7  principles inform the court's analysis, "where a party seeks
8  mandatory preliminary relief that goes well beyond maintaining
9  the status quo pendente lite, courts should be extremely
10 cautious about issuing a preliminary injunction." Martin v.
11 International Olympic Committee, 740 F.2d 670, 675 (9th Cir.
12 1984). Thus, an award of mandatory preliminary relief is not to
13 be granted unless both the facts and the law clearly favor the
14 moving party and extreme or very serious damage will result. See
15 Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1979).
16 "[I]n doubtful cases" a mandatory injunction will not issue. Id.

### III. ANALYSIS

**A.   Irreparable Harm**

19     Plaintiff, as a matter of law, is likely to face an
20 irreparable harm in the foreclosure of his properties. See
21 Chetal v. American Home Mortg., No. C 09-02727 CRB, 2009 WL
22 2612312, at *2 (N.D. Cal. Aug. 24, 2009) (citing Cottonwood
23 Christian Ctr. v. Cypress Redevelopment Agency, 218 F. Supp. 2d
24 1203, 1230 (C.D. Cal. 2002); Edejer v. DHI Mortg. Co., No. C 09-
25 1203 PJH, 2009 WL 1684714, at *5 (N.D. Cal. Jun. 12, 2009)). If
26 an injunction does not issue plaintiff's properties will be

10

subject to a trustee sale later this month.

### B. Balance of Equities

The balance of equities tips sharply in support of plaintiff. While plaintiff stands to permanently lose his properties if a preliminary injunction does not issue, defendants would only experience a relatively short delay in earning income from the sale of plaintiff's property.

### C. Public Interest

The public interest favors preventing wrongful foreclosures given the adverse impact that foreclosures have on households and communities. Moreover, plaintiff has alleged a good faith effort to modify his loan, and payments made in reliance of a modification agreement. This element also favors plaintiff.

### D. Likelihood of Success on the Merits

Plaintiff brings numerous claims against defendants. The Court finds a likelihood of success on two of these claims to support enjoining foreclosure of the three properties. The Court, thus, does not address the merits of plaintiff's remaining claims.

#### 1. Fraud

The elements of a claim for intentional misrepresentation under California law are (1) misrepresentation (a false representation, concealment, or nondisclosure), (2) knowledge of falsity, (3) intent to defraud (to induce reliance), (4) justifiable reliance, and (5) resulting damage. <u>Agosta v. Astor</u>, 120 Cal. App. 4th 596, 603 (2004). Here, plaintiff has testified

11

1  that several specific agents of Wachovia represented to him that
2  he would qualify for loan modification. He identified the date
3  of the communication, whether the communication was oral or
4  written, and the parties to the communication. His testimony
5  concerning notifications from some Wachovia agents that no loan
6  modifications were available for non-owner resident loans
7  suggest that the agents who made the representations about
8  modification were aware, or should have been aware, of
9  Wachovia's policy. He has also testified that he relied on these
10 representations and suffered damages, including the upcoming
11 foreclosure sale of his properties. Defendants have presented no
12 argument in opposition to this claim. Thus, the Court finds, on
13 the evidence before it, that plaintiff has demonstrated a
14 likelihood of success on his fraud claim.

### 2. Breach of Contract

16     The Court must liberally construe a pro se plaintiff's
17 complaint "[b]ecause the pro se litigant is far more prone to
18 making errors in pleading than the person who benefits from the
19 representation of counsel." McGuckin v. Smith, 974 F.2d 1050,
20 055 (9th Cir. 1991) (internal quotations omitted). Further, a
21 plaintiff, whether represented by counsel or not, need not plead
22 the statute or other provision upon which he bases his claims.
23 Rather, all that is necessary is that he pleads facts sufficient
24 to support such claims. See Bell Atlantic Corp. v. Twombly, 550
25 U.S. 544, 555 (2007) (Complaint must "give the defendant fair
26 notice of what the . . . claim is and the grounds upon which it

12

rests.") (quoting Fed. R. Civ. P. 8(a)(2)).[3] While plaintiff does not specifically allege a breach of contract claim, he does allege facts that support such a claim. Specifically, he alleges that agents of Wachovia told Becker that they would modify his loans on the three properties at issue so long as he provided certain documents and information, Becker provided said information, and Wachovia nonetheless commenced foreclosure proceedings on the loans. Further, Becker signed a written contract, the Forebearance Agreement, that he complied with, and nonetheless during the time period covered by the Agreement, Wachovia commenced foreclosure proceedings on the Shelborne property.

