1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DENNLY R. BECKER; THE
     BECKER TRUST DATED
12   MARCH 25, 1991,                         No. 2:10-cv-02799 LKK KJN PS

13              Plaintiffs,

14        v.

15   WELLS FARGO BANK, N.A.,
     INC.; WACHOVIA MORTGAGE
16   CORPORATION; DOES 1-20,           ORDER and FINDINGS AND
                                       RECOMMENDATIONS
17              Defendants.
     _____/
18

19        Dennly Becker ("Becker") and the Becker Trust Dated March 25, 1991 ("Becker

20   Trust") (collectively, "plaintiff"[1]), proceeding without counsel in this action, filed a verified First

21   Amended Complaint (the "FAC") on November 29, 2010.  (FAC, Dkt. No. 19.)

22        Currently pending before the undersigned are several motions filed by Defendants

23   Wells Fargo Bank, N.A. ("Wells Fargo"), and Wachovia Mortgage Corporation ("Wachovia")

24

25        [1]   The undersigned treats Becker and the Becker Trust as a singular plaintiff because, as
     discussed in the court's order dated December 13, 2010 (Dkt. No. 21), Becker is the sole
26   beneficiary of the Becker Trust.

                                          1

1   (collectively, the "defendants") attacking that pleading.  The pending motions are defendants'

2   jointly-filed Motion to Dismiss (the "MTD") the FAC pursuant to Federal Rule of Civil

3   Procedure 12(b)(6) (Dkt. No. 26), defendants' jointly-filed Motion to Strike plaintiff's pleading

4   (the "MTS") (Dkt. No. 27), and defendants' jointly-filed Request for Judicial Notice (defendants'

5   "RJN") (Dft's RJN, Dkt. No. 28).  Plaintiff filed oppositions to the MTD and the MTS.  (Dkt.

6   Nos. 41-42.)  Plaintiff also filed his own Request for Judicial Notice (plaintiff's "RJN").  (Pltf's

7   RJN, Dkt. No. 43.)[2]

8           The court heard oral arguments regarding these motions on its law and motion

9   calendar on March 3, 2011.  During that hearing, the undersigned also heard oral arguments on

10  another motion pending in this case.[3]  Plaintiff, who is proceeding without counsel, appeared on

11  his own behalf.  Attorney Gene Wu appeared on behalf of defendants.

12          The undersigned has considered the briefs, oral arguments, and the record in this

13  case and, for the reasons that follow, orders that defendants' MTD is granted.  Several of

14  plaintiff's claims are dismissed without prejudice.  Plaintiff shall have the opportunity to file an

15  amended pleading to remedy those deficient claims in accordance with the terms of this order.

16  The undersigned also recommends that several of plaintiff's claims be dismissed with prejudice.

17          The undersigned also orders that defendants' MTS is denied and that defendant's

18  RJN is denied in part and granted in part.  The undersigned orders that plaintiff's RJN is denied.

19  ////

20  ////

21  ////

22

23          [2] This matter was referred to the undersigned pursuant to Eastern District Local Rule
    302(c)(21).  (Dkt. No. 34.)

24          [3] Several motions are currently before the court, including Plaintiff's "Ex Parte Motion
25  For: 1) Order To Show Cause Why Defendants Should Not Be Held In Contempt And
    Sanctioned, 2) Order For Rescission of NOS, 3) Order For Written Instructions Stopping
    Foreclosure, and 4) Court Approval Of Lis Pendens" (plaintiff's "Lis Pendens Motion").  (Dkt.
26  No. 24.)  That motion is addressed in a separate order.

I.      BACKGROUND

        A.      Procedural History

        On September 15, 2010, plaintiff filed a complaint against the named defendants and twenty Doe defendants in state court.  (Dkt. No. 1-1.)  This complaint concerned plaintiff's loans on nine residential properties.  On October 15, 2010, Wells Fargo and Wachovia removed this action to federal court.  (Dkt. No. 1.)  On October 27, 2010, defendants moved to dismiss plaintiff's complaint.  (Dkt. No. 11.)

        Defendants' prior motion to dismiss was dismissed as moot, because on November 4, 2010, plaintiff requested leave to file a first supplemental complaint pursuant to Fed. R. Civ. P. 15(d) and attached his proposed supplemental complaint to the motion.  (Dkt. No. 13.)  On November 12, 2010, the undersigned denied plaintiff's motion on the ground that Fed. R. Civ. P. 15(d) is not the proper section of the rule from which plaintiff may amend his complaint and instructed plaintiff to file and serve a first amended complaint on or before December 10, 2010, pursuant to Fed. R. Civ. P. 15(a).  (Dkt. No. 15.)  The undersigned therefore denied defendants' motion to dismiss without prejudice as moot.  (Id.)

        On November 29, 2010, plaintiff filed his verified FAC.  (FAC, Dkt. No. 19.)  In the interim, plaintiff filed a motion for a preliminary injunction and the motion was granted.[4]  Plaintiff and defendants entered into a stipulation to extend time for defendants to respond to the FAC.  (Dkt. No. 22.)

        On January 13, 2011, defendants filed their MTD, MTS, and RJN and set those motions to be heard on February 17, 2011.  (Dkt. Nos. 26-28.)  On January 28, plaintiff filed an

_____

        [4]  On November 12, 2010, plaintiff filed a motion for a preliminary injunction.  (Dkt. No. 14.)  Plaintiff sought to enjoin foreclosure sales of three properties, which plaintiff represented were scheduled to occur on December 23, 2010.  The three properties were located at 865 Shelborne Drive, Tracy, CA ("Shelborne property"), 2416 Third Street, Lincoln, CA ("Third Street property"), and 1896 Larkflower Way, Lincoln, CA ("Larkflower property").  On December 13, 2010, Senior Judge Lawrence K. Karlton granted plaintiff's motion for a preliminary injunction (the "December 13th Order").  (December 13th Order, Dkt. No. 21.)

1    ex parte application for an order continuing that hearing to permit him more time to prepare

2    oppositions to defendants' motions.  (Dkt. No. 38.)  The undersigned continued the hearing for

3    14 days and reset the hearing date as March 3, 2011 and required plaintiff to file his oppositions

4    by February 17, 2011.  (Dkt. No. 39.)

5           On February 16, 2011, plaintiff filed an opposition to the MTD ("Oppo.").

6    (Oppo., Dkt. No. 41.)  That same day, plaintiff filed an opposition to the MTS.  (Dkt. No. 42.)

7    Plaintiff also filed his own RJN.  (Pltf's RJN, Dkt. No. 43.)  Defendants filed a reply in support

8    of their MTD (the "Reply").  (Reply, Dkt. No. 44.)  Defendants also filed a reply in support of

9    their MTS.  (Dkt. No. 45.)  As described above, the undersigned heard oral arguments on the

10   motions on March 3, 2011.  (Dkt. No. 47.)

11                B.     Plaintiff's allegations

12          The FAC is one hundred and thirteen pages long, contains numerous allegations

13   and enumerates causes of action for: (1) fraud; (2) violation of the Consumer Legal Remedies

14   Act, California Civil Code §§ 1750 et seq.; (3) violation of the Unfair Competition Law,

15   California Business and Professions Code §§ 17200 et seq.; (4) False Advertising; California

16   Business and Professions Code §§ 17500 et seq.; (5) violation of California Civil Code § 2943;

17   (6) wrongful foreclosure proceedings; (7) quiet title; (8) unfair debt collection practices (state and

18   federal law); (9) Racketeer Influenced and Corrupt Organizations ("RICO") violations; (10)

19   negligent misrepresentation and negligence.  (FAC at pp. 56-103.)

20          The following recitation of "facts" are all based upon allegations in plaintiff's

21   FAC.  Plaintiff's claims arise from his nine residential investment properties and loans secured

22   by those properties.  Plaintiff alleges that he obtained mortgages on these properties with

23   Wachovia's predecessor and that Wachovia and Wells Fargo now service and "claim[] to own"

24   his mortgages.  (Id. ¶¶ 21-22.)

25          After he lost his job, plaintiff became unable to afford mortgage payments and

26   decided to stop making mortgage payments on his investment Shelborne property.  (Id. ¶¶ 24,

28.)  On October 1, 2009, plaintiff stopped making his mortgage payments on the Shelborne property.  (Id. ¶ 28.)  Later that month, plaintiff was contacted by one of defendants' employees, who, he alleges, referred him to the loan counseling department to discuss loan modification.  (Id. ¶ 29.)  In early November 2009, defendants' employee Carl Saris ("Saris") asked plaintiff whether he could afford his payments on this loan and the Third Street and Larkflower property loans if they were reduced by $500.  (Id. ¶ 31.)  Plaintiff told Saris that he could make those reduced payments effective immediately.  (Id.)  Saris allegedly told plaintiff that his loans "could all be modified to lower the monthly payments for each by $500 per month.  Mr. Saris then verbally gave the plaintiff a list of documents that plaintiff would have to provide to WACHOVIA to receive the loan modifications.  Mr. Saris stated that once the documentation was received, the modification could be processed quickly."  (Id. ¶ 31.)

Plaintiff gathered and sent his financial documents in reliance on Saris's representation that the loans "could all be modified" and "processed quickly."  (Id. ¶ 32.)  But later that month, defendants informed plaintiff that his loans would not be modified.  (Id. ¶ 35.)  Thereafter, plaintiff continued to participate in the modification application process and continued to send requested documents, but no modification ever occurred.

While plaintiff participated in the drawn-out application process, he failed to make payments on his Shelborne property and defendants took steps to foreclose upon it.  (Id. ¶ 39.)  These foreclosure actions allegedly damaged plaintiff's credit score, and caused plaintiff to "lose credit worth $76,000."  (Id. ¶ 213.)  Plaintiff also alleges that he "intended to request loan modifications from" other financial institutions for seven of his other investment properties after obtaining the modifications that defendants represented "would occur quickly," but as the modifications never came, he never requested modifications from other financial institutions.  (Id. ¶ 214.)

In December 2009, defendants notified plaintiff that foreclosure proceedings would commence upon the Shelborne property.  (Id. ¶ 39.)  In January 2010, defendants

requested that plaintiff provide information required for a potential modification of the loan on the Shelborne property.  (Id. ¶ 54.)  Plaintiff, at the time already engaged in frequent communications with defendants' agents concerning the status of the loan modification request on the Shelborne property, again provided documents to support the request.  (Id. ¶¶ 57-86.)

In April 2010, plaintiff decided to cease making payments on the Third Street and Larkflower properties.  (Id. ¶ 87.)  He then requested loan modifications on all of his loans, including the six for which he was still making payments.  (Id. ¶ 88.)  Later that month, plaintiff was informed that his request for the loan modification on the Shelborne property was denied because he was not an owner-resident.  (Id. ¶ 92.)  The next day, plaintiff received a written Forbearance Agreement (the "Forbearance Agreement"), which stated:  "The purpose of this Agreement is to determine Borrower's capacity and willingness to make monthly mortgage payments. Upon completion of the payments referenced in this Agreement, Borrower will be required to (1) move forward with any necessary actions to result in payoff of the loan, (2) fully reinstate the loan and/or cure the default, or (3) you may choose to apply for a permanent modification."  (Id. ¶ 93.)  The Forbearance Agreement required plaintiff to make three monthly payments, starting in June 2010, that were $360 more than the amount to which Saris had represented that plaintiff's loan would be modified.  (Id.)  Plaintiff then engaged in numerous communications with defendants' agents in which he tried to determine whether it was necessary for him to enter the Forbearance Agreement and the status of his requests for loan modification. (Id. ¶¶ 94-101.)  He received some conflicting and otherwise confusing information, and defendants' agents failed to respond to some of his communications.  (Id.)

