1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DENNLY R. BECKER, et al.,

11           Plaintiffs,                    No. 2:10-cv-02799 LKK KJN PS

12        v.

13   WELLS FARGO BANK, NA, INC. et al.,

14           Defendants.                    ORDER
     _____/

15

16           Presently before the court is defendants' Motion to Dismiss (the "Motion")

17   plaintiff's third amended pleading as modified by order of the court (Third Am. Compl., Dkt. No.

18   98; Order dated Aug. 22, 2012, Dkt. No. 115 at 15-17).[1] (Mot. to Dismiss, Dkt. No. 125.)

19   Plaintiff filed a written opposition to the pending motion.  (Opp'n, Dkt. No. 131.)  Defendants

20   filed reply briefing in support of the pending motion.  (Reply, Dkt. No. 134.)

21           The motion to dismiss came on for hearing on November 15, 2012.  (Minutes,

22   Dkt. No. 135.)  Attorney David Newman appeared on behalf of defendants.  Plaintiff appeared on

23   his own behalf.  The undersigned has fully considered the moving papers and appropriate

24

25        [1] This action proceeds before this court pursuant to Eastern District of California Local Rule
     302(c)(21) and 28 U.S.C. § 636(b)(1).  Although there are technically two plaintiffs in this case, an
     individual plaintiff and a trust controlled by him, the court uses the singular "plaintiff" in this order.
26   Plaintiff proceeds without counsel in this action.

portions of the record and, for the reasons that follow, denies the Motion.  The court also requires

the parties to file a joint status report as addressed herein.

I.      BACKGROUND

            Generally, this case involves plaintiff's loans and attempted loan modifications

relating to several of plaintiff's pieces of real property, and plaintiff's default on some of those

loans.  Plaintiff sued the banks or other entities that made, acquired, serviced, or refused to

modify the loans, and which ultimately attempted to foreclose on some of the properties.

Plaintiff's 113-page First Amended Complaint alleged the following claims for relief against

defendants: (1) fraud; (2) violation of the Consumer Legal Remedies Act, Cal. Civ. Code

§§ 1750 et seq.; (3) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et

seq.; (4) false advertising, Cal. Bus. & Prof. Code §§ 17500 et seq.; (5) violation of California

Civil Code § 2943; (6) wrongful foreclosure proceedings; (7) quiet title; (8) unfair debt collection

practices under state and federal law; (9) Racketeer Influenced and Corrupt Organizations

("RICO") violations, 18 U.S.C. §§ 1961 et seq.; and (10) negligent misrepresentation and

negligence.  (See First Am. Compl. at 56-103, Dkt. No. 19.)

            Defendants previously filed a motion to dismiss with respect to plaintiff's original

pleading.  (Mot. to Dismiss, Dkt. No. 11.)  On August 1, 2011, the court adopted findings and

recommendations filed by the undersigned and dismissed some of plaintiff's claims with leave to

amend and others with prejudice.  (See Order, Aug. 1, 2011, Dkt. No. 58.)  The court dismissed

plaintiff's wrongful foreclosure and quiet title claims with prejudice on the grounds that those

claims were preempted by the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461 et seq.

(See Order and Findings and Recommendations, Mar. 22, 2011, at 27-32, Dkt. No. 49, adopted

by Order, Aug. 1, 2011, at 2, 7.)  The court also construed plaintiff's objections to the

undersigned's findings and recommendations as a motion for reconsideration and denied it

insofar as it challenged the dismissal of the wrongful foreclosure and quiet title claims.  (See

Order, Aug. 1, 2011, at 2.)  In its August 1, 2011 order, the court further explained the relevant

1  HOLA preemption analysis.  (Id. at 2-4.)

2          Remaining unsatisfied with the court's ruling, plaintiff sought reconsideration of

3  the order addressing plaintiff's first motion for reconsideration, arguing that the court committed

4  "clear error" in its analysis of HOLA preemption (Dkt. No. 59).  After considering supplemental

5  briefing, the court denied plaintiff's motion for reconsideration of the denial of plaintiff's first

6  motion for reconsideration.  (Order, Mar. 29, 2012, Dkt. No. 87.)

7          Meanwhile, plaintiff filed a Second Amended Complaint and later filed a motion

8  for leave to file a Third Amended Complaint (Dkt. No. 89) before the court could resolve

9  defendants' motion to dismiss the Second Amended Complaint.  The undersigned denied

10  plaintiff's motion for leave to amend without prejudice based on the deficiencies in the proposed

11  Third Amended Complaint.  The undersigned then granted plaintiff leave to file another motion

12  for leave to amend, and held the motion to dismiss the Second Amended Complaint in abeyance

13  pending resolution of the motion for leave to amend.  (Order, May 14, 2012, Dkt. No. 92; see

14  also Order, Oct. 17, 2011, Dkt. No. 80.)[2]  On June 19, 2012, plaintiff filed another motion for

15  leave to file a Third Amended Complaint and a revised, proposed Third Amended Complaint

16  (Dkt. Nos. 97-98).  Plaintiff's proposed Third Amended Complaint included claims for

17  "Preempted/Unlawful Foreclosure" and "Improper Foreclosure Process" that challenge

18  defendants' right to foreclose on plaintiff's properties.  (See Proposed Third Am. Compl. ¶¶ 73-

19  89, Dkt. No. 98.)

20          The undersigned issued Findings and Recommendations recommending that

21  plaintiff's motion for leave to amend (Dkt. No. 97) be granted in part and denied in part, and that

22  ////

23  ////

24

25          [2] Notably, plaintiff's first proposed Third Amended Complaint—which had ballooned to 140
pages and from ten claims to eighteen claims—included claims entitled "Preempted/Unlawful
Foreclosure" and "Improper Foreclosure Process" that again challenge defendants' right to foreclose

26  on three of plaintiff's properties.  (See Proposed Third Am. Compl. ¶¶ 374-94, Dkt. Nos. 89, 89-2.)

plaintiff be granted leave to pursue some of his amended claims but not others.[3]  (Order, Aug. 22, 2012, Dkt. No. 115 at 15-17.)

The United States District Judge adopted the undersigned's Findings and Recommendations on September 19, 2012.  (Dkt. No. 123).  On September 29, 2012, defendants moved to dismiss plaintiff's Third Amended Complaint (Third Am. Compl., Dkt. No. 125) as modified by the Order issued August 22, 2012 (Dkt. No. 115 at 15-17), and that motion is addressed herein.

II.     LEGAL STANDARDS

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053 (2010).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely

_____

    [3]  Plaintiff's "wrongful foreclosure" and "quiet title" claims were not among those the undersigned recommended that plaintiff be given leave to pursue.  (Id.)

because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071 (citations and

quotation marks omitted).  The court must construe a pro se pleading liberally to determine if it

states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give

plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the

defect.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri

v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are

liberally construed, particularly where civil rights claims are involved"); see also Hebbe v. Pliler,

627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings

liberally even when evaluating them under the standard announced in Iqbal).

        In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may

generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of

Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although

the court may not consider a memorandum in opposition to a defendant's motion to dismiss to

determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corr., 151 F.3d

1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in

deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2

(9th Cir. 2003).

III.    DISCUSSION

        A.      The Trust

        Defendants argue that plaintiff cannot represent The Becker Trust Dated March

25, 1991 (the "Trust") in this action because he is not a licensed attorney.  (Mot. to Dismiss at 2.)