   A cause of action for breach of contract includes four elements: (1) that a contract exists between the parties, (2) that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach. Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968); First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001). Here, Becker has testified that defendants entered into several oral and one written contract. He has further testified that he performed his duties (i.e. submitting

---

[3] At oral argument on this motion, counsel for defendants represented that plaintiff's claims essentially amount to violation of alleged oral contract or contracts. Thus, defendants have fair notice that plaintiff is bringing a breach of contract claim even though the claim is not explicitly enumerated in his complaint.

13

documentation, adjusting his retirement income, and making certain payments) under these contracts. Defendant failed to modify his loans by reducing the monthly fees by $500 each per month and failed to comply with the terms of the Forbearance Agreement by initiating foreclosure proceedings during the forbearance period. Plaintiff suffered damages, including harms to his retirement funds and pending foreclosure sales of his properties. These damages directly resulted from defendants' breach of their contractual duties. Thus, the Court finds that plaintiff has alleged a claim for breach of contract and, based on the evidence before it, has demonstrated a likelihood of success on that claim.[4]

### 3. Whether a Trust Must be Represented by Counsel

Two of the three properties at issue here are in the name of the Becker Trust Dated March 25, 1991. Becker is the trustee and the beneficiary of this trust. Defendants argue that a trust must be represented by counsel, but provide no case law or statutory support for this contention. "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes

---

[4] At oral argument, counsel for defendants argued that the deeds of trust on plaintiff's properties require loan modifications to be in writing. Defendants, however never presented the deeds of trust to the Court and, thus, the Court cannot consider them in this motion. Further, even if the deeds of trust enumerate such a prohibition, the prohibition would only bear on plaintiff's claims for breach of oral contracts, not his claim for breach of the forbearance agreement and for fraud.

14

therein." 28 U.S.C. § 1654. In <u>C.E. Pope Equity Trust v. U.S.</u>, 818 F.2d 696, 697 (9th Cir. 1987), the Circuit found that a trustee may not represent a trust pro se. However, the court specifically distinguished the position of a trustee to that of a beneficial owner of a trust. <u>Id.</u> Specifically, the court reasoned, "Because [the trustee] is not the actual beneficial owner of the claims being asserted by the [trust] (so far as one can tell from the record), he cannot be viewed as a 'party' conducting his 'own case personally' within the meaning of Section 1654." The Court of Appeals concluded that the right of self-representation is limited to where "one seeking to represent himself pro se is a person who by substantive law has the right sought to be enforced." <u>Id.</u> Courts in this district have interpreted <u>C.E. Pope Equity Trust</u> to stand for the principle that "the beneficial owner of the claim being asserted is the only person permitted to appear in propia persona . . . ." <u>Alpha Land Company v. Little</u>, 238 F.R.D. 497, 499 (E.D. Cal. 2006). The Court concurs in this interpretation, and finds that because Becker is the sole beneficiary of the Becker Trust, he may represent the trust pro se.

**E.   Bond**

Under Fed. R. Civ. P. 65(c), "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." Here, the costs and damages that would be

15

sustained by defendants are limited to a delay in holding the foreclosure sale on the properties. Defendants remain in possession of the notes and, if successful in this litigation, can reinstate foreclosure proceedings. While recognizing that defendants may have to pay some recording fees, ultimately their damages are limited to those of delay. Particularly in the current residential real estate market, these damages are relatively low. Thus, the Court finds that bond in the amount of $500 is appropriate.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) Plaintiff's motion for a preliminary injunction, ECF No. 14, is GRANTED.

(2) The foreclosure sales of the Shelborne property, the Third Street property, and the Larkflower property are ENJOINED.

(3) Plaintiff SHALL POST BOND in the amount of $500 within fourteen (14) days of the issuance of this order.

(4) Counsel for defendants is hereby ORDERED TO SHOW CAUSE in writing why sanctions should not issue in accordance with Local Rule 110, including a fine of $150, for his failure to timely file an opposition to plaintiff's motion. See also Fed. R. Civ. P. 41(b), Link v. Wabash R.R., 370 U.S. 626, 633 (1962). Counsel shall file a response to this order to show cause within fourteen (14) days of the issuance of this

```
1            order.
2       IT IS SO ORDERED.
3       DATED:   December 13, 2010.
4
5
6                              _____
                               LAWRENCE K. KARLTON
7                              SENIOR JUDGE
                               UNITED STATES DISTRICT COURT
```