In May 2010, plaintiff received a letter from defendants indicating that his loan modification file had been closed due to non-receipt of documentation and information.  (Id. ¶ 102.)  The letter indicated that defendants intended to move forward with collection efforts.  (Id.)  Plaintiff alleges that after reading the letter and learning that defendants were indeed "proceeding with foreclosure," plaintiff signed the Forbearance Agreement.  (Id. ¶¶ 103, 216.)

1   He alleges, "since WACHOVIA was continually threatening to foreclose on the Shelborne

2   property, plaintiff decided to make the [forbearance] payments believing that after the final

3   payment WACHOVIA would honor its initial commitment to lower the Shelborne payment by

4   $500 per month."  (Id. ¶¶ 104, 217.)

5          When plaintiff returned the signed Forbearance Agreement to defendants, he also

6   included a letter to defendants in which he expressed his belief that defendants were engaging in

7   unfair business practices because they denied his request for a loan modification even though he

8   adjusted his income to the levels Wachovia's agents indicated would be necessary to qualify for

9   the modification.  (Id.)  The Forbearance Agreement was subsequently approved by defendants.

10  (Id. ¶ 106.)  Around the same time, plaintiff received a letter from defendants' "Executive

11  Mortgage Specialist," Kevin Kreis ("Kreis") informing plaintiff that he was not entitled to any

12  in-house loan modification programs on the Shelborne property because he was not an owner-

13  resident.  (Id. ¶¶ 107, 219.)  Plaintiff was surprised by this letter because defendants had advised

14  him to apply for loan modifications and because through all of his communications with

15  defendants about loan modification he was never informed that he could not qualify, but rather

16  that he should provide proper documentation and adjust his income to qualify.  (Id.)

17         Later in May 2010, plaintiff  received notices of intent to foreclose on the Third

18  Street and Larkflower properties.  (Id. ¶ 112.)  The notices included information on loan

19  modification.  (Id.)  He subsequently received three more letters from defendants encouraging

20  him to seek loan modification on those properties.  (Id. ¶¶ 113-15.)  In June 2010, plaintiff sent

21  defendants a request for loan modification on the Third Street and Larkflower properties along

22  with documentary support of his current income.  (Id. ¶ 116.)  Several weeks later, plaintiff was

23  informed by defendants that the mortgages on the Third Street and Larkflower properties would

24  not be modified.  (Id. ¶¶ 124-25.)  Defendants indicated that they intended to commence

25  foreclosure upon these properties as well.  (Id. ¶ 125.)

26         Plaintiff made payments under the Forbearance Agreement (Id. ¶¶ 109, 119, 132

7

1   (final payment made July 15, 2010).)  According to the terms of the Forbearance Agreement, the

2   payments were due on June 1, 2010, July 1, 2010, and August 1, 2010, but plaintiff made these

3   payments early.  (Id. ¶ 93.)  He sent the final payment on July 15, 2010.  (Id. ¶ 132.)

4          Following plaintiff's third and final payment made under the Forbearance

5   Agreement, plaintiff received a letter thanking him for his participation and informing him that

6   he "could now apply for a permanent loan modification."  (Id. ¶¶ 134, 226.)  Thereafter, plaintiff

7   received a Notice of Intent to Foreclose upon the Shelborne property.  (Id. ¶ 142.)  That Notice

8   was dated July 22, 2010, and it demanded payment of $18,045.79 by August 21, 2010, to prevent

9   foreclosure.  (Id. ¶¶ 141-42.)

10          Plaintiff appears to suggest that the July 22, 2010 Notice was a violation of the

11  Forbearance Agreement, but plaintiff does not formally plead a breach of contract.  He alleges

12  that he found the July 22, 2010 Notice of Intent to Foreclose confusing because "plaintiff had

13  paid the amounts required under the April 26, 2010 Forbearance Agreement.  The amounts paid

14  under the agreement were for June, July, and August . . . Plaintiff had made all payments through

15  August, it was not yet August and WACHOVIA was threatening to foreclose before the end of

16  August."  (Id. ¶ 142.)

17          Plaintiff also alleges that during multiple conversations during the modification

18  application process, he was told he did not qualify for modification because his income was too

19  low.  For instance, defendants' representative "Teo" allegedly told plaintiff that the loan

20  modification for Shelborne "was not approved because plaintiff's income was too low" and that,

21  in response to plaintiff's statement that "he could take money out of his Individual Retirement

22  Account (IRA)" to raise his income, Teo "told Plaintiff to reapply for the loan modification when

23  he had proof of his IRA income."  (Id. ¶ 42.)  Plaintiff alleges that, to try to correct for this

24  shortcoming in his modification package, plaintiff made an early withdrawal on his IRA

25  retirement funds (such that he was taxed) to raise his income.  Plaintiff alleges that "based on

26  Teo's representation"  (id. ¶ 191) and "because of Teo's statement [that plaintiff's income was

8

1  "too low"], plaintiff began withdrawing $2000 per month from his IRA." (Id. ¶ 101.)  On

2  reapplying for modification, however, he was told his income was too high. (Id. ¶¶ 190-91.)

3  II.    LEGAL STANDARDS

4          A.    Motion to Dismiss

5          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

6  challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JP Morgan Chase

7  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

8  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

9  plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see

10  also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a

11  motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

12  to state a claim to relief that is plausible on its face.'" Coto Settlement v. Eisenberg, 593 F.3d

13  1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim

14  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

15  reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v.

16  Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at

17  1949).  The court accepts all of the facts alleged in the complaint as true and construes them in

18  the light most favorable to the plaintiff. Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).

19  The court is "not, however, required to accept as true conclusory allegations that are contradicted

20  by documents referred to in the complaint, and [the court does] not necessarily assume the truth

21  of legal conclusions merely because they are cast in the form of factual allegations." Paulsen,

22  559 F.3d at 1071 (citations and quotation marks omitted).

23          The court must construe a pro se pleading liberally to determine if it states a claim

24  and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

25  opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See

26  Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Balistreri v. Pacifica

1   Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally

2   construed, particularly where civil rights claims are involved").  In ruling on a motion to dismiss

3   pursuant to Rule 12(b), the court "may generally consider only allegations contained in the

4   pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

5   Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

6   quotation marks omitted).

7                    B.      Motion to Strike

8                    Rule 12(f) of the Federal Rules of Civil Procedure states that a court "may strike

9   from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

10  matter."  "Motions to strike are disfavored, and the remedy of striking a pleading should

11  generally be used only when necessary to discourage parties from raising allegations that are

12  completely unrelated to the relevant claims and when the interests of justice so require."  Serpa v.

13  SBC Telecomms., Inc., No. C 03-4223 MHP, 2004 WL 2002444, at *3 (N.D. Cal. Sept. 7, 2004)

14  (unpublished) (citing Augustus v. Board of Pub. Instruction, 306 F.2d 862, 868 (5th Cir. 1962));

15  see also Fogerty v. Fantasy, Inc., 984 F.3d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by

16  Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994) ("The function of a 12(f) motion to strike is to

17  avoid the expenditure of time and money that must arise from litigating spurious issues by

18  dispensing with those issues prior to trial . . . .")

19                    "Rule 12(f) does not authorize a district court to strike a claim for damages on the

20  ground that such damages are precluded as a matter of law."  Whittlestone, Inc. v. Handi-Craft

21  Co., 618 F.3d 970, 971 (9th Cir. 2010).  The court noted that courts may not resolve disputed and

22  substantial factual or legal issues in deciding a motion to strike.  Id. at 973.  "Motions to strike

23  are generally not granted unless it is clear that the matter to be stricken could have no possible

24  bearing on the subject matter of the litigation."  LeDuc v. Kentucky Cent. Life Ins. Co., 814 F.

25  Supp. 820, 830 (N.D. Cal. 1992).  Granting a motion to strike may be proper if it will make trial

26  less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion

10

1  of the issues.  <u>Fantasy</u>, 984 F.2d at 1527-28;  <u>Travelers Cas. and Sur. Co. of America v.</u>

2  <u>Dunmore</u>, No. CIV. S-07-2493 LKK-DAD, 2010 WL 5200940, at *3 (E.D. Cal. Dec. 15, 2010)

3  (unpublished) (same).  As the moving party, defendant bears the burden on its motion to strike

4  and the standard for granting such a motion is high.  <u>Willis v. Mullins</u>, No. CIV-F-04-6542 AWI

5  LJO, 2006 WL 2792857, at *1 (E.D. Cal. Sept. 28, 2006) (unpublished).

6          C.     Request for Judicial Notice

7          In ruling on a motion to dismiss, the court may consider matters which may be

8  judicially noticed pursuant to Federal Rule of Evidence 201.  <u>E.g.</u>, <u>Isuzu Motors Ltd. v.</u>

9  <u>Consumers Union of U.S., Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).  Rule 201 permits a

10  court to take judicial notice of an adjudicative fact "not subject to reasonable dispute" because

11  the fact is either: "(1) generally known within the territorial jurisdiction of the trial court or (2)

12  capable of accurate and ready determination by resort to sources whose accuracy cannot

13  reasonably be questioned."  Fed. R. Evid. 201(b).  The court can also take judicial notice of

14  matters of public record, such as pleadings in another action and records and reports of

15  administrative bodies.  <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190 (9th Cir. 1988).

16  III.    DISCUSSION

17          A.     Defendants' Motion to Dismiss

18             1.    Fraud Claim

19          Defendants argue that plaintiff's first claim for fraud should be dismissed for

20  several reasons: (1) as pleaded, the fraud claim is preempted by Home Owners Loan Act

21  ("HOLA") (12 U.S.C. § 1463(a), § 1464(a); 12 C.F.R. § 560.2) (MTD at 5-6), (2) the alleged

22  promise did not create a duty to modify plaintiff's loan (MTD at 9-10), (3) the alleged promise

23  depends on an oral agreement barred by the statute of frauds and lacks new consideration (MTD

24  at 10-11), (4) a breach of an alleged agreement to modify a loan does not amount to fraud (MTD

25  at 12), (5) plaintiff fails to identify individuals who made promises without the intent to perform

26  and therefore fails to plead the elements of fraud with specificity (MTD at 12-13), and (6) the

alleged promise was a statement of future events and is an opinion rather than actionable fraud

(MTD at 13-14.)  Some of defendants' arguments are well-taken, and accordingly, for the reasons

stated below, plaintiff's fraud claim is dismissed.  Plaintiff shall have the opportunity to amend

his pleading to plead facts supporting each element of fraud, with particularity.

i)  HOLA and Plaintiff's Fraud Claim

Defendants argue that the various statutory and common law claims plaintiff

alleges are preempted by HOLA.  Plaintiff has not disputed that defendants are lenders embraced

by HOLA.  Some of defendants' arguments are well-taken.  While defendants are correct that

HOLA preempts some of plaintiff's claims, however, the undersigned cannot conclude at this

time that HOLA preempts all aspects of plaintiff's fraud claim.

Pursuant to HOLA, the Office of Thrift Supervision ("OTS") was granted the

power, "under such regulations as [it] may prescribe – to provide for the organization,

incorporation, examination, operation, and regulation of . . . Federal savings associations. . . ." 12

U.S.C. § 1464(a).  The OTS is thus authorized "to prescribe a nationwide system of operation,

supervision, and regulation which would apply to all federal associations."  Glendale Fed. Sav. &

Loan Ass'n v. Fox, 459 F. Supp. 903, 909 (C.D. Cal. 1978).  The OTS regulations are

"preemptive of any state law purporting to address the subject of the operations of a federal

savings association." 12 C.F.R. § 545.2.  The "OTS hereby occupies the entire field of lending

regulation for federal savings associations…" and a federal savings bank, "may extend credit as

authorized under federal law, including this part, without regard to state laws purporting to

regulate or otherwise affect their credit activities."  12 C.F.R. § 560.2(a).

The Ninth Circuit Court of Appeals has "described HOLA and its following

agency regulations as … so pervasive as to leave no room for state regulatory control. [B]ecause

there has been a history of significant federal presence in national banking, the presumption

against preemption of state law is inapplicable."  Silvas v. E*Trade Mortgage Corp., 514 F.3d

1001, 1004-05 (9th Cir. 2008).