While defendants cite authorities on the subject of non-attorneys representing trusts, defendants

do not discuss whether plaintiff might be a "beneficial owner" of the Trust such that he may

represent the Trust in this case.

////

1    The general rule in federal litigation is that a non-attorney can represent himself

2 on his own behalf.  See 28 U.S.C. § 1654 (stating that "[i]n all courts of the United States the

3 parties may plead and conduct their own cases . . . ."); C.E. Pope Equity Trust v. United States,

4 818 F.2d 696, 697 (9th Cir. 1987).  Although an individual has the right to represent himself,

5 however, an individual does not have the right to appear on behalf of anyone other than himself.

6 C.E. Pope Equity Trust, 818 F.2d at 697 (citing Russell v. United States, 308 F.2d 78, 79 (9th

7 Cir. 1962)); see also Knoefler v. United Bank of Bismark, 20 F.3d 347, 348 (8th Cir. 1994)

8 (citing C.E. Pope Equity Trust and holding that pro se purported trustees had no right to represent

9 trusts).

10    Further, pursuant to this court's local rules, "[a] corporation *or other entity* may

11 appear only by an attorney."  E.D. Local Rule 183(a) (emphasis added).  The rule requiring entity

12 defendants to appear only through counsel applies to trusts.  C.E. Pope Equity Trust, 828 F.2d at

13 698 (holding that even a party's status as trustee does not include the right to present pro se

14 arguments in federal court, and while Federal Rule of Civil Procedure 17(a) authorizes a trustee

15 of an express trust to sue on behalf of the trust without joining the trust beneficiaries, it does not

16 authorize the trustee to proceed pro se); see also Alpha Land Co. v. Little, 238 F.R.D. 497, 502

17 (E.D. Cal. 2006) ("a trust can only be represented by an *attorney* in federal court") (emphasis in

18 original) (citing C.E. Pope Equity Trust, 828 F.2d at 697 and 28 U.S.C. § 1654).

19    The court in C.E. Pope Equity Trust held that, while a trustee cannot appear pro se

20 on the trust's behalf, there is an exception to that general rule: an individual who is the trust's

21 "beneficial owner" may appear pro se on the trust's behalf.  C.E. Pope Equity Trust, 818 F.2d at

22 697-98 (quoting 28 U.S.C. § 1654).  The court explained,

23

24    Here the record does not identify the Trusts' beneficiaries.  Because Stradley
     is not the actual beneficial owner of the claims being asserted by the Trusts
     (so far as one can tell from the record), he cannot be viewed as a 'party'
25    conducting his '*own* case personally' within the meaning of Section 1654.

26 Id. (emphasis in original); Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008) (where

6

1  pro se party conceded that he was alleged to be representing is his employer benefit plan, court

2  held that "[b]ecause [he] is not the actual beneficial owner of the claims being asserted" he could

3  not be "viewed as a 'party' conducting his 'own case personally'"); accord Alpha Land Co., 238

4  F.R.D. at 502 ("Although individuals who are parties to an action may appear in propria persona,

5  this exception applies only to individuals who are asserting their own personal rights or

6  interests").)

7         Here, plaintiff purports to bring this case on his own behalf and behalf of his

8  Trust.  (Third Am. Compl. at 1-2.)  During the hearing, plaintiff stated on the record that he was

9  in fact the Trust's sole beneficial owner.  Accordingly, unlike the pro se trustee in C.E. Pope

10 Equity Trust, plaintiff has confirmed on the record that he is indeed the actual beneficial owner

11 of the claims being asserted on the Trust's behalf in this case, see C.E. Pope Equity Trust, 818

12 F.2d at 697-98, and therefore defendants have not shown that the Trust must be dismissed from

13 this action at this time.[4]

14         B.   Fraud

15         Defendants argue that plaintiff's fraud claim fails because plaintiff has not alleged

16 material misrepresentations of fact and has not alleged his reasonable reliance upon such

17 misrepresentations.  (Mot. to Dismiss at 3-4.)  These arguments are not well-taken.

18         Plaintiff alleges that defendants told him his loans "would be" modified if he took

19 certain steps, such as supplying additional documentation, and that in reliance on these

20 statements he proceeded with withdrawing monies from his IRA prematurely, among other

21
      ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
         [4]  During the hearing, counsel for defendants stated that, in a prior motion to dismiss,
22 defendants had raised the issue of plaintiff improperly representing the Trust.  A review of the
   court's docket reflects that defendants did make mention of the issue in one sentence and without
23 citation to authorities in a prior motion to dismiss that was denied as moot upon plaintiff's filing an
   amended pleading. (Mot. to Dismiss filed Oct. 27, 2010, Dkt. No. 11 at 1 ("Incidentally, it appears
24 that some or all of these properties are owned by a trust presumably controlled by Mr. Becker; to the
   extent that is the case, a trust can not represent itself in court."); Order entered Nov. 12, 2012, Dkt.
25 No. 15 (denying motion as moot given plaintiff's filing of amended pleading).) However, defendants
   failed to re-raise the issue in their subsequent motion to dismiss.  (Mot. to Dismiss filed Jan. 13,
26 2011, Dkt. No. 26.)

7

things.  (Third Am. Compl. ¶¶ 17 ("modification would be processed quickly"); 19 ("$2000 would make the difference" in his obtaining a modification); 24 ("Ms. Vasquez said this [lowered payment] was acceptable to Wachovia"); 27 ("Saris said plaintiff would quickly receive loan modifications"); 28(a) ("he said plaintiff would get the modifications"); 28(c) ("Saris stated the Wachovia computer showed that plaintiff would be quickly given loan modifications"); 28(d)-(f) (alleging defendants made multiple misrepresentations to plaintiff that his documentation had "not been received" when it actually had been received, that he had "withdrawn" his modification requests when he had not actually withdrawn them, that his modification requests were "closed because of missing documentation or information" when he actually had supplied such documentation and information, and that his modification request "fell out of the system because of missing documentation" that was not actually missing from defendants' system); 32 (alleging a lowered credit score resulted from defendants' purposefully delaying plaintiff's loan modification process); 33-37 (alleging that defendants' agent "Teo" told plaintiff to make monthly withdrawals from his retirement account to qualify for the modification, and alleging that plaintiff actually made such withdrawals in reliance on the representation).)

Taking plaintiff's well-pleaded allegations as true, as the court must at this procedural posture, plaintiff has alleged material misrepresentations of fact with respect to the requested loan modifications, his reliance on defendants' representations thereon, and resulting damages in the form of, among other things, premature withdrawals from his IRA accounts resulting in loss of tax-deferred income.  Plaintiff alleges that he materially changed his behavior, i.e., that he made such withdrawals in actual reliance upon defendants' representations.  (Id. ¶¶ 31-32, 37.)  Accordingly, defendants' motion is denied in this regard.

Defendants also argue that plaintiff was ultimately told just "weeks" after the alleged misrepresentations that his loans would not be modified, such that he could not have incurred "any real damage."  (Mot. to Dismiss at 4.)  This argument is not well-taken.  Whether

1  plaintiff actually ultimately suffered the damages he alleges is not the issue at this procedural

2  posture.

3              Defendants also argue that plaintiff fails to allege an "intent to deceive." (Mot. to

4  Dismiss at 5.)  This argument is not well-taken.  For instance, plaintiff alleges that defendants

5  knew they had received certain documents from plaintiff, as reflected by defendants' internal

6  computer tracking programs, and yet purposefully told him that no such documents had been

7  received. (Third Am. Comp. ¶¶ 28(d)-(e), 29, 55.)  Plaintiff also alleges defendants acted with

8  the intent to "extract[] money from the plaintiff upon threat of seizing his property." (Id. ¶ 6.)