The applicable regulations provide for HOLA preemption of state laws that purport to impose upon a federal savings bank any requirements regarding the "terms of credit, including . . . balance, payments do, or term to maturity of the loan;" "disclosure and advertising," and "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(4), (b)(9), and (b)(10).

However, HOLA's preemption of state laws affecting federal savings associations is not absolute. Section 560.2(c) carves out state laws that "only *incidentally* affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." 12 C.F.R. § 560.2(c) (emphasis added). The Ninth Circuit Court of Appeals has given further guidance with respect to whether a state law of general applicability is preempted by HOLA "as applied":

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b) [of 12 C.F.R. § 560.2]. If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Silvas, 514 F.3d at 1004-06 ("Section 560.2(c) provides that state laws of general applicability only incidentally affecting federal savings associations are not preempted."); accord DeLeon v. Wells Fargo Bank, N.A., 729 F.Supp.2d 1119, 1125 (N.D. Cal. 2010).

Here, plaintiff's fraud claim does not arise from a "state law purporting to address the subject of the operations of a federal savings association" and is therefore not preempted at the "first step" of the analysis described in Silvas. Silvas, 514 F.3d at 1004-06.

Proceeding to the "next question," of whether the type of law in question "affects lending," at this stage the fraud claim does not appear to be preempted "as applied" in this particular case. See id. This determination is because Saris's alleged fraudulent representations

1    do not necessarily bear on "servicing" or "processing" of mortgages as a matter of law, and may

2    have only an "incidental" effect upon those practices.  Based on the FAC and plaintiff's

3    statements during the hearing, the primary factual basis for plaintiff's fraud claim appears to be

4    Saris's alleged representation that if plaintiff provided certain documents, his loans would

5    definitely be modified.   Plaintiff allegedly provided the documents, but never received any

6    modification.  Plaintiff alleges that his application for a modification repeatedly "fell out" of the

7    system such that he had to start over again, and alleges that he was repeatedly asked to provide

8    the same documents.  (FAC ¶ 63.)  Plaintiff also alleges he was fraudulently "induced" to sign

9    the Forbearance Agreement, as he "believed" that if he signed it, at the end of the forbearance

10   period he would receive a permanent modification.  (FAC ¶¶ 104, 217, 219, 245-46.)  Based on

11   the foregoing, it appears that plaintiff attempts to allege that he was promised a modification

12   even though defendants never intended to modify his loan or seriously consider his application.

13          In sum, the alleged fraud in this particular case is not a misrepresentation of loan

14   "disclosures," interest rates, or some other loan parameter that directly "affects lending."  Silvas,

15   514 F.3d at 1004-06.  Instead, plaintiff's fraud claim appears to arise from a more "general duty

16   not to misrepresent material facts," and therefore it does not necessarily regulate lending activity.

17   See DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-01390-LHK, 2011 WL 311376, at *1-11

18   (N.D. Cal. Jan. 28, 2011) (where plaintiff alleged that defendant "falsely represented" that a loan

19   modification would be given and that foreclosure would not occur while the modification process

20   was ongoing, fraud and unfair competition claims arising therefrom were not preempted by

21   HOLA); Biggins v. Wells Fargo & Co., 266 F.R.D. 399, 417 (N.D. Cal. 2009) (distinguishing

22   between allegations of inadequate disclosures of loan terms and affirmative, material

23   misrepresentations); Taguinod v. World Sav. Bank, FSB, No. CV 10-7864-SVW, 2010 WL

24   5185845, at * 4 (C.D. Cal. Dec. 2, 2010) (claims arising from defendant's allegedly deliberate

25   change to loan document after signing were not preempted by HOLA); Ibarra v. Loan City, No.

26   09-CV-02228-IEG, 2010 WL 415284, at *5 (S.D. Cal. Jan. 27, 2010) (holding that a

1   misrepresentation of material facts is not preempted by HOLA).

2       Although the court in DeLeon ultimately dismissed the misrepresentation claim,

3   the court explained that, on the pleaded facts, that claim was not preempted by HOLA.  DeLeon,

4   2011 WL 311376, at *7-8.  The court held that the claim was grounded in allegations that the

5   bank "represented (1) that the loan modification would be completed, and (2) that no foreclosure

6   sale would take place while the loan modification was pending."  Id.  The court held that

7   "because this claim is based on allegations of material misrepresentations and does not attempt to

8   impose substantive requirements regarding loan terms, disclosures, or servicing or processing

9   procedures, it is not preempted by HOLA."  Id.

10       On the other hand, defendants cite the Guerrero case to suggest that HOLA

11   preempts fraud claims arising from the modification process.  (MTD at 6, 10 (citing Guerrero v.

12   Wells Fargo Bank, N.A., 2010 U.S. Dist. LEXIS 96261 at *4, *9-10 (C.D. Cal. Sept. 14, 2010).)

13   In Guerrero, plaintiffs alleged fraud because a trustee's sale occurred despite ongoing loan

14   modification discussions, but the court dismissed the claim with prejudice on preemption

15   grounds.  Guerrero, 2010 U.S. Dist. LEXIS 96261 at *4, *9-10.  However, unlike the analysis in

16   DeLeon, the court in Guerrero engaged in relatively little discussion of the issue of preemption in

17   the loan modification context.  See id.; DeLeon, 2011 WL 311376, at *1-11.

18       Accordingly, and particularly based upon the reasoning in the recent DeLeon case,

19   the undersigned cannot conclude at this time that plaintiff's fraud claim is preempted as a matter

20   of law.  See DeLeon, 2011 WL 311376, at *1-11.  Such a conclusion would also be premature at

21   this time, because as described below plaintiff will receive leave to amend his fraud claim.  An

22   analysis of whether a claim is preempted "as applied" logically depends upon the nature of the

23   alleged facts supporting the claim.  Therefore, until plaintiff clarifies the allegations surrounding

24   defendants' alleged misrepresentations, the undersigned cannot conclude that any particular

25   misrepresentations necessarily amounted to "processing" or "servicing" mortgages as opposed to

26   affirmative or material misrepresentations with only an incidental connection to lending

1   operations.

2                    ii)   Defendants' Additional Challenges to the Fraud Claim

3              Defendants argue that their employees' alleged representations did not create a

4   "duty to modify" plaintiff's loan, that the "breach of an agreement to modify a loan does not

5   amount to fraud," that the "alleged promise depends on an oral agreement barred by the statute of

6   frauds," and that any such agreement "lacks new consideration," but these arguments are not

7   well-taken with respect to the fraud claim.  (MTD at 9-11.)  Defendants argue that plaintiff

8   alleges "nothing more than a purported oral agreement to modify a written loan agreement," and

9   that because no valid oral agreement could have been created as a matter of law, then no fraud

10  could have occurred.   (MTD at 10-11).  Defendants support these arguments by citing to cases

11  where promises to modify a loan were held to not amount to enforceable contracts to complete a

12  modification.  E.g., DeLeon, 729 F. Supp. 2d at 1127 (holding that expressions of "confidence"

13  that a loan would be modified did not "create a duty or contract to modify a loan"); Huerta v.

14  Ocwen Loan Servicing, Inc., No. C 09-05822 (HRL), 2010 U.S. Dist. LEXIS 17970, at *11-12

15  (N.D. Cal. Mar. 1, 2010) (same).  While expressions of "confidence" may be insufficient to

16  create a "duty" or "contract" to modify a loan, however, nothing indicates that those expressions

17  cannot form the basis of a fraud claim.  Defendants did not cite any authorities holding that a

18  fraud claim must be dismissed as a matter of law if the allegedly fraudulent statement could not

19  have created a contract or contractual duty.  In short, defendants' arguments blur the distinctions

20  between the breach, creation, and/or modification of a contract and the intentional tort of fraud,

21  and defendants have not demonstrated that a fraud claim cannot be maintained as a matter of law

22  here.  Absent authority to the contrary, plaintiff's fraud claim may lie even if his contract

23  claims(s) ultimately do not.

24              Defendants' contract-based challenges to the fraud claim are also premature.

25  From the current pleading, which does not include a formal "contract" claim, it is unclear

26  whether plaintiff intends to allege a breach of the Forbearance Agreement and/or a breach of an

16

1  actual oral "contract" regarding loan modification.  As described herein, plaintiff will be given

2  leave to plead facts supporting contract claims pertaining to the Forbearance Agreement and/or

3  any agreement to modify his loan(s).  After plaintiff amends his pleading to more clearly allege

4  his contract claim or claims, defendants will have the opportunity to advance these arguments.

5  Further, despite defendants' arguments that plaintiff's loan agreement prohibits oral

6  modifications, such prohibition would only bear on plaintiff's claims for breach of oral contracts,

7  not necessarily a claim for fraud (or for breach of the Forbearance Agreement).

8       Defendants also argue that plaintiff fails to identify individuals who made

9  promises without intent to perform and therefore fails to plead the elements of fraud with

10  specificity (MTD at 12-13), and argue that the alleged promise was a statement of future events

11  and is an opinion rather than actionable fraud (MTD at 13-14.)  These arguments are well-taken.

12  As pleaded, the nature of the alleged fraud is unclear.

13       To determine if the elements of fraud have been sufficiently pleaded, the court

14  looks to state law.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009).  In

15  California, the elements of fraud are: (1) misrepresentation; (2) knowledge of falsity (scienter);

16  (3) intent to defraud (i.e., intent to induce reliance); (4) justifiable reliance; and (5) resulting

17  damage.  Id.  Further, fraud must be pleaded with particularity.  Fed. R. Civ. P. 9(b).  Vague or

18  conclusory allegations are insufficient to satisfy Rule 9(b)'s "particularity" requirement.  E.g.,

19  Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).  To comply with

20  Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular

21  misconduct that is alleged to constitute the fraud claim so that they can defend against the claim

22  and not just deny that they have done anything wrong.  Bly-Magee v. California, 236 F.3d 1014,

23  1019 (9th Cir. 2001).  Rule 9(b) requires plaintiffs to differentiate between the conduct of each

24  defendant and "inform each defendant separately of the allegations surrounding his alleged

25  participation in the fraud."  Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th. Cir. 2007).  In a

26  fraud action against a corporation, a plaintiff must "allege the names of the persons who made

the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Tarmann v. State Farm Mut. Auto Ins. Co., 2 Cal. App. 4th 153, 157 (1991).

Plaintiff's allegations of fraud appear largely premised on Saris's alleged representations to him on November 4, 2009. (FAC ¶ 31.) Fraud must be pleaded with particularity, and although the FAC spans over one hundred pages, plaintiff's fraud claim lacks particularity. For instance, the FAC is internally contradictory regarding Saris's alleged representations to plaintiff. For instance, in some paragraphs, the FAC indicates that Saris told plaintiff his loans "*could be*" modified after plaintiff provided certain documents. (See FAC ¶ 31 ("loans could all be modified" and "modification could be processed quickly"); ¶ 94 ("loans could be quickly modified"); ¶ 187.) In other paragraphs, the FAC indicates that Saris told plaintiff his loans "*would be*" modified. (FAC ¶ 101 (". . . told by Mr. Saris that plaintiff's financial hardship would allow WACHOVIA to modify . . . ."); ¶ 104 (". . . the original $500 per month reduction that plaintiff was told he would receive . . . ."); ¶ 213 ("Plaintiff relied on WACHOVIA representations that his loans would be modified . . . .").) Plaintiff also conclusorily alleges that "WACHOVIA made plaintiff a promise it never intended to keep." (FAC ¶ 246.)