9  Taking well-pleaded allegations in plaintiff's favor, as the court must do at this procedural

10  posture, the undersigned cannot conclude that plaintiff has failed to adequately allege defendants'

11  intent to defraud.

12             Defendants also argue that plaintiff's "fraud claim is barred by the statute of

13  frauds." (Mot. to Dismiss at 7.)  Defendants appear to argue that because no valid oral agreement

14  to modify loans could have been legally created given that plaintiff's deed of trust contained a

15  provision requiring modifications to be in writing, then no fraud could have possibly occurred.

16  (Id.)  Defendants support this argument by citing to cases where promises to modify a loan were

17  held to not amount to enforceable contracts to complete a modification. (Id. (citing cases).)

18  Defendants' argument is not well-taken.  The undersigned rejected this same argument in his

19  previous findings and recommendations (Dkt. No. 49 at 16), as adopted in the Order of the

20  assigned United States District Judge (Dkt. No. 58).  Here again, defendants do not cite any

21  authorities holding that a fraud claim must be dismissed as a matter of law if the allegedly

22  fraudulent statement could not have created a valid contract.  In short, defendants' arguments

23  blur the distinctions between the breach, creation, and/or modification of a valid contract and the

24  intentional tort of fraud, and defendants have not demonstrated that a fraud claim cannot be

25  maintained as a matter of law here.

26  ////

9

1    Defendants have not shown that plaintiff's fraud claim is defectively alleged, so

2    defendants' motion is denied with respect to plaintiff's fraud claim.

3            C.      Promissory Estoppel

4    Defendants argue that plaintiff's claim for promissory estoppel is deficient

5    because plaintiff failed to allege an "intent to deceive."  (Mot. to Dismiss at 8.)  Defendants

6    argue that plaintiff did not allege that defendants' agent, Mr. Saris, "intended not to perform" his

7    promise that plaintiff's loans would be modified upon receipt of certain documents.  (Id.)

8    Defendants argue that plaintiff's claim fails because he has not alleged that the intent to deceive

9    existed "at the time" of the allegedly false statements.  (Id.)

10    However, as described above, plaintiff alleges that defendants' agents —

11    including Mr. Saris, Ms. Vasquez, "Teo," "Margie," and other representatives — knew

12    defendants had received certain documents from plaintiff as reflected by defendants' internal

13    computer tracking programs, and yet purposefully told him that no such documents had been

14    received.  (Third Am. Comp. ¶¶ 24, 27-29.)  In addition to the allegations of various alleged

15    misrepresentations that plaintiff "would" receive a loan modification, and the alleged

16    misrepresentations that plaintiff's documents had never been received, plaintiff also alleges that

17    defendants' agents acted with the intent to "extract[] money from the plaintiff upon threat of

18    seizing his property" during the modification discussions.  (Id. ¶ 6.)  Taking well-pleaded

19    allegations in plaintiff's favor, as the court must do at this procedural posture, the undersigned

20    cannot conclude that plaintiff has failed to adequately allege defendants' intent to deceive.

21    Defendants also argue that plaintiff failed to allege that defendants "induced him

22    to enter into a contract," which defendants argue renders the promissory estoppel claim defective.

23    (Mot. to Dismiss at 9.)  The argument is not well-taken.  Defendants cite to Lazar v. Superior

24    Court, 12 Cal. 4th 631, 638-39 (1996), as the sole authority in support of this argument.

25    However, Lazar does not stand for the proposition that promissory estoppel claims *must* include

26    allegations of a fraudulently-induced contract in order to surpass the pleading stage.  Instead, the

10

1   court in Lazar noted that "[a]n action for promissory fraud *may lie* where a defendant

2   fraudulently induces the plaintiff to enter into a contract."  Lazar, 12 Cal. 4th at 638 (emphasis

3   added).  That a promissory fraud claim "may lie" where a contract is fraudulently induced does

4   not mean, as defendants suggest, that all promissory fraud claims require the existence of

5   fraudulently-induced contracts, or that promissory fraud claims fail as a matter of law when there

6   are no allegations of a fraudulently-induced contract.  In any event, plaintiff *has* alleged a

7   potentially fraudulently-induced contract, namely, the Forbearance Agreement, which plaintiff

8   alleges he signed in part due to reliance on defendants' agents' alleged representations that his

9   loans would be modified thereafter.  (Third Am. Compl. ¶ 42 ("Plaintiff had been working with

10  defendants for about eight months to obtain a Shelborne permanent loan modification.  The

11  written Forbearance Agreement provided by the defendants appeared to represent the culmination

12  of those efforts.").)

13          Accordingly, defendants have not shown that plaintiff's promissory estoppel claim

14  is defectively alleged as a matter of law, so defendants' motion is denied in this regard.

15          D.    RESPA

16          Defendants argue that plaintiff's Real Estate Settlement Procedures Act

17  ("RESPA") claim is fatally defective because plaintiff has not alleged having suffered "actual

18  damages" in the form of "pecuniary loss" resulting from defendants' alleged failure to respond to

19  plaintiff's "Qualified Written Requests" ("QWRs") pursuant to 12 U.S.C. § 2605(e).  (Mot. to

20  Dismiss at 9 (citing Molina v. Washington Mut. Bank, No. 09-CV-00894-IEG (AJB), 2010 WL

21  431439, at *7 (S.D. Cal. Jan. 29, 2010) (unpublished) (dismissing RESPA claim because

22  plaintiffs only conclusorily alleged the requisite "pecuniary loss" and did not allege actually

23  having sent QWRs to defendant); Lemieux v. Litton Loan Serv., LP, No. 2:09-cv-02816 JAM

24  EFB, 2009 WL 5206641, at *3 (E.D. Cal. Dec. 22, 2009) (unpublished) (dismissing RESPA

25  claim for failure to allege "actual" damages and failure to allege having sent QWRs to

26  defendant); Garcia v. Wachovia Mortgage Corp., 676 F. Supp. 2d 895 (C.D. Cal. 2009)

1   (dismissing RESPA claim without prejudice for failure to allege actual damages).)

2          Plaintiff alleges that defendants' failures to respond to his QWRs caused him not

3   to pay off his loan balances.  Plaintiff alleges that he distrusted defendants given: (1) their alleged

4   misrepresentations during protracted loan modification discussions, and (2) their alleged failures

5   to respond to his QWRs with confirmation of the full extent of defendants' "interests in the

6   property."  (Third Am. Compl. ¶ 62 ("Given the malice and deceit by the defendants in the

7   previous transactions, it was an unacceptable risk to pay the six properties off unless plaintiff

8   could pay them off completely and totally remove defendants' interests in the property.").)  The

9   combination of these factors allegedly caused plaintiff to so distrust defendants that he chose not

10  to pay the balances of his loans and instead chose to "continue to make interest payments he

11  otherwise would not have made."  (Id.)

12         It is not at all clear that plaintiff's choosing to remain subject to interest payments

13  — payments that he was already obligated to make — should be considered "actual" damages

14  resulting from allegedly unanswered QWRs.  However, none of defendants' cited authorities

15  address damages similar to plaintiff's.  (Mot. to Dismiss at 9-10 (citing cases).)  Defendants'

16  cited authorities do not state that refraining from paying the balance of loans and continuing to

17  make interest payments cannot, as a matter of law, amount to a form of "actual" damages.