In alleging fraud, there is an obvious difference between a statement that loan modification "could" happen, and, on the other hand, representing that loan modification "would" happen. The first is a statement of opinion, the second is a statement of fact that is capable of being fraudulently misrepresented. (E.g., Neu-Visions Sports v. Soren/McAdam/Bartells, 86 Cal. App. 4th 303, 307 (2000) (alleged misrepresentations about value of property to be used to obtain loan and whether lessor would have clear title at time of financing were opinions about future events). Presently, plaintiff's fraud allegations are inconsistently pleaded with respect to whether his loan merely "could be" modified versus whether it definitely "would be" modified. Therefore, the FAC fails to particularly plead facts supporting the

18

1  "misrepresentation" element of fraud.  See e.g., Garcia v. Ocwen Loan Servicing, LLC, No. C

2  10-0290 PVT, 2010 WL 1881098, at *2 (N.D. Cal. May 10, 2010) (dismissing negligent

3  misrepresentation claim with leave to amend, because "[t]he only allegations of 'untrue' facts

4  appear to be those in Paragraphs 36 through 42 that 'Defendant and or its agents agreed to

5  continue working for a loan modification that would be approved, which would allow Plaintiff to

6  keep and save his home," and various other representations regarding approval of his loan

7  modification, lower interest rate, monthly payments and repayment plan . . . [A]ll of the alleged

8  misrepresentations involve promises regarding future events rather than representations of past or

9  existing facts.")  As pleaded, then, Saris's alleged representation regarding plaintiff's potential

10  modification is contradictory and the claim is deficient.

11           Plaintiff's allegations of fraud with respect to representations made regarding the

12  Forbearance Agreement and his early IRA withdrawals are also deficient as pleaded.  Plaintiff

13  fails to allege a specific representation by defendants that he would definitely receive a

14  modification if he signed the Forbearance Agreement, or a specific representation that plaintiff

15  would definitely receive a modification if he were able to raise his income by withdrawing from

16  his IRA.  Equally deficient are plaintiff's allegations that, because he was given directly-

17  conflicting information (i.e. that his modification was denied because his income was "too low"

18  and then, after he made IRA withdrawals, denied because his income was "too high"), someone

19  must have committed fraud.  (FAC ¶¶ 190-91 ("Both agents should know the criteria for loan

20  modifications.  Thus, one agent made a fraudulent statement.").)  This allegation is conclusory

21  and does not support a claim for fraud.   The same is true with respect to the allegation that

22  "either Mr. Kreis or the WACHOVIA person who originated the Forbearance Agreement acted

23  fraudulently."  (FAC ¶ 219.)

24           The FAC also lacks specific facts supporting either an "intent to induce reliance"

25  or a "knowledge of falsity," and both are elements required to properly plead a fraud claim.  See

26  Kearns, 567 F.3d at 1126.  Nowhere does the FAC allege that Saris (or anyone else employed by

defendants) both knew that a false statement was being made to plaintiff *and* intended plaintiff to rely on that false statement.

Similarly, as to alleged "reasonable reliance" on the allegedly false representation and "resulting damages," neither element is supported with non-conclusory, factual allegations. See Kearns, 567 F.3d at 1126.  Plaintiff's alleged damages appear to have been lost opportunities to seek separate modifications for other loans (from other lenders and relating to other properties) while awaiting defendants' approval of his modification request, and plaintiff's premature withdrawal of IRA income.  (FAC ¶¶ 101, 213-14.)  However, as pleaded, these alleged damages are not the alleged result of reliance upon specific alleged fraudulent statement(s) by defendants. This conclusion is primarily because the contents of the alleged statements are not pleaded with particularity, making it impossible to tell which particular statement(s) plaintiff allegedly relied upon.  For instance, there are no allegations that defendants instructed plaintiff to refrain from seeking separate modifications for other loans while his modification application was pending, and thus no allegation that plaintiff relied on that statement.  Likewise, there are no allegations that anyone affiliated with defendants told plaintiff to make early withdrawals from this IRA funds, and thus no allegation that plaintiff relied on that statement.

Accordingly, the MTD is granted with respect to plaintiff's fraud claim arising from the loan modification application process, and the claim is dismissed with leave to amend. During the hearing on this matter plaintiff stated that he could amend his fraud claim to more particularly state the contents of Saris's representations, which allegedly included statements that plaintiff's loan definitely "would be" modified.  Therefore, plaintiff shall have one more opportunity to amend his fraud claim to attempt to correct that deficiency, as well as the additional deficiencies noted above.

### 2.   Consumer's Legal Remedies Act ("CLRA") Claim

"The CLRA makes unlawful certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which

1  results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).

2  "Goods" are defined as "tangible chattels bought or leased for use primarily for personal, family,

3  or household purposes."  Cal. Civ. Code § 1761(a). "Services" are defined as "work, labor, and

4  services for other than a commercial or business use, including services furnished in connection

5  with the sale or repair of goods."  Cal. Civ. Code § 1761(b)."  <u>Consumer Solutions REO, LLC v.</u>

6  <u>Hillery</u>, 658 F. Supp. 2d 1002, 1015-16 (N.D. Cal. 2009).

7          Historically, courts in this circuit held that CLRA claims can properly arise from

8  mortgage loans.  <u>See</u> <u>Jefferson v. Chase Home Finance LLC</u>, No. C06-6510, 2007 WL 1302984,

9  at *3 (N.D. Cal. May 3, 2007) (not reported) (concluding that the loan transactions between a

10  mortgage finance company and the plaintiff involved "more than the provision of a loan; they

11  also include [the] financial services [of managing the loan].");  <u>Knox v. Ameriquest Mortgage</u>

12  <u>Co.</u>, No. C05-00240, 2005 WL 1910927, at *4 (N.D. Cal. Aug. 10, 2005) (not reported) (finding

13  that, in the context of predatory lending allegations and after a review of the case law, "California

14  courts generally find financial transactions to be subject to the CLRA.").  In these cases, the

15  defendant provided additional services over and above the extension of credit, although the

16  services alleged may have been minimal.  <u>See</u> <u>Hernandez v. Hilltop Financial Mortg., Inc.</u>, 622

17  F.Supp.2d 842, 851 (N.D. Cal. Oct. 22, 2007) (". . .the situation in the present case involves

18  more than the mere extension of a credit line.  Instead, the circumstances here deal not just with

19  the mortgage loan itself, but also with the services involved in developing, securing, and

20  maintaining plaintiffs' loan.").

21          However, in 2009 the California Supreme Court clarified that ancillary loan

22  "servicing" does not bring a loan within the scope of the CLRA and that statute's definition of

23  "services."  In <u>Fairbanks v. Superior Court</u>, the court held that life insurance is neither a "good"

24  nor a "service" covered by the CLRA.  <u>Fairbanks v. Superior Court</u> 46 Cal. 4th 56 (2009).

25  District courts have since applied <u>Fairbanks</u> to claims challenging mortgage loan servicing under

26  the CLRA and dismissed the claims, concluding that under <u>Fairbanks</u> "loans are intangible goods

1  and that ancillary services provided in the sale of intangible goods do not bring these goods

2  within the coverage of the CLRA." <u>Consumer Solutions</u>, 658 F. Supp. 2d at1016; <u>accord</u> <u>Justo v.</u>

3  <u>Indymac Bancorp</u>, No. SACV 09-1116 JVS (AGRx), 2010 WL 623715, at *3 (C.D. Cal. Feb. 19,

4  2010).

5         Here, particularly analogous is the case of <u>Justo</u>, which involved claims arising

6  from a mortgage loan "modification" application process similar to the one plaintiff has alleged

7  here.  <u>Justo</u>, 2010 WL 623715, at *3-4.  The <u>Justo</u> plaintiffs claimed a CLRA violation arising

8  from the allegation that the "defendants falsely pledged to help mortgagors modify their loans,

9  but failed to negotiate a modification or to offer a reduction of the principal balance." <u>Id.</u>  The

10  court concluded, "under the reasoning of <u>Fairbanks</u>, a loan modification is not a service. . . .

11  Thus, the CLRA does not apply to loan modifications. The first cause of action is dismissed with

12  prejudice." <u>Id.</u>; <u>accord</u> <u>Reynoso v. Paul Financial, LLC</u>, No. 09-3225 SC, 2009 WL 3833298, at

13  * 9 (N.D. Cal. Nov. 16, 2009).

14         Accordingly, pursuant to these post-<u>Fairbanks</u> authorities, the CLRA does not

15  encompass plaintiff's claims arising from his attempted loan modification.  <u>See</u> <u>Justo</u>, 2010 WL

16  623715, at *3-4.  Defendants' motion to dismiss is granted with respect to the CLRA claim, and

17  the undersigned recommends that plaintiff's CLRA claim be dismissed without leave to amend.

18  Leave to amend would be futile in this instance, as "the CLRA does not apply to loan

19  modifications." <u>Justo</u>, 2010 WL 623715, at *3; <u>accord</u> <u>Reynoso</u>, 2009 WL 3833298, at * 9.[5]

20                    3.     Unfair Competition Law ("UCL") Claim

21         Defendants argue that the sufficiency of plaintiff's UCL claim depends in part

22  upon his other claims, because a UCL violation must be premised on some other wrong.  (MTD

23  _____

24         [5]  Where amendment would be futile, no opportunity to amend need be provided.  A
    claim is considered futile and leave to amend shall not be given if there is no set of facts that can
25  be proved under the amendment that would constitute a valid claim.  <u>Miller v. Rykoff-Sexton,</u>
    <u>Inc.</u>, 845 F.2d 209, 214 (9th Cir. 1988); <u>accord</u> <u>Amaral v. Wachovia Mortgage Corp.</u>, No. CV-F-
    09-937 OWW/GSA, 2010 WL 2673766, at *4 (E.D. Cal. July 2, 2010) (not reported).

26

1   at 14 (the UCL claim "fails because it relies on defective claims").)  In this case, the "wrong"

2   upon which plaintiff's UCL claim is premised appears to be defendants' alleged fraud in

3   connection with the loan modification process.  Thus, the allegations supporting the UCL claim

4   are deficient for the same reasons described above with respect to the fraud claim.  However, for

5   the same reasons the undersigned cannot conclude that plaintiff's fraud claim is preempted by

6   HOLA at this time, the undersigned cannot conclude that plaintiff's UCL claim is preempted at

7   this time.  See DeLeon, 2011 WL 311376, at *1-11 (where plaintiff alleged that defendant

8   "falsely represented" that a loan modification would be given and that foreclosure would not

9   occur while the modification process was ongoing, fraud and UCL claims arising therefrom were

10   not preempted by HOLA); Reyes v. Downey Savings & Loan Assn., F.A., 541 F. Supp. 2d

11   1108,1112-15 (C.D. Cal. 2008) (where defendants allegedly misrepresented the loan terms and

12   interest rate that would actually bind the plaintiffs, the court held that the principles of breach of

13   contract and fraud in the inducement "are not specific to lending activities" and concluding that

14   "HOLA does not preempt this application of the UCL").

15         The DeLeon decision offers particular guidance here.  In DeLeon, the court held

16   that, with respect to representations made during the loan modification application process, a

17   UCL claim arising therefrom is not necessarily preempted by HOLA as a matter of law.  DeLeon,

18   2011 WL 311376, at *1-11.  The court explained,

19         Plaintiffs do not seek to impose a substantive requirement that a
           federal savings bank must always complete a loan modification
20         agreement once the modification process has started or that a
           federal savings bank can never execute a sale while a loan
21         modification is pending. Rather, Plaintiffs seek only to require
           Wells Fargo to refrain from making untrue statements about
22         material facts when doing business with mortgagors or any other
           persons.  Plaintiffs thus invoke the general duty not to engage in
23         fraud or express deception in a manner that only incidentally
           affects lending activities.  For this reason, HOLA does not preempt
24         Plaintiff's UCL claim based on misrepresentation.

25   Id. at *6.  Here, plaintiff's UCL claim arises from representations allegedly made to plaintiff

26   during and regarding the loan modification process, so DeLeon's reasoning is persuasive.  The

1   undersigned cannot find that plaintiff's UCL claim is preempted at this time.