18  Moreover, defendants have not meaningfully analogized to the authorities they broadly cite.

19  Defendants have not explained how the plaintiffs in those cases framed their damages similar to

20  the way plaintiff frames his.  This lack of analysis thwarts defendants' argument, given that with

21  RESPA claims, "courts have interpreted this requirement [to plead pecuniary loss] liberally."

22  Yulaeva v. Greenpoint Mortg. Funding, Inc., No. CIV. S-09-1504 LKK/KJM, 2009 WL

23  2880393, at *15 (E.D. Cal. Sept. 9, 2009) (unpublished).  For instance, plaintiffs have been able

24  to plead such a loss by claiming that they had suffered negative credit ratings as a result of

25  violations of RESPA.  Allen v. United Financial Mortg. Corp., 660 F. Supp. 2d 1089, 1097 (N.D.

26  Cal. 2009).  Accordingly, defendants have not shown that plaintiff has failed to adequately allege

1    "actual" resulting damages, at least for purposes of surpassing the pleading stage.

2            Defendants also challenge the allegation that they engaged in a "pattern or

3    practice of non-compliance" with RESPA.  (Mot. to Dismiss at 10.)  Defendants argue that

4    plaintiff only conclusorily alleges a "pattern" of non-compliance.  (Id. (citing cases).)  However,

5    while he uses the word "pattern," plaintiff also alleges that defendants failed to respond to

6    several different QWRs sent on different dates and regarding several different properties.  (Third

7    Am. Compl. ¶¶ 58-64.)  Defendants have not cited authorities for the proposition that several

8    allegedly-ignored QWRs sent on different dates regarding several properties belonging to one

9    plaintiff cannot constitute a "pattern" as a matter of law.  Taking the allegations in the light most

10   favorable to plaintiff, defendants have not shown that these multiple alleged failures to respond

11   cannot reasonably be considered a "pattern."

12           Defendants have not shown that plaintiff's RESPA claim is defectively alleged as

13   a matter of law, so defendants' motion is denied in this regard.

14                   E.      Defamation

15           Under California law, "[t]he elements of a defamation claim are (1) a publication

16   that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes

17   special damage."  Wong v. Tai Jing, 189 Cal. App. 4th 1354, 1369 (2010).

18           Plaintiff's defamation claim is based on defendants' repeated violations of a

19   preliminary injunction enjoining them from proceeding with foreclosures upon plaintiff's

20   properties.  (Third Am. Compl. ¶¶ 90-100 (citing Order Granting Prelim. Inj., Dkt. No. 21).)

21   Plaintiff alleges that, on different occasions, defendants posted Notices of Sale on two of his

22   properties in violation of the preliminary injunction issued previously in this case.  (Id.)

23           Defendants argue that the defamation claim fails because plaintiff does not allege

24   that defendants made statements or posted the Notices of Sale with "malicious intent" or an intent

25   to "injure or harass" plaintiff.  (Mot. to Dismiss at 10-11 (citing Lesperance v. North Am.

26   Aviation, Inc., 217 Cal. App. 2d 336, 348 (1963) (where plaintiff alleged defamation in

1  connection with information his former employer passed to his potential employers, the court

2  analyzed the communications as subject to the privilege codified in California Civil Code § 47

3  and clarified that the pleading must allege "malice" to destroy that privilege, ultimately holding

4  that conclusory allegations and a lack of "facts showing that malice existed on the part of

5  defendant" rendered plaintiff's claim defective at pleading stage).)

6          Defendants' argument regarding a lack of "malice" allegations is not well-taken.

7  California courts do not generally impose a "malice" element when analyzing defamation claims.

8  See 5 Witkin, Summary 10th (2005) Torts, § 529, p. 782 ("[*M*]*alice or actual ill will is not an*

9  *element of defamation.* It is relevant in only two situations: (a) It must, as in other tort actions, be

10  shown in order to obtain punitive damages; (b) lack of malice must be shown by a defendant

11  whose defense is qualified privilege.") (emphasis added).  In cases involving a private figure

12  plaintiff, a defamation claim may be supported by evidence of mere "negligence" with respect to

13  the truth or falsity of the defamatory statement.  See Khawar v. Globe Int'l, Inc., 19 Cal. 4th 254,

14  274 (1998) (a private figure plaintiff need not "prove actual malice to recover damages for actual

15  injury caused by publication of a defamatory falsehood.").  Defendants' suggestion that "malice"

16  is an element of a defamation claim appears to have been drawn from distinguishable cases

17  involving *privileged* communications under Civil Code § 47 (i.e., communications between a

18  former employer and a potential employer).  Unlike the Lesperance case, this case does not clearly

19  implicate the qualified privilege codified in California Civil Code § 47.  If defendants contend that

20  this statute applies to their alleged communications, they have not explained why they believe the

21  alleged communications fit within the scope of the statute.  Lesperance, 217 Cal. App. 2d at 348.

22  In broadly citing authorities applying California Civil Code § 47, defendants end up arguing that

23  the pleading fails to include allegations required to override a privilege that they have not shown

24  applies in the first place.

25          In any case, even if a qualified privilege were to apply to the alleged

26  communications in this case, "malice" sufficient to overcome the privilege can take the form of

14

1  "hatred or ill will," and can also take the form of "reckless disregard for the publication's truth."

2  Family Home and Finance Center, Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 826-27

3  (9th Cir. 2008).  Plaintiff has plausibly alleged that defendants acted recklessly by posting Notices

4  of Sale on his properties in violation of an express court order.  (Third Am. Compl. ¶¶ 91-100.)

5  Accordingly, defendants have not compellingly shown that plaintiff's pleading fails to state a

6  defamation claim at this procedural posture.

7          Defendants also argue that, because the posted Notices of Sale accurately reflected

8  the amounts plaintiff owes on his loans, plaintiff cannot properly allege the "falsity" element of a

9  defamation claim.  (Mot. to Dismiss at 11.)  Defendants argue that plaintiff has "not pled that the

10  statement[s] were actually false."  (Id.)  Contrary to defendants' suggestion, plaintiff has alleged

11  that "the statements in the NOS [Notice of Sale] are false or seriously in doubt."  (Third Am.

12  Compl. ¶¶ 96-98.)  To the extent the defendants argue that the debt amounts described in the

13  erroneously posted Notices were indeed accurate, the actual truth of these statements is not before

14  the court at this posture and is instead a matter for summary judgment.  Moreover, plaintiff's

15  defamation claim appears grounded in the communicative conduct of allegedly improper *posting*

16  of the Notices of Sale (Third Am. Compl. ¶¶ 91-100), and defendants have not cited authorities

17  suggesting that the improper posting of a Notice of Sale in violation of a court order cannot, as a

18  matter of law, serve as the basis for a defamation claim.

19          Accordingly, defendants have not shown that plaintiff's defamation claim is

20  defectively alleged as a matter of law, and defendants' motion is denied with respect to that claim.

21          F.    Negligence And Negligent Infliction Of Emotional Distress

22          Under California law, "[t]he elements of negligence are: (1) defendant's obligation

23  to conform to a certain standard of conduct for the protection of others against unreasonable risks

24  (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close

25  connection between the defendant's conduct and resulting injuries (proximate cause); and (4)

26  actual loss (damages)."  Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (citing McGarry v.

1  Sax, 158 Cal. App. 4th 983, 994).

2          Plaintiff frames his claim as both for "negligence" and for "negligent infliction of

3  emotional distress."  (Third Am. Compl. at 28.)  However, the California Supreme Court has

4  clarified that "there is no independent tort of negligent infliction of emotional distress."  Potter v.