2           However, putting aside preemption, the UCL claim is deficient for other reasons.

3   As pleaded, plaintiff's UCL claim is entwined with his fraud claim and both appear to arise from

4   the same facts; namely, that plaintiff was promised a modification that he never received.  Where

5   a complaint sounds in fraud, all of its allegations are subject to Rule 9(b)'s pleading

6   requirements, and consequently, plaintiff's UCL claims must be dismissed if they are based on

7   allegations of fraud but not pleaded with particularity.  Kearns, 567 F.3d at 1124-25;  Vess v.

8   Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  For the same reasons described

9   above in the discussion of plaintiff's fraud claim, plaintiff's UCL claim is not pleaded with the

10  requisite particularity.  Accordingly, the undersigned grants defendants' motion to dismiss with

11  respect to the UCL claim, but plaintiff shall have leave to amend the claim to correct the

12  deficiencies described above.[6]

13          In amending his UCL claim, plaintiff is cautioned that the claim must be pleaded

14  with particularity.  E.g., Kearns, 567 F.3d at 1125 ("we have specifically ruled that Rule 9(b)'s

15  heightened pleading standards apply to claims for violations of the . . . UCL.");  Periguerra v.

16  Meridas Capital, Inc., No. C 09-4748 SBA, 2010 WL 395932, at * 8 (N.D. Cal. Feb. 1, 2010)

17  (not reported) ("To the extent Plaintiffs are relying on the "fraudulent" prong of the section

18  17200, Plaintiffs must allege reliance");  In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009);

19  Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 947-49 (S.D. Cal. 2007).

20  ////

21

22          [6] Defendants argue that none of plaintiff's claims can support his UCL claim. (MTS at
    14-15.)  However, because plaintiff's UCL claim appears to arise from his allegations of fraud in
23  the loan modification process, and because this order gives plaintiff leave to amend his UCL
    claim, the undersigned need not determine whether plaintiff's other claims might possibly serve
24  as predicates for his UCL claim at this time.  However, the undersigned clarifies that neither the
    claim for violation of California Civil Code section 2943 nor the CLRA claim can serve as
25  predicates for plaintiff's UCL claim, as the undersigned has recommended that those claims be
    dismissed without leave to amend.  The same is true with respect to plaintiff's "wrongful
26  foreclosure" and "quiet title" claims, as described herein.

<u>4.      False Advertising Claim</u>

1       The undersigned recommends that plaintiff's false advertising claim be dismissed

without leave to amend.  It appears that plaintiff's false advertising claim is preempted by HOLA

(e.g., <u>Silvas</u>, 514 F.3d at 1004-05 (holding that mortgage applicants' Section 17500 False

Advertising claim was preempted by HOLA)), but the undersigned need not make this

determination because plaintiff has conceded that his claim is deficient and has not disputed

defendants' challenges to it.  (Oppo. at 38 ("Plaintiff agrees that his [false advertising] claim

based on Cal. Bus. & Prof. C. § 17500 is preempted by HOLA.").)  Therefore, defendants'

motion to dismiss plaintiff's false advertising claim is granted, and the undersigned will

recommend that the claim be dismissed without leave to amend.

<u>5.      California Civil Code § 2943 Claim</u>

        Plaintiff alleges defendants violated California Civil Code § 2943 ("Section

2943") by improperly responding or failing to respond to his written demands for information

about his loan debts.  (FAC ¶¶ 281-88.)  Section 2943 requires lenders to respond to certain

requests from debtors within 21 days of the request.  Cal. Civ. Code § 2943.

        Courts analyzing Section 2943 and HOLA preemption in similar cases have found

preemption and dismissed the claim.  <u>E.g.</u>, <u>Jelsing v. MIT Lending</u>, No. 10cv416 BTM (NLS),

2010 WL 2731470, at *5 (S.D. Cal. July 9, 2010) (not reported) (holding that California Civil

Code § 2943 claim is preempted by HOLA).  In <u>Jelsing</u>, the plaintiffs asserted a state law claim

against Wells Fargo and PNC Mortgage LLC for their alleged failures to respond to a demand

letter (similar to plaintiff's in the instant case).  The court held,

>           Under California law, when a lender receives a letter demand for
>           "a copy of the note or other evidence of indebtedness," it must
>           deliver a copy, along with a beneficiary statement, within
>           twenty-one days. Cal. Civ. Code § 2943(b)(1). This provision
>           imposes a requirement related to disclosure, 12 C.F.R. §
>           560.2(b)(9), or the processing or servicing of mortgages, §
>           560.2(b)(10). It is therefore preempted.

<u>Id.</u> at *3 (rejecting the argument that Section 2943 serves a "vital state interest" such that it

25

1  should be excepted from the HOLA preemption analysis); accord Lopez v. World Savings &

2  Loan Assn., 105 Cal. App. 4th 729 (2003) (holding that Section 2943 governs mortgage

3  beneficiary and payoff demand statements and is thus within the scope of provisions that OTS's

4  federal regulation intended HOLA to preempt.)

5          Accordingly, defendants' motion to dismiss is granted with respect to the Section

6  2943 claim.  The undersigned will recommend that the claim be dismissed without leave to

7  amend.   Leave to amend would be futile here, as additional allegations would not change the

8  preemption analysis.

9          Plaintiff suggests that his pleaded facts also support a potential claim under

10  federal law, specifically, the Real Estate Settlement Procedures Act ("RESPA").  (Oppo. at 16

11  ("Plaintiff's claim for violation of Civil Code § 2943 can be amended to state a valid claim

12  pursuant to 12 U.S.C. § 2605" [the Real Estate Settlement Procedures Act].)  Defendants do not

13  argue otherwise, except for requesting clarification regarding which specific properties are

14  implicated by plaintiff's demand letters to defendants.  (Reply at 6.)

15          The sufficiency of a pleading should be analyzed based upon the factual

16  allegations within it—not upon the proffered legal theories arising from those alleged facts.[7]

17  Therefore, while the undersigned will recommend that plaintiff's preempted Section 2943 claim

18  be dismissed, the undersigned will permit plaintiff to amend his pleading to allege a RESPA

19  claim based upon the already-pleaded facts.  (E.g., FAC ¶¶ 169, 171-83.)  Plaintiff's RESPA

20  allegations should clearly list the specific properties plaintiff made written demands about, and

21  the date(s) of each request, etc., as defendants accurately note (Reply at 6) that such information

22  is unclear from the currently-pleaded facts.

23

24          [7] Where, as here, defendants have fair notice of the nature of the *claim*, the complaint
    need not even allege the legal theory on which recovery is being sought.  Crull v. GEM Ins. Co.,
    58 F.3d 1386, 1391 (9th Cir. 1995).  A plaintiff, whether represented by counsel or not, need not
25  plead the statute or other provision upon which he bases his claims. Rather, all that is necessary
    is that he pleads facts sufficient to support such claims.  Bell Atlantic Corp. v. Twombly, 550
26  U.S. 544, 555 (2007).

6.      Wrongful Foreclosure Claim

Plaintiff's "wrongful foreclosure" claim is based upon allegations that "there is no acknowledged and recorded assignment of the notes or deeds of trust for the nine properties that are the subject of this amended complaint to either WACHOVIA or WELLS FARGO." (FAC ¶ 291.)  From this alleged deficiency (i.e. failure to record certain documents), plaintiff alleges that "[t]he three foreclosure proceedings at issue fail . . . ." (FAC ¶ 292.)  Similarly, plaintiff alleges that defendants' failure to record an alleged assignment means necessarily that defendants "were not authorized to record NODs against plaintiff's Larkflower, Shelborne, or 3rd Street properties." (FAC ¶ 293.)  Plaintiff also alleges that the failure to record a substitution of the trustee amounts to wrongful foreclosure. (FAC ¶ 299.)  In short, plaintiff's theory is that defendants' steps to foreclose upon his three properties were "wrongful" because defendants failed to "record" certain documents in accordance with state law.

However, the California statutes requiring certain mortgage documents to be recorded are preempted by HOLA.  DeLeon, 729 F. Supp. 2d at 1127 (granting motion to dismiss "wrongful foreclosure" claim based on failure comply with state laws because "California Civil Code § 2923.5 affects the servicing of mortgages, which implicates HOLA's express preemption of state laws regulating the "processing" and "servicing" mortgages".)[8]  Wrongful foreclosure claims arising from modification discussions have also been held to be preempted.  Guerrero v. Wells Fargo Bank, N.A., 2010 U.S. Dist. LEXIS 96261 at *4, *9-10 (C.D. Cal. Sept. 14, 2010)

---

[8]   District courts within the Ninth Circuit have concluded that wrongful "foreclosure" claims arising from violations of state laws are preempted as applied.  Parcray v. Shea Mortg., Inc., No. CV-F-09-1942 OWW/GSA, 2010 WL 1659369, at *9 (E.D. Cal. Apr. 23, 2010) (not reported) (concluding that HOLA preempts Section 2923.5 because it "concerns the processing and servicing of [the plaintiff]'s mortgage....");  Odinma v. Aurora Loan Servs., No. C-09-4674 EDL, 2010 WL 1199886, at *8 (N.D. Cal. Mar. 23, 2010) (not reported) (concluding that a "Section 2923.5 claim concerns the processing and servicing of Plaintiffs' mortgage and is preempted by HOLA");  Stefan v. Wachovia, World Savings, 2009 U.S. Dist. LEXIS 113480, at *3 (N.D. Cal. Dec. 7, 2009) (not reported) ("Plaintiffs' claims of misconduct surrounding the foreclosure proceedings clearly fall under the preemption provisions for 'processing, origination, sale or purchase of ... mortgages' ");  Taguinod, 2010 WL 5185845, at * 4, *19-20 (claims arising from California Civil Code § 2923.5 were preempted by HOLA).

1   (where plaintiff's claims "attack[ed] Defendant's disclosure and initiation of the foreclosure

2   process" through alleging in part that foreclosure was improper in light of ongoing loan

3   modification discussion, court dismissed the claim with prejudice on preemption grounds.)

4          On the pleaded facts, plaintiff's wrongful foreclosure claim is preempted by

5   HOLA.  The claim arises from alleged violation of California statutes affecting the servicing of

6   mortgages, implicating HOLA's express preemption of state laws regulating the "processing"

7   and "servicing" mortgages.  See DeLeon, 729 F. Supp. 2d at 1127.  In other words, as pleaded,

8   plaintiff's wrongful foreclosure claim is based on violations of state laws requiring certain

9   mortgage documents to be recorded.  Because plaintiff's "wrongful foreclosure" claim is based

10  on defendants' alleged violations of state laws regulating mortgages, the wrongful foreclosure

11  claim is preempted.

12         In his opposition, plaintiff clarifies that he did not intend to allege actual violation

13  of Cal. Civ. Code § 2923.5 and suggests that he can plead other factual bases for a wrongful

14  foreclosure claim that are not grounded in defendants' failures to record certain documents.

15  (Pltf's Oppo. at 14-15 (". . .plaintiff did not claim that Civil Code § 2923.5 applies.  Plaintiff

16  only makes reference to Civil Code § 2923.5 to show that three Wells Fargo vice presidents

17  committed perjury and the veracity of defendants is suspect.")[9]  Plaintiff clarifies that his "claim

18  is based on the contention that the defendants are not holders of the plaintiff's notes and have no

19  beneficial interest in plaintiff's properties.  If the defendants are not the holders of the notes, they

20  cannot foreclosure by either a judicial or non-judicial process."  (Oppo. at 6.)  However, when

21  the preempted "failure to record documents" allegations are put aside, there are no factual

22  allegations left to support plaintiff's "true holders of the notes" theory.

23         With respect to plaintiff's clarified allegation (Oppo. at 6) that defendants are not

24

_____

25     [9]  There is no perjury action pending before this court, and this court is unable to
    adjudicate the "veracity" of defendants.  Therefore, plaintiff's reference to these issues will not
26  be considered in analyzing the sufficiency of claims within the FAC.