5  Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984 (1993); Chaconas v. JP Morgan Chase Bank,

6  713 F. Supp. 2d 1180, 1186-88 (S.D. Cal. 2010) (citing Potter and other cases).  In any event, a

7  claim for emotional distress damages arising from negligence has the same elements as a claim for

8  negligence.  Lawson v. Management Activities, Inc., 69 Cal. App. 4th 652, 655-57 (1999).

9          In granting plaintiff's motion for leave to file the Third Amended Complaint, the

10 court limited plaintiff's negligence claim to two bases: (1) the alleged negligence during the loan

11 modification process; and (2) the alleged negligence concerning defendants' improper posting

12 Notices of Sale.  Defendants argue that plaintiff cannot state either claim because he has not

13 sufficiently alleged defendants' "duty of care."  (Mot. to Dismiss at 11.)  "The question of the

14 existence of a legal duty of care . . .  presents a question of law which is to be determined by the

15 courts alone."  First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler, 210 F.3d 983, 987

16 (9th Cir. 2000).  "Absent the existence of duty . . . there can be no breach and no negligence."

17 Nichols v. Keller, 15 Cal. App. 4th 1672, 1683 (1993).

18         Defendants argue that, as conventional lenders, they lack a duty of care to

19 borrowers like plaintiff.  (Mot. to Dismiss at 11-12.)  The court's prior order partially granted

20 defendants' motion to dismiss claims of "negligence" due to plaintiff's failure to plead a "special

21 relationship" going beyond the traditional lender-borrower relationship.  (Order, Dkt. No. 49 at

22 37.)  The court granted leave to amend so plaintiff could plead a "special relationship" supporting

23 his negligence claims.  (Id.)

24         "Under California law, a lender does not owe a borrower or third party any duties

25 beyond those expressed in the loan agreement, except[] those imposed due to special

26 circumstance."  Resolution Trust Corp. v. BVS Dev., 42 F.3d 1206, 1214 (9th Cir. 1994) (citing

1   Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991)).  Special

2   circumstances triggering a duty may arise when a lender actively participates in the financed

3   enterprise.  See Nymark, 231 Cal. App. 3d at 1096; Wagner v. Benson, 101 Cal. App. 3d 27, 35

4   (1980); Sohal v. Fed. Home Loan Mortg. Corp., No. C 11-01941 JSW, 2011 WL 3842195, at *8-

5   9 (N.D. Cal. Aug. 30, 2011) (unpublished) (dismissing plaintiffs' negligence claim where

6   plaintiffs did "not allege that [defendant banks] acted negligently in connection with the loan

7   modification process" and where plaintiffs alleged only that defendant banks participated in Home

8   Affordable Modification Program ("HAMP"), which was not itself sufficient to allege that the

9   bank had "gone beyond its usual role of a money lender.").  A lender may also be secondarily

10  liable through the actions of a mortgage broker with fiduciary duty to the borrower-client, if there

11  is an agency relationship between the lender and the broker.  See Plata v. Long Beach Mortg. Co.,

12  No. C 05-02746 JF, 2005 WL 3417375, at *7-9 (N.D. Cal. Dec. 13, 2005) (unpublished).

13          The court in Nymark did not hold, however, that the "general rule" that a lender

14  lacks a duty of care to a borrower is an absolute rule with out exceptions.  Nymark, 231 Cal. App.

15  3d at 1085-96 (describing the "general" rule and noting exceptions, such as when a lender

16  "actively participates" in a financed enterprise with the borrower); Garcia v. Ocwen Loan Serv.,

17  LLC, No. C 10-0290 PVT, 2010 WL 1881098, at *2 (N.D. Cal. May 10, 2010) (unpublished)

18  ("Nymark does not stand for the proposition that a lender never owes a duty of care to a

19  borrower.") (emphasis in Garcia) (holding that Nymark requires application of a six-factor test to

20  determine whether a duty of care exists between lenders and borrowers).

21          With respect to loan modification negotiations like those alleged here, "[n]umerous

22  cases have characterized a loan modification as a traditional money lending activity" that does not

23  give rise to a duty of care.  Armstrong v. Chevy Chase Bank, FSB, No. 5:11–cv–05664 EJD, 2012

24  WL 4747165, at *4 (N.D. Cal. Oct. 3, 2012) (unpublished) (citing Settle v. World Sav. Bank,

25  F.S.B., No. ED CV 11–00800 MMM, 2012 WL 1026103, at *7-9 (C.D. Cal. Jan.11, 2012)

26  (unpublished); Johnston v. Ally Fin. Inc., No. 11–CV–0998–H BLM, 2011 U.S. Dist. LEXIS

1  83298, at *10, 2011 WL 3241850 (S.D. Cal. July 29, 2011) (unpublished) ("In addition, loan

2  modification is an activity that is intimately tied to Defendant's lending role.") (internal

3  quotations omitted)).  Defendants cite to similar authorities for the proposition that negligence

4  claims cannot arise from arms-length loan modification negotiations.  (Mot. to Dismiss at 12-15

5  (citing cases, including Dooms v. Fed. Home Loan Mortg. Corp., No. CV F 11–0352 LJO DLB,

6  2011 WL 1232989, at *11-13 (E.D. Cal. 2011) (unpublished) (dismissing negligence claim

7  because lender had no duty to "process" borrower's modification application and cease

8  foreclosure proceedings because the complaint depicted only an "arms-length transaction, nothing

9  more.").)

10      However, at least some district courts have held that a duty of care *can* arise in

11  connection with a lender's "processing [a] loan modification application" depending on the

12  lender's alleged conduct in the modification process.  See Garcia, 2010 WL 1881098, at *3

13  (finding that a lender owed a duty of care to a borrower-client in processing the borrower's loan

14  modification application, because "by asking Plaintiff to submit supporting documentation,

15  Defendant undertook the activity of processing Plaintiff's loan modification request.  Having

16  undertaken that task, it owed Plaintiff a duty to exercise ordinary care in carrying out the task.").[5]

17  Similarly, some courts have found a "duty" to be sufficiently alleged in connection with a lender's

18  obligations arising from a "modification plan" between the lender and the borrower, or from

19  ongoing modification negotiations rife with delays, lost documents, and representations that a

20  modification would be given.  See Ansanelli v. JP Morgan Chase Bank, N.A., No. C 10–03892

21  WHA, 2011 WL 1134451, at *7 (N.D. Cal. March 28, 2011) (unpublished) (denying motion to

22  dismiss given that "the complaint alleges that defendant went beyond its role as a silent lender and

23  loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them

24  ────────────────

25      [5]  The undersigned notes that although the Garcia case was cited in the court's prior analysis
    of plaintiff's negligence claim, see Order, Dkt No. 39 at 48, defendants did not attempt to distinguish
26  the Garcia case and did not address it in their pending motion.

18

1    concerning the trial period plan. [T]his is precisely 'beyond the domain of a usual money lender.'

2    Plaintiffs' allegations constitute sufficient active participation to create a duty of care to plaintiffs

3    to support a claim for negligence."); Crilley v. Bank of Am., N.A., Civil No. 12–00081

4    LEK–BMK, 2012 WL 1492413, at * 9-11 (D. Haw. April 26, 2012) (unpublished) (denying

5    motion to dismiss because plaintiffs "have pled sufficient facts to support a finding that Defendant

6    went beyond its conventional role as a loan servicer by soliciting Plaintiffs to apply for a loan

7    modification and by engaging with them for several months" regarding the modification).