1  the true holders of his notes and thus any foreclosure activities they took were necessarily

2  wrongful, the pleaded facts simply do not support the claim.  Plaintiff has not pleaded any non-

3  conclusory facts supporting this "true holders of notes" argument, as the only *factual* allegations

4  pertaining to defendants' right to foreclose are that certain documents were not *recorded*.  (See

5  FAC ¶¶ 293, 300-03.)

6           Perhaps in efforts to plead a theory that is not preempted by virtue of its

7  dependance upon recordation of mortgage documents under state law, plaintiff has requested the

8  opportunity to amend his pleading to introduce new factual allegations utterly absent from his

9  FAC: that "Mexican drug cartels" are the true holders of his notes.  (E.g., Oppo. at 13.)

10          While plaintiff believes he can allege additional facts  (i.e., facts unrelated to a

11  failure to record certain documents) to support a theory that defendants are not the true owners of

12  his notes, plaintiff has not suggested any non-conclusory, factual bases for such amendment.

13  During the hearing on the motion, plaintiff reiterated his new theory that his loans may have been

14  among a group of loans he believes were sold to "Mexican drug cartels."  Plaintiff's RJN also

15  includes documents plaintiff believes support this theory.  However, when asked whether he had

16  any actual facts to support his "cartel" allegations, plaintiff responded that he believed it was

17  "plausible" that his loan was among a group of loans defendants sought to rid themselves of.  But

18  plaintiff did not provide any facts showing *his* particular loan was part of that alleged group.

19          Plaintiff's beliefs coupled with conclusory allegations are not sufficient to support

20  his claims.  Therefore, plaintiff does not have leave to amend his "wrongful foreclosure" claim,

21  and does not have leave to amend his pleading to add the new "cartel" allegations.  The

22  undersigned cautions plaintiff that, while this order gives him leave to amend certain claims (i.e.,

23  fraud), plaintiff does <u>not</u> have leave to add his "cartel" allegations to support such claims.

24          Therefore, to the extent plaintiff bases his "wrongful foreclosure" claim on

25  violation of state laws requiring certain documents to be recorded, those state laws are preempted

26  and do not support plaintiff's wrongful foreclosure claim.  To the extent plaintiff wishes to base

his wrongful foreclosure claim on the theory that defendants are not the "true holders" of his

notes for reasons *other than* failing to record certain documents, he has not pleaded any

supporting factual allegations.  Accordingly, defendants' motion to dismiss is granted with

respect to the "wrongful foreclosure" claim, and the undersigned recommends that the claim be

dismissed without leave to amend.

7.     Quiet Title Claim

Defendants allege that plaintiff has not pleaded the six requirements of a quiet

title claim.  (Reply at 21.)  California Code of Civil Procedure § 761.020 states that a claim to

quiet title requires: (1) a verified complaint, (2) a description of the property, (3) the title to

which a determination is sought, (4) the adverse claims to the title against which a determination

is sought, (5) the date as of which the determination is sought, and (6) a prayer for the

determination of the title. District courts have adhered to the pleading requirements of section

761.020.  E.g., Hensley v. Bank of N.Y. Mellon, 2010 U.S. Dist. LEXIS 135812 *9 (E.D. Cal.

Dec. 23, 2010).

Plaintiff's FAC contains allegations to meet each of these requirements: the FAC

is verified (FAC at 114); it describes plaintiff's properties (FAC at 5-7); it defines those

properties as those to which a determination of title is sought (FAC ¶ 307(d)); it states that the

"adverse claim" is "by the defendants since the right of sale provided by the deed of trust is an

interest in the property" (FAC ¶ 307(c)); it states that the date of the FAC is the date as of which

the determination is sought (FAC ¶ 307(d)); and it includes a prayer for the determination of title.

(FAC ¶ 307(e).)

However, plaintiff's "quiet title" claim is based upon the allegation that

defendants "do not presently have the right to initiate foreclosure . . . .", and the FAC does not

contain any factual support for this conclusion.  (FAC ¶ 306.)  Further, plaintiff has not indicated

that he could provide such factual support if leave to amend the claim were granted.  As

described in the above discussion of plaintiff's "wrongful foreclosure" claim, the only factual

30

1    allegations that appear to support plaintiff's quiet title claim are that defendants failed to properly

2    record certain documents in accordance with California laws (preempted by HOLA), and

3    conclusory allegations that defendants are not the "true holders" of his notes.  Plaintiff's "quiet

4    title" claim is thus premised on the same deficient grounds as his wrongful foreclosure claim.

5               Courts have dismissed "quiet title" claims on preemption grounds in cases where

6    the quiet title claim is based upon a preempted "wrongful foreclosure" claim, and also in cases

7    where defendants allegedly have "refused to modify" loans despite plaintiff's willingness to

8    participate in the modification process.  DeLeon, 729 F. Supp. 2d at 1127 (granting motion to

9    dismiss "wrongful foreclosure" claim on preemption grounds, then granting motion to dismiss

10   "quiet title" claim because that claim was "premised on . . . [plaintiffs'] claims of wrongful

11   foreclosure and defective notice, which are preempted by HOLA."); Guerrero, 2010 U.S. Dist.

12   LEXIS 96261 at *4, *9-10 (where plaintiff's claims" attack[ing] Defendant's disclosure and

13   initiation of the foreclosure process" through alleging in part that foreclosure was improper in

14   light of ongoing loan modification discussion, court dismissed quiet title claim on preemption

15   grounds); Curcio v. Wachovia Mortgage Corporation, 2009 U.S. Dist. LEXIS 96155, at *16-18

16   (S.D. Cal. Oct. 14, 2009) (where plaintiff alleged in part that defendants "refused to modify

17   Plaintiff's loan payments" despite plaintiff's willingness to "participate in loan modification"

18   plaintiff alleged a "quiet title" claim (among others), the court found that HOLA preempted quiet

19   title claim and others); Andrade v.Wachovia Mortg., FSB, 2009 U.S. Dist. LEXIS 34872 *6-9

20   (S.D. Cal. April 21, 2009) (holding that plaintiff's claims for quiet title were expressly preempted

21   by 12 C.F.R. § 560.2(b)(4), (9), (10)).

22              Accordingly, defendants' motion to dismiss is granted with respect to the quiet

23   title claim for the same reasons described in the above discussion of the wrongful foreclosure

24   claim.  The undersigned also recommends that the claim be dismissed without leave to amend for

25   the reasons described above.  Further, plaintiff cannot add new "cartel" allegations in efforts to

26   plead a quiet title theory that is not preempted by HOLA.  Again, the undersigned cautions

1  plaintiff that, while this order gives him leave to amend certain claims (i.e., fraud), plaintiff does

2  _not_ have leave to add his "cartel" allegations to support such claims.

3                              8.      Unfair Debt Collection Claims

4              Plaintiff claims defendants violated California's Rosenthal Fair Debt Collection

5  Practices Act (Cal. Civ. Code §§ 1788 et seq.) ("Rosenthal Act" or "RFDCPA") and the Federal

6  Fair Debt Collection Practices Act (the "FDCPA") (15 U.S.C. § 1692).  (FAC ¶ 309.)

7              The RFDCPA defines a "debt collector" as "any person who, in the ordinary

8  course of business, regularly, on behalf of himself or herself or others, engages in debt

9  collection."  Id. § 1788.2.  Similarly, the FDCPA defines "debt collector," in pertinent part, as

10              "any person who uses any instrumentality of interstate commerce
               or the mails in any business the principal purpose of which is the
11              collection of any debts, or who regularly collects or attempts to
               collect, directly or indirectly, debts owed or due or asserted to be
12              owed or due another."

13  Id. (citing 15 U.S.C. § 1692a(6)).  To be held liable for violation of the FDCPA, a defendant

14  must—as a threshold requirement—fall within the Act's definition of "debt collector."  Izenberg

15  v. ETS Services, LLC  589 F. Supp. 2d 1193, 1198-99 (C.D. Cal. 2008) (finding defendant was

16  not "collecting a debt" when it sought to foreclose on property).  A "debt collector" under the

17  FDCPA is therefore either (1) "a person" the "principal purpose" of whose business is the

18  collection of debts (whether on behalf of himself or others); or (2) "a person" who "regularly"

19  collects debts on behalf of others (whether or not it is the principal purpose of his business).

20  Izenberg, 589 F.Supp.2d at 1198-99.  Plaintiff has not alleged that defendants are "debt

21  collectors" under the RFDCPA or the FDCPA, so his debt collection claims are deficient.

22              Further, a "debt collector" violates the RFDCPA when it engages in harassment,

23  threats, the use of profane language, false simulation of the judicial process, or when it cloaks its

24  true nature as a licensed collection agency in an effort to collect a debt— and plaintiff has not

25  alleged any of these actions.  See Cal. Civ. Code §§ 1788.10-88.18; see also Hernandez v. Cal.

26  Reconveyance Co., 2009 U.S. Dist. LEXIS 13936, at * 13 (E.D. Cal. Feb. 23, 2009) (holding that

a RFDCPA claim failed because the complaint lacked allegations of harassment or abuse, false or misleading representations of the debt collector's identity, or unfair practices during the process of collecting debt); Hepler v. Wash. Mut. Bank, F.A., Case No. CV 07-4804 CAS (Ex), 2009 U.S. Dist. LEXIS 33883, at *11-12 (C.D. Cal. April 17, 2009) ("[T]he law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA."). A mortgage servicing company is not a debt collector within the meaning of the FDCPA. Walker v. Equity 1 Lenders Group, No. 09cv325, 2009 WL 1364430, at *7 (S.D. Cal. May 14, 2009).

Similarly, as to the FDCPA, where a pleading "lacks allegations of harassment or abuse to violate 15 U.S.C. § 1692d, false or misleading representations to violate 15 U.S.C. §1692e, or unfair practices to violate 15 U.S.C. § 1692f," it fails to state a FDCPA claim. See Hernandez, 2009 U.S. Dist. LEXIS 13936, at * 13; Jelsing, 2010 WL 2731470, at *5 (holding that sending a Notice of Trustee's Sale is not actionable under the FDCPA where a plaintiff does not allege that the sender was a "debt collector" and also because "foreclosing on [a] property pursuant to a deed of trust is not the collection of a "debt" within the meaning of the FDCPA." (citing cases).

The undersigned notes that the alleged "debt collection" activities plaintiff ascribes to defendants appear to include telling credit reporting agencies of his past due payments (FAC ¶ 309), and by continuing to attempt to collect on his debts in violation of the Forbearance Agreement. (E.g., Oppo. at 24.) Defendants have not cited cases stating that either of these allegations cannot sufficiently support a debt collection claim as a matter of law.[10]

---

[10] The RFDCPA does not typically apply to lenders foreclosing on a deed of trust. E.g., Izenberg v. ETS Services, LLC, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008) (stating that "foreclosure does not constitute debt collection under the RFDCPA"). However, courts have held that non-foreclosure efforts to collect upon a residential mortgage debts may come within the scope of the Rosenthal Act. E.g., Yulaeva v. Greenpoint Mortgage Funding, No. 09-1504, 24-25, 2009 WL 2880393, at *10 (E.D. Cal. Sept. 3, 2009) (denying motion to dismiss debt collection claims because, plaintiff's "claim is based on reporting of default to credit reporting

1    However, as pleaded, plaintiff has not alleged non-conclusory facts suggesting

2    harassment, abuse, or false representations[11] in the collection of a debt.  Because plaintiff will

3    have the opportunity to amend his debt collection claims, it would be premature for the

4    undersigned to determine as a matter of law that plaintiff's allegations do not come within the

5    scope of "debt collection" under either statute.  The precise nature of those allegations will

6    determine the sort of "debt collection" activities upon which plaintiff bases his claim.  If and

7    when plaintiff amends the facts supporting the claim, defendants remain able to challenge the

8    factual sufficiency of the amendment, including whether the activities plaintiff construes as "debt

9    collection" actually come within the scope of either statute.  Accordingly, defendants' motion to

10   dismiss is granted with respect to plaintiff's FDCPA claim, but plaintiff shall have leave to

11   amend the claim to correct the above-described deficiencies.