8            At least for pleading stage purposes, given that the undersigned must take all well-

9    pleaded allegations as true and in the light most favorable to the plaintiff, defendants' minimal

10   application of cited cases to the particular facts of this case is not sufficient to show plaintiff's

11   negligence claims are deficient as a matter of law.  Defendants have neither addressed cases like

12   Garcia and Crilley, nor compellingly distinguished Ansanelli, all of which involved loan

13   modification negotiations or applications and lenders' alleged misconduct in connection

14   therewith, such as long delays, lost documents, and alleged representations to the borrower similar

15   to those plaintiff alleges here.[6]  See Ansanelli, 2011 WL 1134451, at *l; Crilley, 2012 WL

16   1492413, at *9-11; Garcia, 2010 WL 1881098, at *3.  Accordingly, defendants have not shown

17   plaintiff's negligence claims to be subject to dismissal as a matter of law at the pleading stage.

18            G.    RICO

19            Plaintiff alleges that defendants violated 18 U.S.C. §§ 1962 et seq., the Racketeer

20   Influenced and Corrupt Organization Act ("RICO") in connection with representations made

21   within the modification application process.  (Third Am. Compl. ¶¶ 119-27.)

22   _____

23       [6] Defendants do cite to Ansanelli and attempt to distinguish it.  (Mot. to Dismiss at 14 n.4.)
     Defendants are correct that plaintiff in the instant action is not a position identical to that of the
24   plaintiffs in Ansanelli: the Ansanellis were in a trial loan modification plan with a promise of a
     permanent modification if they made all of the payments under the trial plan on time.  See Ansanelli,
25   2011 WL 1134451, at *1. The undersigned, however, does not read Ansanelli as concluding that
     engaging the plaintiffs in a trial loan modification plan is the only way in a defendant can exceed its
26   conventional role as "a silent lender and loan servicer."  Id. at *7.

1  The elements of a civil RICO claim are as follows: "(1) conduct (2) of an

2  enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing

3  injury to plaintiff's 'business or property.'"  Living Designs, Inc. v. E.I. Dupont de Nemours and

4  Co., 431 F.3d 353, 361 (9th Cir. 2005) (quoting Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir.

5  1996); citing 18 U.S.C. §§ 1964(c), 1962(c); see also Sanford v. MemberWorks, Inc., 625 F.3d

6  550, 557 (9th Cir. 2010) (quoting Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (en

7  banc)); Forsyth v. Humana, Inc., 114 F.3d 1467, 1481 (9th Cir. 1997).  "Racketeering activity" is

8  any act indictable under the provisions of 18 U.S.C. § 1961, and includes the predicate acts of

9  mail fraud, wire fraud, and obstruction of justice.  Forsyth, 114 F.3d at 1481; Sanford, 625 F.3d at

10  557-58.  "Wire or mail fraud consists of the following elements: (1) formation of a scheme or

11  artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in

12  furtherance of the scheme; and (3) specific intent to deceive or defraud."  Sanford, 625 F.3d at

13  557-58 (citing Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir.

14  1986)).

15  "Congress enacted RICO to combat organized crime, not to provide a federal cause

16  of action and treble damages for personal injuries."  Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d

17  1083, 1087 (9th Cir. 2002) (internal quotation marks omitted).  Therefore, a RICO plaintiff only

18  has standing if, and can only recover to the extent that, he has been injured in his business or

19  property by reason of the conduct constituting the violation.  Id. (citing cases).  Moreover, the

20  defendant's violation of § 1962 must be the proximate cause of plaintiff's injury.  Id.

21  A RICO claim must be pleaded with particularity.  Izenberg v. ETS Serv., LLC,

22  589 F. Supp. 2d 1193, 1202 (C.D. Cal. 2008).  A plaintiff must also plead that defendants'

23  violation was both the "but for" and proximate cause of a concrete financial injury.  Izenberg, 589

24  F. Supp. 2d at 1201 ("Prospective injuries . . .  do not satisfy RICO's concrete financial injury

25  ////

26  ////

20

1 requirement.").[7]

2      Defendants argue that: (1) RICO "does not apply to transactions involving

3 residential mortgages"; (2) that plaintiff has not identified any "predicate acts;" (3) that plaintiff

4 has not alleged predicate acts with "particularity;" (4) that plaintiff has not plead a "pattern" of

5 racketeering activity; (5) that plaintiff has not alleged the existence of a "RICO enterprise;" and

6 (6) that plaintiff has not alleged that defendants' conduct was the "but for" and proximate cause of

7 a "concrete financial injury."  (Mot. to Dismiss at 15-16.)

8      The undersigned has doubts about the viability of plaintiff's RICO claim.

9 However, at this posture, defendants have not compellingly supported their arguments for

10 dismissal of that claim.  First, defendants cite no authorities supporting the broad proposition that

11 RICO "does not apply to transactions involving residential mortgages" (Mot. to Dismiss at 15),

12 and the undersigned therefore declines to accept that argument.

13      Second, defendants argue that plaintiff has identified no "predicate acts," but as

14 plaintiff states in his opposition (Opp'n at 22-23), plaintiff has alleged several different instances

15 of misrepresentations by defendants' agents in the loan modification negotiation process.  He also

16

17      [7] Defendants cite Izenberg for the proposition that, "[i]n a case involving a foreclosure of a mortgage on real property, in order to establish a concrete financial injury a plaintiff must allege he will pay a greater amount than is in fact owed on his mortgage."  (Mot. to Dismiss at 16 (citing

18 Izenberg, 589 F. Supp. 2d at 1204).)  However, Izenberg does not support that proposition.  Instead, the court in Izenberg stated that

19

20           Plaintiffs allege that they have 'been damaged in having to hire attorneys before bringing this action and [in] bring[ing] this action

21           . . . and will have to incur attorneys['] fees to stop the wrongful acts' of defendants.  Plaintiffs also allege that, due to defendants' actions, their property may be subject to improper foreclosure in the future, and they

22           may have to pay greater amounts than are in fact owed on their mortgage. Neither of these allegations suffices to establish a concrete

23           financial injury.

24 Izenberg, 589 F. Supp. 2d at 1204.  Contrary to defendants' suggestion, then, Izenberg does not stand for the proposition that a plaintiff must allege he will pay an amount greater than his mortgage

25 amount in order to state a claim for pleading purposes.  Instead, Izenberg stands for the proposition that it is insufficient to allege the mere *potential* that damages "may" exceed what is owed on one's

26 mortgage.  See id.

21

1    alleges that some of these alleged misrepresentations were made via U.S. mail and amounted to

2    mail fraud.  (Third Am. Compl. ¶¶ 119-27.)  Defendants have not cited authorities stating that

3    allegedly fraudulent misrepresentations made via U.S. mail and during protracted loan

4    modification negotiations cannot serve as "predicate acts" for a RICO claim as a matter of law.

5         Defendants broadly cite to the Sedima case for the proposition that "[p]laintiff has

6    not alleged the existence of a RICO enterprise and has not identified predicate acts allegedly

7    committed by Wells Fargo."  (Mot. to Dismiss at 15 (citing Sedima, S.P.R.L v. Imrex Co., 473

8    U.S. 479, 496 (1985).)  On the undersigned's review of Sedima, however, that case does not

9    address whether a lender can ever be a "RICO enterprise" or whether specific alleged

10   misrepresentations made during loan modification negotiations can ever serve as "predicate acts"

11   supporting a RICO claim.  As noted above, plaintiff alleges that misrepresentations were made to

12   him via U.S. mail and phone and that these were the alleged "predicate acts" supporting his RICO

13   claim.  (Third Am. Compl. ¶¶ 119-27; Opp'n at 22-23.)