12    In his opposition, plaintiff says he will amend his pleading to state that defendants

13   are "debt collectors" and otherwise allege the elements of his debt-collection claims. (Oppo. at

14   23-24.)  Plaintiff also suggests that none of the named defendants presently "own plaintiff's

15   debt," intimates that "foreign" entities (i.e. "Mexican drug cartels") likely own his debt such that

16   defendants do not "own" his loan and thus that their actions are those of "debt collectors"

17   seeking to collect his money to give to some other entity (i.e. the "Mexican drug cartels").

18   (Oppo. at 24-25.)  As described above, however, in his papers and during the hearing plaintiff did

19   not provide any factual support for this theory aside from his beliefs and tangential documents in

20   his RJN (addressed below).  Therefore, while plaintiff will receive leave to amend his debt

21   collection claims to allege that defendants are "debt collectors" and to state which alleged

22   activities amounted to harassing, abusive conduct under the law, plaintiff shall *not* receive leave

23   

24   agencies, an activity that might have some incidental connection to foreclosure, but that is also
     squarely connected to debt collection.")

25   

26   [11] As described in the foregoing discussion of the fraud claim, the alleged
     "representations" in the FAC are contradictory and unclear.

34

1  to amend to add allegations relating to "Mexican drug cartels" or allegations of defendants'

2  efforts to collect debts on behalf of those cartels.

3                              9.      RICO Claim

4              The FAC alleges defendants violated RICO (18 U.S.C. § 1962) in connection with

5  representations made within the modification application process.   (FAC ¶¶ 312-13.)  To state a

6  RICO claim, a plaintiff must allege that defendant (a) received income derived from a pattern of

7  racketeering activity, and used the income to acquire or invest in an enterprise in interstate

8  commerce; (b) acquired or maintained an interest in, or control of, an enterprise engaged in

9  interstate commerce through a pattern of racketeering activity; (c) caused an enterprise engaged

10  in interstate commerce, while employed by the enterprise, to conduct or participate in a pattern of

11  racketeering activity; or (d) conspired to engage in any of these activities. 18 U.S.C. § 1962;

12  Forsyth v. Humana, Inc., 114 F.3d 1467, 1481 (9th Cir. 1997).  "Racketeering activity" is any act

13  indictable under the provisions of 18 U.S.C. § 1961.  Forsyth, 114 F.3d at 1481.

14              A RICO claim must be pleaded with particularity.   Izenberg, 589 F. Supp. 2d at

15  1202.  Further, in a case involving a foreclosure of a mortgage on real property, in order to

16  establish a concrete financial injury under RICO a plaintiff must allege he will pay a greater

17  amount than is in fact owed on his mortgage.  Id. at 1204.  A plaintiff must also plead that

18  defendants' violation was both the "but for" and proximate cause of a concrete financial injury.

19  Id. at  1201 ("Prospective injuries . . .  do not satisfy RICO's concrete financial injury

20  requirement.")

21              Plaintiff concedes that his FAC does not state a RICO claim as pleaded, and under

22  the authorities described above, he is correct.  Therefore, the undersigned grants defendants'

23  motion to dismiss the RICO claim.  However, plaintiff requests leave to amend the claim.

24  (Oppo. at 19-20.)  Plaintiff's proffered amendment again arises from his new "Mexican drug

25  cartel" theory: that "his nine loans were in the group securitized, sold, and serviced illegal and

26  fraudulently as part of the defendants' criminal activities with the drug cartels.  Given the

                                      35

1  magnitude and complexity of the transactions, the crimes would have to be committed via wire

2  and mail." (Id.)   Again, plaintiff's papers and statements during the hearing confirm that

3  plaintiff's proffered "cartel" theory is premised on conclusory allegations rather than actual facts

4  supporting a RICO claim.  Therefore, plaintiff will *not* receive leave to amend to add those

5  "cartel" allegations.

6          However, while he may not add "cartel" allegations, plaintiff shall receive leave to

7  amend to plead a RICO claim with specificity based upon his allegations of fraudulent statements

8  made in connection with the loan modification process.  See Izenberg, 589 F.Supp.2d at 1205 ("a

9  district court should grant leave to amend ... unless it determines that the pleading could not

10  possibly be cured by the allegation of other facts").  Defendants' motion to dismiss is granted

11  with respect to the RICO claim, but plaintiff shall have leave to amend the claim.  While plaintiff

12  receives leave to amend his claim, plaintiff does *not* receive leave to add allegations relating to

13  "Mexican drug cartels."

14                  10.    Negligence and Negligent Misrepresentation Claims

15          Defendants suggest that plaintiff's negligence claims are preempted by HOLA,

16  but their papers do not discuss cases analyzing preemption of negligence claims.  (MTD at 6.)

17  Therefore, without passing upon the issue HOLA preemption, the undersigned's analysis

18  proceeds to the sufficiency of plaintiff's allegations of negligence.  Defendants challenge the

19  "duty" element of plaintiff's negligence claim.  (MTD at 24.)

20          Plaintiff's negligence claim is deficient because the defendants, as conventional

21  lenders, do not typically owe plaintiff a duty of care.  "The question of the existence of a legal

22  duty of care . . .  presents a question of law which is to be determined by the courts alone."  First

23  Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler, 210 F.3d 983, 987 (9th Cir. 2000).

24  "Absent the existence of duty . . . there can be no breach and no negligence."  Nichols v. Keller,

25  15 Cal. App. 4th 1672, 1683 (1993).  "Under California law, a lender does not owe a borrower or

26  third party any duties beyond those expressed in the loan agreement, except[] those imposed due

36

to special circumstance." <u>Resolution Trust Corp. v. BVS Dev.</u>, 42 F.3d 1206, 1214 (9th Cir.

1994) (citing <u>Nymark v. Heart Fed. Sav. & Loan Ass'n.</u>, 231 Cal. App. 3d 1089, 1096 (1991)).

        Special circumstances triggering a duty may arise when a lender actively

participates in the financed enterprise. <u>See Nymark</u>, 231 Cal. App. 3d at 1096; <u>Wagner v.</u>

<u>Benson</u>, 101 Cal. App. 3d 27, 35 (1980). A lender may also be secondarily liable through the

actions of a mortgage broker, who has a fiduciary duty to its borrower-client, if there is an agency

relationship between the lender and the broker. <u>See Plata v. Long Beach Mortg. Co.</u>, 2005 U.S.

Dist. LEXIS 38807, at *23 (N.D. Cal. Dec. 13, 2005).

        In the FAC, plaintiff describes arms-length loan modification discussions between

defendants and himself. He does not describe any "special circumstances" akin to those

described in <u>Nymark</u> (lender participation in financed enterprise) or <u>Plata</u> (lender liable through

broker's fiduciary duty to borrower-client) that would trigger a duty. <u>See Nymark</u>, 231 Cal. App.

3d at 1096; <u>Plata</u>, 2005 U.S. Dist. LEXIS 38807, at *23. Therefore, plaintiff's negligence claim

is insufficiently pleaded with respect to the existence of a duty of care. <u>See e.g.</u>, <u>Walters v.</u>

<u>Fidelity Mortgage of California, Inc.</u>, 730 F. Supp. 2d 1185, 1206 (E.D. Cal. 2010) (dismissing

plaintiff's negligence claim without leave to amend in mortgage loan case, because amendment

would be "futile under governing law, and plaintiff fails to allege any other facts that could

plausibly give rise to a duty on the part of defendants").

        Plaintiff explains that he intends his negligence claims to arise from the

Forbearance Agreement, and argues that such Agreement was for his benefit. (Oppo. at 34-35.)

He also argues that a duty of care was created based upon his particular dealings with defendants

by virtue of the six factors originating from the <u>Biakanja</u> case[12] (the "<u>Biakanja</u> factors").

---

[12] Plaintiff argues that the test for determining whether a financial institution owes a duty of care to a borrower-client "'involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached

1    Defendants correctly note that the court in <u>Nymark</u> analyzed the <u>Biakanja</u> factors

2    and concluded that, in the bank's conventional role as lender, it did not owe a duty of care to its

3    borrower in the preparation of an appraisal report. <u>Nymark v. Heart Federal Savings & Loan</u>

4    <u>Ass'n</u>, 231 Cal. App. 3d 1089 (1991).  However, even the court in <u>Nymark</u> cautioned that the

5    "general rule" that a lender does not owe a duty of care to a borrower is not absolute. <u>See</u> e.g.,

6    <u>Garcia</u>, 2010 WL 1881098, at *2 (". . . <u>Nymark</u> does not stand for the proposition that a lender

7    never owes a duty of care to a borrower.")  Further, at least one court has found that a <u>Biakanja</u>-

8    type duty of care arose in connection with "processing [a] loan modification application." <u>See</u> id.

9    at *3 (N.D. Cal. May 10, 2010) (finding that a lender owed a duty of care to a borrower-client in

10   processing the borrower's loan modification application).

11   Because plaintiff has not pleaded a "special circumstance" that would give rise to

12   a lender's duty of care, the MTD is granted as to plaintiff's negligence claims and those claims

13   will be dismissed.  Moreover, insofar as those claims arise from the Forbearance Agreement, the

14   undersigned will recommend that plaintiff's negligence claims be dismissed without leave to

15   amend. <u>See</u> <u>Watkinson</u>, 2010 WL 2196083, at *9.  Insofar as those claims arise from a duty that

16   may have been triggered based upon defendants' other actions or representations during the loan

17   modification application process, plaintiff shall have the opportunity to amend the claim to state

18   facts supporting the <u>Biakanja</u> factors.  The "negligent misrepresentation" claim must be pleaded

19   with particularity. <u>E.g.</u>, <u>U.S. Concord, Inc. v. Harris Graphics Corp.</u>, 757 F. Supp. 1053, 1058

20   (N.D. Cal. 1991) (dismissing negligent misrepresentation claim for lack of particularity and

21   because it rested upon the "same flawed allegations of misrepresentation as the fraud claim").

22   ////

23   ////

24

25   to the defendant's conduct, and [6] the policy of preventing future harm.'" (Oppo. at 34 (citing

26   <u>Connor v. Great Western Sav. & Loan Assn.</u> 69 Cal.2d 850, 865 (1968); <u>Biakanja v. Irving</u>, 49
     Cal.2d 647, 650 (1958).)

1        11.    Contract Claims

2            "A cause of action for breach of contract includes four elements: (1) that a

3    contract exists between the parties, (2) that the plaintiff performed his contractual duties or was

4    excused from nonperformance, that the defendant breached those contractual duties, and that

5    plaintiff's damages were a result of the breach.  Reichert v. General Ins. Co., 68 Cal. 2d 822, 830

6    (1968); First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001).

7            Although plaintiff does not formally plead that defendants "breached" the

8    Forbearance Agreement, plaintiff may plead sufficient facts to state such a claim.  Plaintiff

9    alleges that defendants' sending a July 27, 2010 Notice was a violation of the Forbearance

10   Agreement.  He alleges that he found the July 22, 2010 Notice of Intent to Foreclose confusing

11   because "plaintiff had paid the amounts required under the April 26, 2010 Forbearance

12   Agreement.  The amounts paid under the agreement were for June, July, and August . . . Plaintiff

13   had made all payments through August, it was not yet August and WACHOVIA was threatening

14   to foreclose before the end of August."  (FAC ¶ 142.)