14        Defendants also broadly cite to the Sanchez case for the proposition that "the

15   predicate acts of racketeering activity simply do not exist" in this case.  (Mot. to Dismiss at 15

16   (citing Sanchez v. American Brokers Conduit, No. 5:10-cv-01291-JHN-FMOX, 2011 WL

17   164634, at *2-3 (C.D. Cal. Jan. 14, 2011) (unpublished) (dismissing RICO claim because the

18   pleading was "devoid of any concrete factual allegations" and was conclusory, and thus did not

19   state any "predicate acts").)  On the undersigned's review of Sanchez, however, like Sedima, that

20   case does not address whether multiple alleged misrepresentations made via mail and phone

21   during loan modification negotiations can ever serve as "predicate acts" supporting a RICO claim.

22   Accordingly, defendants have not compellingly shown that the misrepresentations alleged in the

23   Third Amended Complaint cannot amount to "predicate acts" for purposes of a RICO claim.

24        The undersigned notes that plaintiff's RICO claim centers on defendants' alleged

25   fraudulent misrepresentations during the modification and foreclosure processes, and fraud in and

26   of itself is not a predicate offense under RICO.  Ohlendorf v. Am. Brokers Conduit, No. CIV.

1    S–11–293 LKK/EFB, 2012 WL 718682, at *11 (E.D. Cal. March 5, 2012) (unpublished) (citing

2    Tilley v. Ampro Mortg., No. 2:11–cv–1134, 2011 WL 5921415, at *12 (E.D. Cal. Nov. 28, 2011)

3    (unpublished)).  However, unlike the cases of Ohlendorf and Tilley, in the instant case plaintiff

4    has specifically identified certain telephone and mail communications that he contends amounts to

5    "wire fraud" and "mail fraud" initiated by defendants (Third Am. Compl. ¶¶ 119-127), and such

6    fraud could potentially be a "predicate act" under RICO.  Sanford, 625 F.3d at 557-58 (wire and

7    mail fraud can be "predicate acts").  Again, while the undersigned has doubts about the ultimate

8    viability of plaintiff's RICO claim, at this procedural posture defendants have not met their burden

9    of showing the claim to be defectively alleged.

10              Third, as defendants correctly note, fraud claims underlying a RICO allegation

11   must be pleaded with particularity.  (Mot. to Dismiss at 15 (citing Edwards v. Marin Park, Inc.,

12   356 F.3d 1058, 1065-66 (9th Cir. 2004) (explaining Rule 9(b)'s requirement that "[i]n all

13   averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

14   particularity" applies to civil RICO fraud claims."))  Defendants suggest dismissal of the RICO

15   claim due to a lack of particularity in plaintiff's allegations.  However, as discussed above herein

16   with respect to plaintiff's fraud claim, defendants have not compellingly shown that plaintiff's

17   fraud claim lacks the requisite particularity.  Defendants did not specify which allegations forming

18   the basis of the claim require further detail, and instead broadly state that the claim as a whole

19   "fail[s] to meet the particularity requirement."  (Mot. to Dismiss at 15.)  Defendants challenged

20   plaintiff's fraud claim in several respects, urging: the absence of an alleged misrepresentation, the

21   absence of alleged reasonable reliance, and the absence of alleged resulting damage.  (Mot. to

22   Dismiss at 3-7.)  The undersigned rejected those challenges for reasons stated above.  To the

23   extent defendants seek to challenge the sufficiency of plaintiff's fraud claim in ways other than

24   these, defendants have not compellingly presented such challenges to the court.  A blanket

25   statement that plaintiff's claim "fail[s] to meet the particularity requirement" does not suffice.

26   (Mot. to Dismiss at 15.)

1        Fourth, as to whether a "pattern" of racketeering activity has been alleged, plaintiff

2  has alleged multiple misrepresentations in the loan modification negotiation process, and

3  defendants have not cited authorities supporting the proposition that, as a matter of law, such

4  misrepresentations cannot amount to a "pattern" of activities in the RICO context.[8]  Defendants

5  have not thus far shown that the alleged series of misrepresentations regarding plaintiff's allegedly

6  promised modification cannot, as a matter of law, constitute "a pattern" of fraudulent

7  representations supporting a RICO claim.  While the undersigned has doubts about the ultimate

8  viability of plaintiff's RICO claim, at this procedural posture defendants have not met their burden

9  of showing the claim to be defectively alleged.

10        Fifth, defendants argue that lenders are not "RICO enterprises," but cite no

11  authorities holding that lenders can never fit the definition of a "RICO enterprise" as a matter of

12  law.  See 18 U.S.C. § 1961(4) (an enterprise for RICO purposes is "any individual, partnership,

13  corporation, association, or other legal entity . . .").  "An enterprise is proved by evidence of an

14  ongoing organization, formal or informal, and by evidence that the various associates function as

15  a continuing unit." Izenberg, 589 F. Supp. 2d at 1202 (internal quotation marks omitted).  Here,

16  plaintiff alleges that defendants made fraudulent misrepresentations in the context of loan

17  modification negotiations.  (Third Am. Compl. ¶¶ 119-127.)  Plaintiff alleges the existence of an

18  "ongoing organization . . . [that] function[s] as a continuing unit" see Odom, 486 F.3d at 551, as

19  he has alleged "Wachovia Mortgage and Wells Fargo Bank, N.A. continue in business as legal

20  entities" that "merged" into each other and "function as a continuing unit." (Third Am. Compl. ¶

21  121.)  While the undersigned has doubts about the ultimate viability of plaintiff's RICO claim and

22  about the legal validity of plaintiff's contention that Wachovia and Wells Fargo truly function as a

23  "continuing unit" for RICO purposes, defendants have not squarely addressed this issue and

24  therefore have not compellingly shown that plaintiff has failed to adequately allege a RICO

25

26       [8] A "'pattern' . . . requires at least two acts of racketeering activity."  18 U.S.C. § 1961(5).

1  "enterprise."

2         Sixth, defendants argue that plaintiff fails to allege that defendants' conduct was

3  the "but for" and proximate cause of a "concrete financial injury" (Mot. to Dismiss at 15-16), but

4  as plaintiff notes in his opposition, plaintiff has alleged both.  Plaintiff has alleged that he made

5  premature withdrawals from his IRA account, in reliance on defendants' representations during

6  the loan modification negotiations (including alleged misrepresentations made via U.S. mail), and

7  that he suffered financial injury as a result.  (Third Am. Compl. ¶¶ 32, 37, 124.)

8         Given that defendants have not yet compellingly shown that plaintiff's RICO claim

9  is subject to dismissal at this time, the undersigned denies defendants' motion to dismiss in this

10  regard.

11         H.      Intentional Infliction Of Emotional Distress

12         "The elements of a cause of action for intentional infliction of emotional distress

13  are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or

14  reckless disregard for the probability of causing, emotional distress; (2) the plaintiff's suffering

15  severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

16  distress by the defendant's outrageous conduct.  Das v. WMC Mortg. Corp., 831 F. Supp. 2d

17  1147, 1165 (N.D. Cal. 2011) (citing Cervantez v. J.C. Penney Co., 24 Cal. 3d 579, 593 (1979)).