15           Thus, plaintiff has pleaded the existence of a written contract (the Forbearance

16   Agreement), that he complied with its terms and made payments thereunder, and that defendant

17   Wachovia allegedly sent a July 22, 2010 Notice of Intent to Foreclose during the forbearance

18   period in violation of the agreement.  (FAC ¶ 142.)  Further, the Forbearance Agreement was

19   attached as an exhibit to the defendants' Request for Judicial Notice.  (Dft's RJN, Exh. G.)  The

20   court's review of the Forbearance Agreement does not indicate that a claim for breach of that

21   agreement should be barred as a matter of law at the pleading stage, and defendants have not

22   made arguments as to this potential breach.

23           However, plaintiff has not alleged which damages, if any, resulted from his

24   receipt of the July 22, 2010 Notice of Intent to Foreclose.  If plaintiff wishes to allege a claim that

25   Wachovia breached the Forbearance Agreement by sending the July 22, 2010 Notice of Intent to

26   Foreclose, plaintiff should amend to formally state the elements of such a claim, including

alleging damages (if any) that resulted directly from that breach.  As pleaded, there do not appear to be any such damages, especially as plaintiff has not pleaded that his properties were *actually* foreclosed upon during the forbearance period.  Regardless, plaintiff may amend his pleading to formally include a "Breach of Contract" claim with respect to the Forbearance Agreement.

Putting aside the potential for a claim for breach of the written Forbearance Agreement, it is unclear whether plaintiff hopes to allege the creation of an actual oral or implied contract guaranteeing him a loan modification.  Because it is possible plaintiff can plead additional facts supporting such a claim, plaintiff shall receive leave to formally set out such a claim if he wishes.  While plaintiff may be able to plead an oral or implied contract for a loan modification, he has not yet done so: for instance, plaintiff's allegations regarding the conversation with Saris are internally inconsistent (described infra) and as currently pleaded do not amount to an oral contract.  Regardless, plaintiff shall have leave to amend his pleading to formally allege an oral or implied contract if he believes he can do so in good faith.  However, as noted repeatedly herein, while plaintiff receives leave to amend he does *not* receive leave to add allegations relating to "Mexican drug cartels."

While defendants raise potentially valid legal challenges[13] to plaintiff's intimations regarding an oral contract for a modification, the undersigned cannot at this time state that plaintiff should not be permitted to at least attempt to formally plead his potential claims.  Of course, defendants shall have the opportunity to challenge the sufficiency plaintiff's contract claim(s) once the claim(s) are formally pleaded and the supporting facts clarified.

////

---

[13]   Defendants do not address the potential claim for breach of the written Forbearance Agreement and construe plaintiff's potential contract claim as a breach of an oral agreement for a loan modification.  (MTD pp. 10-12 (citing cases holding that an expression of confidence that a modification could occur were not sufficient to create a contract to modify a loan.))  Defendants' arguments may indeed preclude a claim that defendants allegedly breached an oral contract to modify plaintiff's loan, but the undersigned cannot make this determination unless and until plaintiff clarifies the nature and content of any alleged oral contract for a loan modification.

1          B.      Defendants' Motion to Strike

2          Defendants' MTS seeks to have plaintiff's damages claims stricken on grounds

3  that the FAC lacks allegations to support the claims from which those damages might arise.  For

4  instance, defendants claim that plaintiff is not entitled to injunctive relief stopping foreclosure

5  proceedings (FAC ¶ 304), a judicial declaration that title is vested in plaintiff alone (FAC ¶

6  307(e)), or any punitive damages (FAC at pp. 105, ln. 13, ¶¶ 1- 19) because plaintiff has not

7  adequately pleaded claims from which these damages would flow.  For example, defendants

8  argue that "[a]ll of plaintiff's damages claims are defective because plaintiff is not entitled to the

9  recovery of damages under California's UCL, nor is plaintiff entitled to damages under the

10  Consumers Legal Remedies Act because a loan modification is not "goods" or "services" within

11  the meaning of the Act, nor is plaintiff a "consumer" within the meaning of the Act because this

12  clearly involved his investment business. . . . [and] plaintiff fails to establish the basis of

13  actionable fraud, oppression or malice to support a punitive damages claim against defendants."

14  (MTS at 1.)  Thus, the MTS seeks to strike claims based on the insufficiency of the facts alleged

15  within the FAC.  (E.g., id. at 2 ("plaintiff fails to adequately plead the basis for an award of

16  punitive damages . . ..") (emphasis added); MTS at 7; see also Reply at 4.)  Defendants

17  essentially seek to dismiss all of plaintiff's requests for recovery, whether the recovery requested

18  is restitution, (see id. at 4); injunctive relief, (see id. at 5); statutory damages (see id. at 7-8); or

19  compensatory damages (see FAC, Prayer for Relief ¶¶ 3, 5.)

20          As a preliminary matter, this order recommends the dismissal of certain claims

21  without leave to amend: the CLRA claim, the False Advertising claim, the claim for violation of

22  California Civil Code § 2943, the wrongful foreclosure claim, and the quiet title claim as

23  described infra.  Therefore, defendants' requests to strike prayers for damages arising from these

24  dismissed claims are denied as moot.

25          As to defendants' requests to strike demands for punitive and other damages

26  arising from the remaining claims, the MTS is denied.  That certain requested damages are

1    unavailable as a matter of law is not a legal basis for granting a motion to strike.  Whittlestone,

2    618 F.3d at 972-74 ("Rule 12(f) does not authorize a district court to strike a claim for damages

3    on the ground that such damages are precluded as a matter of law.")  Further, because plaintiff

4    shall receive leave to amend the facts supporting his fraud claim, a conclusion that punitive

5    damages arising therefrom are unavailable would be premature.  Moreover, trial courts are not

6    permitted to determine disputed and substantial factual or legal issues in deciding a motion to

7    strike.  Id.  The court's inquiry is limited to whether the statement constitutes either an

8    insufficient defense, or redundant, immaterial, impertinent, or scandalous matter under Rule

9    12(f), and except for a cursorily describing the damages claims as "immaterial", defendants have

10   not explained how the requested damages fit into any of these categories.  (See id.; Notice of

11   MTS at 3.)  Defendants have not shown that the requested damages have "no possible bearing

12   on the subject matter of the litigation."  LeDuc, 814 F. Supp. at 830.

13          Accordingly, the remaining requests within the MTS are "really an attempt to

14   have certain portions of [plaintiff's] complaint dismissed. . . ."  Whittlestone, 618 F.3d at 974.

15   Therefore, the MTS is denied without prejudice.  Going forward, defendants may have valid

16   arguments regarding the availability of certain damages, especially given that this order

17   recommends dismissal of several claims with prejudice.   However, defendants will have the

18   opportunity to properly move to dismiss those damages claims if they remain in the amended

19   pleading plaintiff files in accordance with this order.  Further, plaintiff has requested leave to

20   amend his pleading "to seek restitution and not damages under Cal. Bus. & Prof. C. § 17200"; to

21   "seek injunctive relief for himself." (Pltf's Oppo. to MTS, Dkt. No. 42 at 4-5.)  Because plaintiff

22   will have leave to amend certain claims as described above, he will have the opportunity to

23   amend his damages requests and will perhaps obviate the need for future briefing on those issues.

24          C.      Requests for Judicial Notice

25          In their RJN, defendants ask the undersigned to take judicial notice of plaintiff's

26   Deed of Trust dated February 4, 2005, and recorded in the official records of the San Joaquin

42

1   County Recorder on February 17, 2005 (Exh. F to RJN), and the Forbearance Agreement, dated

2   April 26, 2010 (Exh. G to RJN).  Pursuant to Federal Rule of Evidence 201, these materials are

3   judicially noticeable and therefore this request is granted.  E.g., United States v. Ritchie, 342

4   F.3d 903, 908 (9th Cir. 2003); Gamboa v. Tr. Corps & Cent. Mortg. Loan Servicing Co., 2009

5   U.S. Dist. LEXIS 19613 *4-*10 (N.D. Cal. Mar. 12, 2009) (court took judicial notice of recorded

6   documents related to the foreclosure sale, including grant deed and deed of trust: "[t]hese

7   documents are also part of the public record and are easily verifiable.")  Plaintiff did not file any

8   objection to defendants' RJN, and during the hearing on the matter he stated that he had no

9   objection to the copy of the Forbearance Agreement attached to defendants' RJN.

10          Defendants also ask that the undersigned take judicial notice of other documents

11   such as defendants' corporate certificates, charters and profiles.  The undersigned did not find it

12   necessary to rely on any of these remaining exhibits to defendants' RJN.  Therefore, the

13   remainder of defendants' RJN is denied as moot.

14          The undersigned denies plaintiff's RJN.  (Pltf's RJN, Dkt. No. 43.)  Plaintiff

15   requests judicial notice of defendants' annual reports, a deferred prosecution agreement reflecting

16   Wachovia's agreement to the filing of a one (1) count information charging Wachovia with

17   failing to maintain an anti-money laundering program, and OTS "Schedule-SC (Consolidated

18   Statement of Condition)" documents from 2006 to 2009.  (Pltf's RJN, 1-3.)  However, in his

19   papers and during the hearing, plaintiff confirmed that while these documents broadly relate to

20   his theory that "Mexican drug cartels" are the true holders of his notes, nothing in the documents

21   references plaintiff's loans in particular.  Accordingly, the undersigned did not find it necessary

22   to rely upon any of these documents, and plaintiff's RJN is denied as moot.

23          In light of the foregoing, IT IS HEREBY ORDERED that:

24          1.   Defendants' Motion to Dismiss is granted.

25          2.   Plaintiff's claims for fraud, violation of the California Unfair Competition

26   law (Cal. Bus. & Prof. §§ 17200 et seq.); unfair debt collection under state and federal law, and

43

violation of RICO, are hereby dismissed without prejudice.  Plaintiff shall have leave to amend these claims.

       3.   Plaintiff's claims for negligent misrepresentation and negligence, insofar as they arise from defendants' alleged representations during the loan modification application process, are hereby dismissed without prejudice.  Plaintiff shall have leave to amend these claims in order to state facts supporting the Biakanja factors.

       4.   Plaintiff shall also have leave to formally plead a claims for breach of contract insofar as such claim may arise from defendants' alleged foreclosure activities during the forbearance period stated within the Forbearance Agreement, and/or insofar as such claim may arise from an oral contract for a loan modification resulting from representations made to plaintiff during the loan modification process.

       5.   Accordingly, plaintiff shall file an amended pleading entitled "Second Amended Complaint" within 30 days of being served with this order.

       6.   Plaintiff's "Second Amended Complaint" should omit headings and references to the claims dismissed without leave to amend herein.  Plaintiff does *not* have leave to add allegations that his loans are owned by "Mexican drug cartels" or other foreign entities, or to add related allegations within the Second Amended Complaint.

       7.  Defendants' Motion to Strike is denied.

       8.  Defendants' Request for Judicial Notice is granted with respect to Exhibits F and G thereto, but denied as to the remaining exhibits.

       9.  Plaintiff's Request for Judicial Notice is denied.

       Also in light of the foregoing, IT IS HEREBY RECOMMENDED that:

       1.   Plaintiff's claims for violation of the Consumers Legal Remedies Act ("CLRA"), false advertising, violation of California Civil Code § 2943, wrongful foreclosure, and quiet title, be dismissed with prejudice;

       2.   Plaintiff's claims for negligent misrepresentation and negligence, insofar as

1    they arise implicitly or explicitly from the Forbearance Agreement, be dismissed with prejudice.

2           These findings and recommendations are submitted to the United States District

3    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

4    days after being served with these findings and recommendations, any party may file written

5    objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

6    Such a document should be captioned "Objections to Magistrate Judge's Findings and

7    Recommendations."  Any response to the objections shall be filed with the court and served on

8    all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

9    Failure to file objections within the specified time may waive the right to appeal the District

10   Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

11   1153, 1156-57 (9th Cir. 1991).

12                    **IT IS SO ORDERED AND RECOMMENDED.**

13   DATED:  March 21, 2011

14

15                                        _Kendall J. Newman_____

16                                        KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

45