18  "For [c]onduct to be outrageous, [it] must be so extreme as to exceed all bounds of that usually

19  tolerated in a civilized community."  Id.

20         Defendants argue that plaintiff has not alleged the sort of "outrageous" conduct

21  required to state a claim for intentional infliction of emotional distress.[9]  (Mot. to Dismiss at 16-

22

23         [9]  Defendants argue for the first time in their Reply briefing that plaintiff cannot obtain
     "damages for 'emotional distress'" because plaintiff suffered only "financial harm."  (Reply at 6
24   (citing cases).)  Because defendants did not raise this argument in their moving papers, the
     undersigned does not reach it.  However, the undersigned notes that in additional to his financial
25   losses plaintiff has alleged suffering "anguish, nervousness, grief, anxiety, worry, and humiliation"
     and "loss of sleep, mental anguish, loss of confidence in himself, and prolonged worry" in
26   connection with this claim (Third Am. Compl. ¶¶ 139, 142, 145-46), and defendants' Reply does

1   17.)

2          The misrepresentations plaintiff alleges in the context of ongoing loan

3   modification negotiations — namely, that plaintiff "would be" given a modification quickly if he

4   followed certain instructions (Third Am. Compl. ¶¶ 140-43) — do not appear to rise to the level

5   of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible

6   bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

7   community."  See Cochran v. Cochran, 65 Cal. App. 4th 488, 496 (1998).  However, it is unclear

8   whether the same is true with respect to allegations that defendants posted Notices of Trustee's

9   Sales in violation of a court order.  (Third Am. Compl. ¶¶ 144-48.)

10          Defendants list several district court cases to support their argument that plaintiff's

11   allegations cannot serve as the basis for an "intentional infliction of emotional distress" claim.

12   (Mot. to Dismiss at 17 (citing cases).)  On the undersigned's review, however, the cited cases

13   either do not involve a lender's alleged misconduct during loan modification attempts or do not

14   otherwise clearly apply to the particular facts of the instant case.  E.g. Das, 831 F. Supp. 2d at

15   1165-66 (holding that lenders were not liable to borrowers for intentional infliction of emotional

16   distress allegedly arising from initiation of foreclosure proceedings, but so holding because the

17   plaintiff did not allege that the particular moving defendant actually "participated in the initiation

18   of foreclosure proceedings" giving rise to the claim, *not* because such a claim cannot be stated as

19   a matter of law); Enriquez v. Countrywide Home Loans, FSB, 814 F. Supp. 2d 1042, 1070 (D.

20   Haw. 2011) (dismissing emotional distress claim arising from denied request to modify an

21   allegedly predatory original loan, but dismissing with leave to amend, because it "would arguably

22   be possible" to add facts to state such a claim); Goodwin v. Exec. Tr. Servs., LLC, 680 F. Supp.

23   2d 1244, 1255-56 (D. Nev. 2010) (dismissing claims arising from alleged predatory lending and

24   misrepresentation of original loan terms, not involving allegations of misconduct during loan

25   _____

26    not address these allegations in any way.

1   modification process); <u>Vawter v. Quality Loan Serv. Corp. of Washington</u>, 707 F. Supp. 2d 1115

2   (W.D. Wash. 2010) (where plaintiffs alleged only that defendants "failed to provide any

3   meaningful response to their attempts to obtain a loan modification," the court dismissed the

4   claim for intentional infliction of emotional distress because the defendants' "alleged inaction"

5   was not sufficient to state a claim).  Further, defendants did not meaningfully analogize to any of

6   these authorities, and as plaintiff correctly notes, none of the authorities involve a lender

7   improperly posting Notices of Trustee's Sales in violation of a court order.  (Opp'n at 24.)

8         The undersigned thus cannot find at this procedural posture that such allegations

9   do not constitute "outrageous conduct" as a matter of law.  While the undersigned has doubts

10   about the ultimate viability of plaintiff's "intentional infliction" claim, at this procedural posture

11   defendants have not compellingly shown that such claim warrants dismissal.

12         I.     <u>Unfair Competition Law</u>

13         Defendants argue that plaintiff's Unfair Competition Law ("UCL") claim under

14   California Business and Professions Code §§ 17200 et seq. fails because it "relies on defective

15   claims." (Mot. to Dismiss at 18-19 (citing cases).)  Defendants thus argue that the UCL claim

16   fails insofar as plaintiff's other claims fail.

17         For the same reasons discussed in the undersigned's prior order (Order, Dkt. No.

18   49 at 24), plaintiff's UCL claim is premised on alleged fraud and negligence.  As described above

19   herein, defendants have not shown these claims to be defectively pleaded.  Accordingly,

20   defendants' motion is denied in this regard.

21         J.     <u>HOLA Preemption Of State Law Claims</u>

22         Defendants argue that plaintiff's "state law" claims are preempted by HOLA, an

23   argument previously addressed at length in the undersigned's prior order partially granting

24   defendants' motion to dismiss.  (Order, Dkt. No. 49.)  Defendants do not clarify which "state law"

25   claims they attack, opting instead to argue that *all* "servicing" claims and "loan modification"

26   claims are preempted.  (Mot. to Dismiss at 21.)  This broad tact leaves it to the court to attempt to

1  define which allegations should be taken together and treated as forming "servicing" and/or

2  "modification" claims, and this is no simple task.  In any case, the undersigned has addressed

3  defendants' HOLA arguments already (Order, Dkt. No. 49), and as defendants do not appear to be

4  making significantly different arguments on the issue, the undersigned denies defendants' motion

5  in this regard.

6  IV.    CONCLUSION

7          Accordingly, IT IS HEREBY ORDERED that

8          1.    Defendants' Motion to Dismiss (Dkt. No. 125) is denied.

9          2.    Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), within fourteen

10  (14) days of the entry of this order, defendants shall file an answer to plaintiff's Third Amended

11  Complaint as modified by order of the court (Third Am. Compl., Dkt. No. 98; Order dated Aug.

12  22, 2012, Dkt. No. 115 at 15-17).

13          3.    Within thirty (30) days of the entry of this order, the parties shall file a Joint

14  Status Report.[10]  The Joint Status Report shall briefly describe the case and address the following:

15                  a.  Service of process;

16                  b.  Possible joinder of additional parties;

17                  c.  Any further amendment of the pleadings;

18                  d.  Jurisdiction and venue;

19                  e.  Anticipated motions and their scheduling;

20                  f.  The report required by Federal Rule of Civil Procedure 26 outlining the

21  proposed discovery plan and its scheduling, including disclosure of expert witnesses;

22                  g.  Future proceedings, including setting appropriate cut-off dates for

23  discovery and law and motion, and the scheduling of a pretrial conference and trial;

24                  h.  Special procedures, if any;

25  _____

26      [10]  If the parties are unable to file such report jointly, the parties shall file separate reports
    with explanations as to why a joint report was not possible.

28

1          i.  Estimated trial time;

2          j.  Modifications of standard pretrial procedures due to the simplicity or

3  complexity of the proceedings.

4          k.  Whether the case is related to any other cases, including bankruptcy;

5          l.  Whether a settlement conference should be scheduled;

6          m.  If they have not already so stipulated, whether counsel will stipulate to

7  the magistrate judge assigned to this matter acting as settlement judge and waiving

8  disqualification by virtue of his so acting, or whether they prefer to have a settlement conference

9  conducted before another judge;

10          n.  Any other matters that may add to the just and expeditious disposition of

11  this matter.

12          IT IS SO ORDERED.

13  DATED:  November 30, 2012

14

15  _____

16  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

29