# JOINT STATEMENT[1]

## 1.   THE PARTIES MEET AND CONFER EFFORTS (L.R. 251(C)(1))

Plaintiff's first set of interrogatories were served on the defendants on February 26, 2013. On March 19, 2013, defendants requested to delay their responses by about a week to April 5, 2013 due to the breadth of the information sought and so they could provide substantive responses. Defendants served their responses on April 5, 2013.

The responses for interrogatories nos. 4, 5, 8, and 9 were satisfactory. In plaintiff's opinion, the remaining interrogatories were not answered fully and the objections were general rather than specific. Plaintiff and defendants' counsel had a meet and confer conference on April 16, 2013.

From the April 16, 2013, meet and confer through May 31, 2013, plaintiff and defendant had numerous interactions concerning the first set interrogatories. Plaintiff was not satisfied with the results of the interactions and filed a Motion to Compel with the Court on June 4, 2013 (Dkt. No. 145). The Motion to Compel contains a description of the interactions between the parties through May 31, 2013 and their respective arguments concerning the interrogatories at issue. The motion was defective as filed (Dkt. No. 147) and was re-filed on June 17, 2013 (Dkt. No. 148). Defendants filed their opposition on June 27, 2013 (Dkt. No. 149).

Plaintiff served his second set of interrogatories on defendants on May 1, 2013. On June 5, 2013, plaintiff served defendants with a Motion to Compel responses to the second set of interrogatories alleging that pursuant to the FRCPs, the last day to serve plaintiff with their responses was June 3, 2013. The defendants served plaintiff their response on June 6, 2013. The court filed the Motion to Compel on June 7, 2013

The motion was defective as filed (Dkt. No. 147) and was re-filed on June 17, 2013 (Dkt. No. 148). Defendants filed their opposition on June 27, 2013 (Dkt. No. 150).

---

[1] Wells Fargo files this Joint Statement even though Plaintiff is the moving party. Wells Fargo's counsel agreed to file this document as a courtesy to Plaintiff, who apparently does not have access to (or chooses to opt out of) the Court's electronic filing system.

On July 5, 2013, the Court denied both motions to compel without prejudice and basically ordered the parties to try to resolve their issues. Also on July 5, 2013, plaintiff filed replies (Dkt. No. 153) to defendants' oppositions (Dkt. Nos. 149, 150).

Plaintiff reinitiated the meet and confer process on July 15, 2013 with two letters, one concerning the first set of interrogatories and one concerning the second set.

One July 15, 2013, letter (Exhibit 1) concerns interrogatories nos. 3, 7, 11, 13, 17, 18 and 19. The letter explains why the interrogatories are relative to plaintiff's claims and why defendants' objections are boiler-plate. The July 15, 2013 letter concerning the second set of interrogatories (Exhibit 2) argues that defendants exceeded the time limit to respond to the interrogatories and therefore waived their objections. The letter also argues that defendants argument that they cannot identify individuals without a name is a misrepresentation. The letter states that unless the defendants provide full and honest answers, plaintiff will pursue the remedies sought in his replies. Plaintiff mistakenly stated the replies were docket number 151 instead of 153.

Plaintiff sent defendants two letters dated July 19, 2013. One letter corrects (Exhibit 3) plaintiff's reference to his replies as docket number 151 to correctly reference it as docket number 153. The second letter (Exhibit 4) states that defendants' response to Interrogatory No. 1 was not satisfactory but is withdrawn because plaintiff expects a full and honest reply to Interrogatory No. 25.

On July 22, 2013, Wells Fargo responded (Exhibit 5) to the July 15, 2013 letters. Wells Fargo argued that plaintiff did not heed Judge Newman's advice regarding the nature of the meet and confer process. Wells Fargo also stated that they stood by previous objections but in the spirit of cooperation would provide supplemental responses. Wells Fargo also claimed all individuals had been identified in Interrogatory No. 1 so Interrogatory No 25 was duplicative of that interrogatory.

On July 23, 2013, plaintiff responded (Exhibit 6) to defendants' July 22, 2013 letter noting that defendants had not provided a date for when supplemental responses would be provided. Plaintiff argued that 10 days should be sufficient. Plaintiff reiterated the points raised in his

motions to compel so they would be part of the meet and confer process. Plaintiff reserved further comments until the supplemental responses were received.

Defendants served plaintiff with revised and supplemental responses to set one and set two interrogatories (Exhibit 7) on August 2, 2013.

Plaintiff responded to both defendants' July 22, 2013 letter and the revised and supplemental responses on August 7, 2013 (Exhibit 8). Plaintiff argued that the July 22, 2013 letter and the revised and supplemental responses are evasive and provide no new information and that the parties appear to be at an impasse. Plaintiff provided specific arguments related to Interrogatory Nos. 3, 7, 11, 13, 17, 18, and 19 and to each interrogatory in the second set (Interrogatories Nos. 20 through 25). Plaintiff argued that given the defendants' continued evasive and nonresponsive replies to the interrogatories in question, further meet and confers seem futile. Plaintiff stated that unless full and honest replies were received by August 22, 2013, plaintiff would file a motion to compel and ask for the sanctions requested in previous pleadings.

Defendants' have not responded.

Since the Court's July 5, 2013 order, the parties have sent eight meet and confer letters and have not reached an agreement. As a result, plaintiff brings this matter to the Court's attention.

### WELLS FARGO'S OBJECTION TO THE ENTIRE JOINT STATEMENT

Wells Fargo objects to the entire Joint Statement, which was prepared by Plaintiff.  This section is the only section specifically added by Wells Fargo – the remaining portions of this Joint Statement were formatted and categorized by Plaintiff.  In drafting this Joint Statement, Plaintiff did not adhere to the requirements of Local Rule 251(c).  Plaintiff did not include a section discussing "the nature of the action and its factual disputes insofar as they are pertinent to the matters to be decided and the issues to be determined at the hearing" (L.R. 251(c)(2)) and did not include the text of each specific interrogatory, the initial response and objections by Wells Fargo, or the supplemental and revised responses (L.R. 251(c)(3)).[2]  Instead, Plaintiff referred to

---

[2] Wells Fargo's summary of the case, as required by L.R. 251, is as follows: this is a foreclosure-related case.  Plaintiff has numerous loans with Wells Fargo that were used to purchase or

other documents filed with the Court.  This, of course, defeats the whole purpose of the Joint

Statement, which is to have a single self-contained document so that the parties and the Court do

not have to refer to other pleadings and papers.  For this reason alone, the Court should again

deny Plaintiff's motion.

For the remainder of this Joint Statement, Wells Fargo will operate within the formatting

set forth by Plaintiff.

## 2.    PLAINTIFFS' SET ONE INTERROGATORIES

The set one interrogatories at issue are interrogatories nos. 1, 3, 7, 11, 13, 17, 18, and 19.

## Interrogatory No. 1

### A.    Plaintiff's Statement

There are two issues remaining with Interrogatory No. 1: 1)Weather the interrogatory counts

as one interrogatory or multiple interrogatories and 2) If defendants have fully responded.

### Issue 1

Plaintiff seeks the identity of 36 Wells Fargo agents whom plaintiff interacted with during

the actions described in plaintiff's complaints. Each of the individuals is identified in the

complaints. Interrogatory No. 1, defendants' response, and arguments and authorities concerning

whether the interrogatory counts as one or more interrogatories is in the Joint Statement (Dkt.

No. 145) pages 6 through 20. Arguments and authorities specific to interrogatory count, or

subparts, are in pages 12 through 16. Plaintiff asks the Court to construe Interrogatory No. 1 as

one interrogatory.

refinance rental properties owned and leased by Plaintiff.  Plaintiff alleges that he suffered
financial hardship sometime during the recent economic downturn and had difficulty making his
loan payments.  Some of the loans went into default.  Plaintiff sought loan modification
agreements to try to lower his monthly payments.  In 2008, Plaintiff was told that there were no
loan modification options for rental properties.  However, Plaintiff continued pursuing loan
modifications for several of his properties.  In the operative Third Amended Complaint ("TAC")
(Doc. # 98), Plaintiff claims that Wells Fargo nevertheless represented that he was eligible for
loan modifications during communications with the bank in 2009 and 2010.  Plaintiff claims he
suffered damages by believing that he would receive a loan modification for one of his properties
when, ultimately, he did not.

**Issue 2**

In their July 22, 2013 letter (Exhibit 5), concerning Interrogatory No. 25, defendants stated, "Furthermore, all individuals have been previously identified in response to Interrogatory No. 1. This interrogatory is duplicative of that interrogatory." In his August 7, 2013 letter (Exhibit 7), plaintiff stated, "Your response to Interrogatory No. 25 is false and misleading. All individuals were not identified in response to Interrogatory No. 1."

Interrogatory No. 1 and defendants response is contained in pages 6 through 11 of the Joint Statement (Dkt. No. 145). Defendants provided some additional information in their Supplemental Responses (Dkt. No. 145, Exhibit 4, pages 8 & 10). Plaintiff's response to the supplemental response is on page 3 of the Memorandum of Points and Authorities of Docket No. 145.

A review of Interrogatory No. 1 and defendants' responses make it clear that defendants' statement in their July 22, 2013 letter is yet another blatant misrepresentation and demonstration of bad faith in response to plaintiff's interrogatories.

For the individuals not yet identified by defendants, plaintiff has propounded Interrogatory No. 25 to seek the identification of individuals by date he spoke to them and by date of correspondence. In response to Interrogatory No. 1, defendants have stated they cannot identify individuals without a name. Plaintiff disagrees and in his July 15, 2013 letter (Exhibit 2) stated:

> A response to interrogatory no. 25 that Wells Fargo cannot identify individuals without their name will be a misrepresentation. When I talked to Wachovia/Wells Fargo agents they were easily able to determine who I had previously talked with, what documents I had submitter, and what documents Wachovia has sent to me by referring to my file on their computer (TAC ¶ 26).

Plaintiff asks the Court to consider the false and misleading statement by defendants in their July 22, 2013 letter as continuing bad faith, justification for sanctions and an order to compel response to Interrogatory No. 25.

**B.   Defendants' Statement**

Wells Fargo provided substantive responses as well as legitimate objections.  There is no basis to compel further answers, as set forth below.

**Issue # 1: The Interrogatory Exceeds The Scope Of Permissible Discovery**

Interrogatory No. 1 exceeds the permissible scope of discovery.  Rule 33(a)(1) permits 25 interrogatories per party and discrete subparts of a single interrogatory count toward the 25-interrogatory limit.  In his original motion, Plaintiff cites to *Safeco of America v. Rawstrom*, 181 F.R.D. 441 (C.D. Cal. 1998)  to support his view that the **36** interrogatories seeking the identity of Wells Fargo's employees are not "discrete subparts" because they address the "common theme" of "the identification and location of individuals with whom he communicated or who participated in the transactions described in the complaint."  However, Plaintiff's reliance on *Safeco* is inapposite.   In *Safeco,* the court **upheld** the responding party's 'subparts' objection because the supposed 'subparts' were not necessarily related to the "primary question."  *Id*. at 444.  The court explained that 'related' subparts that qualify as a single interrogatory would include questions such as "State the name, address, and telephone number of each family member."  That is not the case with the interrogatories at issue here.  Plaintiff asks for information concerning 36 different individuals, with no inherent relationship between the information sought other than the fact that Plaintiff seeks to learn their identities.  The *Safeco* court deferred to the analysis of *Kendall v. GES Exposition Services, Inc.,* 174 F.R.D. 684 (D.Nev. 1997), which reasoned:

> Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question.  Or, can the subsequent question stand alone?  Is it independent of the first question?  Genuine subparts should not be counted as separate interrogatories.  However, discrete or separate questions should be counted as separate interrogatories, notwithstanding [that] they are joined by a conjunctive word and may be related.

*Id*. at 685.

This reasoning has been adopted by numerous courts.  For example, in *Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473, 475 (N.D. Cal. 2004), a single interrogatory seeking different types of information about 26 separate products in a patent case was held to contain 26 discrete subparts.  Thus, the court upheld the 'discrete subparts' objection and denied the motion to compel.  "A party cannot avoid the numerical limits by asking questions about distinct subjects, but numbering the questions as subparts."  *Id.*  Likewise, in *Superior Communications v. Earhugger, Inc.,* 257 F.R.D. 215, 218 (C.D. Cal. 2009), the court denied a motion to compel where "plaintiff's interrogatories has more than one logically or factually-related theme."  Each sub-part therefore counted as a distinct interrogatory because it could stand on its own.  *Id.*  Similarly, in *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.,* 235 F.R.D. 521 (D.D.C. 2006), the court noted:

> This Court finds that Nos. 26-31 and 33-35 are impermissibly compound because each requires separate responses to individual subparts that are not so related that they may be considered one interrogatory.  For example, No. 27 requests all facts supporting Relator's contention that DTCA was aware of the illegal conduct of the medical directors identified in the answer to No. 26; asks Relator to identify each person who knew, and to explain how they knew, of the violations.  Finally, it requests that Relator identify all documents that support the contention as to each medical director. This single interrogatory is more accurately counted as three separate interrogatories.

*Id.* at 527; *see also Hasan v. Johnson,* 2012 WL 569370 (E.D. Cal. Feb. 21, 2012) (motion to compel denied; the subparts focused on "different themes" and therefore has to be counted as separate interrogatories).

Here, the subparts to Interrogatory No. 1 are discrete and therefore each subpart should count toward the 25-interrogatory limit, thereby cutting off the interrogatories past 1.Y.  Through these 'subparts,' Plaintiff seeks the identities of individuals working in different departments of

Wells Fargo who communicated with Plaintiff in writing and over the phone over the course of several years concerning different loans and different properties. Each 'subpart' could easily (and **should**) stand alone as a separate discovery request. Plaintiff's attempt to make these individuals thematically related is without merit because there is no unifying theme concerning all these individuals. The 'theme' of 'identity' is not a theme at all. It is a specific question for numerous people. They are simply people who are alleged to have somehow interacted with Plaintiff at some point in time regarding his loans with Wells Fargo. As the *Kendall* court noted, each of the 'subparts' could easily "stand alone" as they are "not so related" that they must be asked in connection with one another. Thus, Plaintiff exceeded the limit on interrogatories. Wells Fargo's objection is valid. Wells Fargo asks the Court to determine that every interrogatory beyond 1.Y does not need to be answered.

### Issue # 2: Wells Fargo Has Provided All The Information Possible

After meeting and conferring with Plaintiff, Wells Fargo provided supplemental responses to include information about four more individuals. As Wells Fargo has indicated numerous times to Plaintiff, it has provided all the information that it can in response to Plaintiff's interrogatory, based on a reasonable and diligent search. As for Plaintiff's other objections in his prior motion and during the meet and confer process, Wells Fargo responds as follows:

#### Objection re: Privacy Rights

Wells Fargo produced the last known addresses of the three former employees identified by Plaintiff. In doing so, Wells Fargo provided Plaintiff with more information that was already required because such information is protected by the right of privacy under California law.[3]

---

[3] Wells Fargo properly raised a privacy objection on behalf of its employees given the fact that "a custodian of private information 'has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is the subject of the record is entitled to expect that his right will be thus asserted.'" *Cook v. Yellow Freight System. Inc.,* 132 F.R.D. 548, 551 n. 2 (E.D. Cal. 1990) [*quoting Craig v. Municipal Court,* 100 Cal. App. 3d 69, 77 (1979)]. A custodian of employment records has standing to assert privacy rights to those records and "'[t]he custodian of such private information may not waive the privacy rights of persons who

"Courts have scrutinized requests for disclosure of names and home addresses ... because individuals have a substantial privacy interest in their home addresses and in preventing unsolicited and unwanted mail." *City of San Jose v. Superior Court,* 74 Cal. App. 4th 1008, 1019 (1999); *see also Planned Parenthood Golden Gate v. Superior Court,* 83 Cal. App. 4th 347, 366 (2000). The United States Supreme Court has also expressed a "reluctan[ce] to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions." *Department of Defense v. F.L.R.A,* 510 U.S. 487, 500-501 (1994). Thus, "the right to privacy is sufficiently strong to protect a decision not to disclose personal information to a specific audience ... with whom the individual chooses not to associate." *Planned Parenthood*, 83 Cal. App. 4th at 366. Certainly, "the initiation of a law suit [sic] does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose." *Pagano,* 145 F.R.D. at 699. And, correspondingly, "[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *Planned Parenthood*, 83 Cal. App. 4th at 366.

In deference to the privacy protection accorded to a person's name and home address, a number of courts have refused to compel disclosure of such information even when sought by a party having some demonstrable interest in obtaining the information. *Planned Parenthood, supra* (refusing disclosure of names, addresses and telephone numbers of persons having knowledge relevant to the litigation to plaintiff); *City of San Jose, supra* (refusing disclosure of names, addresses and telephone numbers of persons making complaints about airport noise); *Department of Defense, supra* (refusing disclosure of names and home addresses of employees in collective bargaining unit to the two unions representing the bargaining unit); *Professional*

are constitutionally guaranteed their protection."' *Pagano v. Oroville Hospital,* 145 F.R.D. 683, 696 (E.D. Cal. 1993).

Where state law supplies the rule of decision (e.g., diversity actions), privacy claims are determined under applicable state law. FRE 501: *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998).

*Programs Group v. Dep't of Commerce,* 29 F.3d 1349, 1354 (9th Cir. 1994) (refusing disclosure of names and addresses of persons registered to take patent bar examination to company offering preparation courses for lawyers); *Navigator Publishing, L.L.C. v. Department of Transportation,* 146 F. Supp. 2d 68, 71 (D. Me. 2001) (refusing disclosure of names and addresses of licensed merchant mariners to publisher of various marine publications); *Schoettle v. Camp*, 733 F. Supp. 1395, 1398-1399 (D. Hi. 1990) (refusing disclosure of names and addresses of mortgagors owed refunds).

Here, Plaintiff already has the addresses of these individuals. Wells Fargo has already produced the last known phone number of Ms. Bass in is its supplemental responses. Wells Fargo cannot produce additional information.

**Objection re: Employees of Other Corporate Entities**

Plaintiff impermissibly demands that Wells Fargo produce private employee information of three employees who work for Cal-Western Reconveyance Corporation and First American Trustee Servicing Solutions. Wells Fargo does not have access to that information. Regardless, in an abundance of caution and in the spirit of cooperation with Plaintiff, Wells Fargo searched its own corporate records for these individuals but, after a reasonable search and diligent inquiry, could not find any identifying information for them. Wells Fargo's statement to that effect in its responses satisfies the F.R.C.P.

Crucially important, though, is that Wells Fargo is not required to produce such information. Although it is true that a corporation responding to interrogatories must provide not only the information contained in its own files and possessed by its own employees but also all information under its control, that rule applies only to related corporate entities such as parents and subsidiaries. *American Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 109 F.R.D. 263, 266 (E.D.N.C.1985); *Westinghouse Credit Corp. v. Mountain States Mining & Milling Co.*, 37 F.R.D. 348, 349 (D.Col.1965); *see also Brunswick Corporation v. Suzuki Motor Company, Ltd.*, 96 F.R.D. 684, 685 (E.D.Wis.1983) (corporation must answer interrogatories on behalf of its subsidiaries). However, if the information is truly not "available" to the corporation, i.e., it is not

in their possession and the responding corporation cannot exercise control over it, than the responding corporation may state this fact in response. *Eronq Corporation v. Skouras Theatres Corporation*, 22 F.R.D. 494, 498 (S.D.N.Y.1958).  Notably, the cases Plaintiff cites all rely on the parent-subsidiary relationship.

Here, neither Cal-Western nor First American are parent or subsidiary corporations of Wells Fargo.  They are not in the same corporate family.  They are distinct legal entities.  Wells Fargo does not have control over them to the extent that Wells Fargo can compel them to produce their employees' confidential personal information.  As such, Plaintiff's demand that Wells Fargo produce this information is without merit.

**Interrogatory No. 3**

**A.      Plaintiff's Statement**

Interrogatory No. 3 seeks information concerning a credit report containing information defendants purportedly relied upon to deny plaintiff's loan modifications. Plaintiff asked defendants to identify the credit report by date and provider and to identify, inter alia, the information in the credit report used to deny the loan modification. Defendants response was boiler-plate objections and the identification of the credit report provider, but not the date of the credit report.

The interrogatory, defendants response, and issues and authorities are contained in pages 22 through 24 of the Joint Statement (Dkt. No. 145). Defendants did not address this interrogatory in their Supplemental Responses (Exhibit 4 of Dkt. No. 145).

In his July 15, 2013 letter (Exhibit 1), plaintiff argues that the information sought is relative to his claims and that defendants' objections are general and not specific. In their July 22, 2013 letter (Exhibit 5), defendants state they will produce the credit report for document production. In their Revised and Supplemental Responses (Exhibit 7) defendants again state they will produce the credit report. In his August 7, 2013 letter (Exhibit 8), plaintiff argues that production of the credit report is not a full response to Interrogatory No. 3.

Plaintiff asks the Court to find that defendants' reply is incomplete and, pursuant to FRCP 37(a)(4), a failure to respond. Plaintiff asks the Court to compel defendants to provide a full and honest response to Interrogatory No. 3.

**B.**     **Defendants' Statement**

Wells Fargo statement that it would produce the credit report is sufficient under the federal rules.  Pursuant to F.R.C.P. 33(d), Wells Fargo has the option to produce the business record in response to Plaintiff's interrogatory.  As such, Wells Fargo may produce the credit report that Plaintiff seeks.  Wells Fargo has specifically identified the report from which the answer may be derived or ascertained.  Moreover, this interrogatory piggybacks on interrogatory numbers 6 and 20 (20 is duplicative of 6), which asks for information about why Plaintiff's loan modification application was denied for "excessive financial obligations."  Wells Fargo properly responded to that interrogatory with the following explanation: "'Excessive financial obligations' occurs when all of the other obligations of the borrower are so much that he or she cannot afford even a modified loan payment. This is referred to as the "DTI" or debt to income ratio. In this case, Plaintiff's total debt to income ratio was 77.9% 19 (even with a modified loan)."  That information is related to this interrogatory, as the credit report reveals, in part, Plaintiff's debt load.  Thus, by producing the credit report, Wells Fargo has provided Plaintiff with a means for ascertaining this information.  Plaintiff must only review the credit report to understand what his debt load is (but, presumably, he already knows this fact).  "If the burden of deriving the information is substantially the same for defendants as it is for plaintiffs, a Fed.R.Civ.P. 33(c) proffer with an identification of the relevant documents will be sufficient to answer the interrogatories."  *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 260, 265 (N.D. Ill. 1979). Therefore, the response – and concurrent production of the credit report – is proper.

**Interrogatory no. 7**

**A.**     **Plaintiff's Statement**

Defendants sent plaintiff a January 6,2010 letter stating plaintiff had withdrawn his request for a Shelborne loan modification. Plaintiff asks for the identification of documents and information used to conclude that plaintiff had withdrawn his request for a loan modification.

The interrogatory, defendants' response, and issues and authorities are contained in pages 26 through 28 of the Joint Statement (Dkt. No. 145). Defendants' supplemental response is contained in pages 11 through 12 of Docket No. 145 Exhibit 4. Plaintiff's response to the supplemental response is on page 4 of Memorandum of Points and Authorities for Docket No. 145.

In his July 15, 2013 letter (Exhibit 1), plaintiff argues that the information sought is relative to his claims and that defendants' objections are not specific and thus boiler-plate. In their July 22, 2013 letter (Exhibit 5), defendants state they will provide additional information. In their Revised and Supplemental Responses (Exhibit 7), defendants make various allegations but identify no documents to support them. In his August 7, 2013 letter (Exhibit 8), plaintiff argues that defendants' Revised and Supplemental Response is evasive and nonresponsive in that defendants have not identified documents.

Plaintiff asks the Court to find that defendants' reply is evasive and incomplete and, pursuant to FRCP 37(a)(4), a failure to respond. Plaintiff asks the Court to compel defendants to provide a full and honest response to Interrogatory No. 7.

**B.**    **Defendants' Statement**

Wells Fargo provided a sufficient substantive response: "Plaintiff indicated in late 2009 and early 2010 that he would not be willing and/or able to comply with the requirements of a loan modification and therefore did not desire to proceed with one.  Moreover, on various dates, including November 4, 2009, Plaintiff was informed that he did not qualify for a HAMP loan modification and declined further assistance. In addition, in late 2009 19 and early 2010, Plaintiff requested further loan modification but failed to provide the necessary documents."  Wells Fargo has provided the information requested by Plaintiff.  No further answer is required.

**Interrogatory Nos. 10, 11, 12 and 13**

A.      **Plaintiff's Statement**

Interrogatory Nos. 10 and 12 ask defendants to identify documents that establish they became the owner of plaintiff's loans (acquired, was the transferee, etc.). Defendants' identified various corporate succession documents. Plaintiff disagrees that the response answers the interrogatories. Defendants state on page 35 of the Joint Statement (Dkt. No. 145):

> As for interrogatory nos. 10-12, Wells Fargo provided substantive responses. Plaintiff bases his 'dispute' of those responses on his continued 'theory' that there was an assignment or transfer of the subject loans. However, as explained by Wells Fargo many times in this litigation, Plaintiff is simply wrong. Simply because Plaintiff has a different 'theory' does not make Wells Fargo's responses inadequate or improper. Wells Fargo specifically identified the relevant documents that Plaintiff requested. There is nothing else to provide Plaintiff.

The statement is a gross misrepresentation. At the top of page 6 in the Memorandum of Points and Authorities (Dkt. No. 145), plaintiff states:

> The defendants' response to interrogatory nos. 10-12 is not true. Defendants did assign or sell some or all of plaintiff's loans. Exhibit 2 indicates that defendants sold and/or assigned his Debra Street property to Fanny Mae. Plaintiff has information and based on the information and belief alleges that defendants sold or assigned most, if not all, of his loans.
>
> The defendants' response to Interrogatory Nos. 14, 15, and 16 are not true for the same reasons that the response to Interrogatory Nos. 10-12 is not true.

Defendants refute this statement in their Opposition to Plaintiff's Motion (Dkt. No. 149, page 5, line 20) stating:

> Moreover, although Plaintiff 'disputes' many of the answers provided by Wells Fargo, this of course does not mean that such answers are either improper or incorrect. For example, Plaintiff attaches an "Exhibit 2" (Motion p.6, 1.2) to his declaration (again, neither the exhibit nor the declaration were provided in the Joint Statement) that supposedly shows that Wells Fargo's responses to Interrogatory Nos. 10, 12, 14, 15, and 16, are 'false.' Those interrogatories asked about how, when and where Wells Fargo supposedly acquired the loan from the originating lender, World Savings Bank, FSB. (Of course, the loans were not 'acquired'; World Savings merged with Wells Fargo.) In any event, Exhibit 2 supposedly shows that one of Plaintiff's loans was subsequently obtained by Fannie Mae. Notably, those interrogatories do not ask about any sale/transfer/etc. after Wells Fargo 'acquired' the loans. They only ask about events prior to Wells Fargo's 'acquisition.' As such, Exhibit 2 and Plaintiff's statement that Wells Fargo's responses are 'false' are completely inapposite. That is just one of the many examples where Plaintiff attempts to move to compel a further response simply because he does not like the

response given, not because the response is insufficient or improper. Yet that is not a basis to grant a motion to compel.

Defendants attempt to justify one false statement with another. On page 5 of Plaintiff's Reply to Wells Fargo's Opposition to Plaintiff's Motion to Compel Answers to Interrogatories (Dkt. No. 153), plaintiff offers five reasons why defendants, statement is false (plaintiff incorporated Dkt. No 153 into the meet and confer in his July 15, 2013 letter (Exhibit 2) and his July 19, 2013 letter (Exhibit 3)) :

First, Exhibit 2 of the motion was obtained from a Government Sponsored Enterprise and is thus judicially noticeable (Federal Rule of Evidence 201(b)(2). Exhibit 2 does not 'supposedly' show that one of plaintiff's loans was sold, it does show that one of plaintiff's loans was sold to Fannie Mae on 10-01-2007.

Second, on or about October 3, 2008, Wachovia Corp. said it agreed to be acquired by Wells Fargo & Co. in a $15.1 billion all-stock deal. "That deal enables us to keep Wachovia intact and preserve the value of an integrated company, without government support," Robert Steel, Wachovia's president and chief executive, said in a statement. (See Reply Exhibit 2). Thus, at least one of plaintiff's nine loans was sold before Wells Fargo & Co. acquired Wachovia.

Third, Interrogatory No. 12 states:

For the subject loans listed above, identify any and all documents that establish that Wells Fargo Bank, N.A. or any of its affiliates, subsidiaries, agents, or Wells Fargo Bank's N.A. parent entity or any of the parent entities' affiliates, subsidiaries, or agents purchased, acquired, was the transferee, became the payee, or obtained a beneficial interest in the subject loans.

The loan was sold before Wells Fargo & Co. acquired Wachovia so the documents proffered by defendants do not respond to this interrogatory.

Fourth, Interrogatory No. 14 states:

For each of the subject loans, identify any and all entities, and the associated subject loans, to which Wachovia Mortgage, Wells Fargo Bank, N.A. or any of their affiliates, subsidiaries, associates, agents, parent entities, or any of the parent entities' affiliates, subsidiaries, associates, or agents sold, transferred, assigned, securitized or gave a beneficial interest in the subject loans.

Wells Fargo's did not identify Fannie Mae as an entity to which they sold at least one of plaintiff's loans.

Fifth, Interrogatory No. 15 states:

> Identify all documents associated with the sale, transfer, assignment, securitization or assignment of a beneficial interest for Interrogatory No. 14.

The documents proffered by defendants do not respond to this interrogatory because Wachovia sold one, if not all, of plaintiff's loans.

Based on these five points, defendants' counsels' statements concerning Motion Exhibit 2 and plaintiff's interrogatories are total misrepresentations. Plaintiff did not offer Motion Exhibit 2 and his conclusion that defendants' counsel's responses to the interrogatories are false as a supplement to the Joint Statement. Rather, the information is offered to demonstrate defendants' counsels' bad faith approach to the implementation of Local Rule 251 and the futility of trying to get the defendants to respond to the interrogatories without a motion to compel by the Court.

The Second reason above also establishes that World Savings did not just merge with Wells Fargo. Wells Fargo acquired Wachovia Corporation, and the assets Wachovia owned, for value in a $15.1 billion all-stock deal. Since Wachovia may not have sold all of plaintiff's loans at the time of the acquisition, The California Commercial Code (or another states code based on the Uniform Commercial Code) was applicable.

Likewise, Wachovia corporation acquired Golden West Financial, including World Savings, for value so the California commercial code applies to that acquisition. See Joint Statement (Dkt. No. 145, pages 32 through 35).

Plaintiff is not asking the Court to compel responses to Interrogatories 10 and 12. Plaintiff is asking the Court to consider defendants misrepresentations when determining if defendants have acted in bad faith, should be sanctioned, and should respond fully and honestly to plaintiff's interrogatories.

However, plaintiff is asking the Court to compel full and honest responses to Interrogatory Nos. 11 and 13.  Interrogatory Nos. 11 and 13 ask the defendants to explain how the documents identified in interrogatory Nos. 10 and 12 establish that defendants became the owners, holder, etc. for plaintiff's loans. The defendants have only offered general, boiler-plate, objections to Interrogatories 11 and 13. See Joint Statement pages 28 through 35.

In his July 15, 2013 letter (Exhibit 1), plaintiff explains why the interrogatories in his set two do not duplicate Interrogatory Nos. 11 and 13 and also explains why it is appropriate for defendants to explain their response pursuant to the California Civil Code. In their July 22, 2013 reply (Exhibit 5), defendants state they do not have to state how the California Civil Code relates to corporate succession. Defendants also state they will provide additional information concerning this corporate succession and they will provide documents in response to plaintiff's request for production.

In its Revised and Supplemental Responses (Exhibit 7), defendants mention corporate succession documents again. In his August 7, 2013 letter (Exhibit 8) plaintiff states that Wells Fargo's response is evasive and nonresponsive and that Wells Fargo has provided the documents many times so their offer to provide them as part of document production is meaningless.

Defendants identified documents in Interrogatory Nos. 10 and 12 that purportedly establish that they became the owners of plaintiff's loans. Plaintiff has argued that the responses are false. Defendants now must be held accountable for their responses and compelled to explain how these documents establish, pursuant to the California Commercial Code, that they own plaintiff's loans.

 For this reason, plaintiff asks the Court to find that defendants' reply to Interrogatory Nos. 11 and 13 is evasive and, pursuant to FRCP 37(a)(4), a failure to respond. Plaintiff asks the Court to compel defendants to provide a full and honest response to Interrogatory Nos. 11 and 13.

**B.**     **Defendants' Statement**

Wells Fargo provided valid, substantive written responses.  Plaintiff wants to ascertain whether Wells Fargo owns his loans, which were originated by World Savings Bank, FSB. Wells Fargo became the owner of those loans through a series of name change and mergers, as explained in the interrogatory responses:  "Plaintiff borrowed millions of dollars from World Savings Bank. World Savings Bank was a federal savings bank.  It was renamed Wachovia Mortgage, FSB on December 31, 2007.  Effective November 1, 2009, Wachovia Mortgage, FSB was converted to a national bank with the name Wells Fargo Bank Southwest, N.A., and merged

with and into Wells Fargo Bank, N.A. Wells Fargo will also produce documents evidencing this

corporate succession as part of its document production in responses to Plaintiffs First Set of

Requests For Production Of Documents."

Many courts have taken judicial notice of the exact same documents and held that Wells

Fargo is the owner of the loans with the authority to foreclose.  *See, e.g., Hague v. Wells Fargo*

*Bank, N.A.*, 2011 U.S. Dist. LEXIS 84695, at *11 (N.D. Cal. Aug. 2, 2011)  ("The deed of trust

at issue here lists World Savings as the lender.  Judicially noticeable documents show that World

Savings and Wells Fargo are one and the same.  Thus Wells Fargo's  rights as lender under the

deed of trust and under California's nonjudicial foreclosure statutes are controlling"); *Pey v.*

*Wachovia Mortg. Corp*., 2011 U.S. Dist. LEXIS 131699, at **3-4 (N.D. Cal. Nov. 15, 2011)

(taking judicial notice of documents establishing that Wachovia merged with Wells Fargo in

November 2009); *Shirley v. Wachovia Mortg. FSB*, 2011 U.S. Dist. LEXIS 29034 (N.D. Cal.

Mar. 9, 2011) ("That Wachovia is now part of Wells Fargo Bank is a fact of common knowledge

not subject to reasonable dispute.").

In essence, Plaintiff demands that Wells Fargo provided responses that he likes in order

to support his bogus 'theory' that Wells Fargo does not own his loans and therefore does not

have the authority to foreclose on his loans.  Plaintiff's theory is **expressly and explicitly**

rebutted by his own admissions.  Plaintiff has produced several documents in response to Wells

Fargo's document requests served in this action in which **Plaintiff admits that Wells Fargo**

**owns his loans that are subject of this lawsuit**.  (Declaration of David Newman ¶ 2, Exh. A.)

Plaintiff created these documents just months before his filed this lawsuit in which he claimed

Wells Fargo did not own his loans.  Yet the documents created by Plaintiff prior to this litigation

indicate just the opposite.  They include: (1) letter dated April 14, 2010 indicating that one of his

loans is "owned by Wells Fargo"; (2) letter dated April 20, 2010 indicating that his nine loans –

the same nine loans that are part of this lawsuit and are referenced in in paragraph 9 of the Third

Amended Complaint – are "owned by Wells Fargo"; (3) letter dated July 29, 2010 indicating that

three of his loans "are owned by Wells Fargo"; and (4) Plaintiff's "Schedule of Real Estate

Owned" in which he admits that Wells Fargo / Wachovia is the lender for all the loans that are

subject to this lawsuit.

Not only is Wells Fargo's interrogatory responses sufficient, and not only is Plaintiff's

arguments seeking to compel further responses meritless, but Plaintiff's entire 'theory' is

meritless.  Plaintiff is pursuing a theory that he knows – and has admitted – to be false.

Plaintiff's attempt to compel further responses is both improper and insufficient.

**<u>Interrogatory 17</u>**

Interrogatory No. 17 seeks information concerning about 728,000 active trial or

completed mortgage modifications. The interrogatory, defendants response, and points and

authorities are in the Joint Statement (Dkt. No. 145, p. 40 - 43).

In his July 15, 2013 letter (Exhibit 1), plaintiff refutes defendants' Joint statement

response and authorities. In their July 22, 2013 letter (Exhibit 5), defendants' stand by their

previous objections and claim that the information sought is not relevant to the allegations in the

TAC. In his August 7, 2013 letter (Exhibit 8), plaintiff argues that he has already stated his basis

for discovery in the Joint Statement (Dkt. No. 145) and in his July 15, 2013 letter.

Plaintiff asks the Court to find that defendants' reply is evasive and incomplete and, pursuant

to FRCP 37(a)(4), a failure to respond. Plaintiff asks the Court to compel defendants to provide a

full and honest response to Interrogatory No. 17.

**B.**    **<u>Defendants' Statement</u>**

As an initial matter, Plaintiff exceeds the scope of permissible interrogatories.  Not only

had Plaintiff exceeded 25 interrogatories by the time Plaintiff asserted interrogatory No. 17, but

it contains two distinct questions, each of which should count as a separate interrogatory.

Moreover, the interrogatory is overbroad and seek irrelevant information.  Wells Fargo

cannot be expected to produce information pertaining to 720,000 trial modifications, nor are any

of those trial modifications on loans **<u>not held by Plaintiff</u>** in any way related to Plaintiff's loans.

Plaintiff has not made an adequate showing regarding the relevancy of information sought.

Plaintiff merely asserts conclusory allegations that the documents are relevant because Plaintiff

has a claim for fraud.  Yet there are no allegations or claims in the TAC that Plaintiff's failure to

secure a loan modification was part of a pattern or practice of Wells Fargo.  The allegations in

the TAC only pertain to Plaintiff's loan.  Therefore, what Wells Fargo has or has not done in

connection with other loans is not relevant. *See, e.g., Bryant v. Mattel, Inc*., 2007 WL 5432959

(C.D. Cal., Apr. 19, 2007) ("The Federal Rules of Civil Procedure do not permit [parties] to use

broad discovery requests, untethered to a claim or defense…")  *Bryant* is instructive given its

similarity to this case.  The plaintiff served interrogatory requests seeking information about a

toy doll that the defendant claimed "ha[d] no connection or relevance to the claims or defenses in

the case." *Id* at * 2.  The plaintiff countered by arguing that it could seek discover of toy dolls

not named in the complaint because it sought to discover information from the defendant that

might establish a pattern or practice of wrongful behavior by the defendant.  On a motion to

compel, the court agreed with the defendant by ruling that "these requests are clearly overbroad,

extending far beyond the [issue] that [plaintiff] has contended is actionable."  *Id.* at * 4; *Rivera v.

NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir.2004) ("District courts need not condone the use of

discovery to engage in 'fishing expeditions.'")

     In this case, there is not a single allegation in the TAC about other loans or other

borrowers or other properties or other loan modification applications.  Nor is this a class action

lawsuit involving other borrowers.  Based on the explicit allegations in the TAC, this case is **<u>only</u>**

about a single borrower – Plaintiff – attempting to modify the terms of his loans for his income-

generating properties.  Other loan modifications on other properties are therefore not within the

subject matter of the litigation and not discoverable.

     It is not immaterial to this issue that in the year 2000 the judiciary and Congress made

changes in the language of Rule 26(b) that clearly were intended to pull back the presumptive

outer relevance-boundaries of civil discovery.  The change that most obviously signaled this

intent consisted of substituting the words "claim or defense" for the phrase "subject matter

involved in the pending action" in the general description of the presumptively permissible scope

of discovery. Fed.R.Civ.P. 26(b).  The Advisory Committee Notes that accompanied these

amendments report that the primary target of the changes was discovery that swept "far beyond the claims and defenses of the parties," discovery that imposed unjustifiable expenses and delays and that sometimes seemed designed not to fairly litigate the issues presented by the pleadings but to "develop new claims or defenses." Fed. R. Civ. Pro. 26(b) advisory committee's note to amendments effective December 1, 2000.  Stated more crudely, the primary purposes of the changes were to discourage lawyers from using discovery to "fish" for new claims or defenses and/or to run up unjustifiable litigation bills.  *Bernstein v. Travelers Ins. Co.*, 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006).  Here, since Plaintiff makes no "claim" about a pattern or practice of Wells Fargo concerning loan modifications, his discovery requests exceeds the boundary of relevance.

Finally, the interrogatory impermissibly seeks disclosure of confidential and proprietary business information of Wells Fargo regarding its presumed revenues – revenue figures that, once again, are not relevant to Plaintiff's case.  Courts have held that potential injury may result from the disclosure of confidential and proprietary business information, in that competitors could use such information "to duplicate [plaintiffs'] products, compete for [their] customers, or interfere with [their] business plan and thereby gain a competitive advantage in the marketplace." *Intel Corp. v. Via Tech., Inc.,* 198 F.R.D. 525, 531 (N.D. Cal. 2000).  Confidential business information may include "financial information."  *In re Adobe*, 141 F.R.D. 155, 158 (N.D. Cal. 1992).  Examples of items regarded as commercial or financial information include: business sales statistics; research data; technical designs; customer and supplier lists; profit and loss data; overhead and operating costs; and information on financial condition. *See Landfair v. United States Dep't of the Army*, 645 F. Supp. 325, 327 (D.D.C. 1986).

During the meet and confer, Plaintiff refused to narrow or tailor this interrogatory.  As it stands, it is improper and Wells Fargo's objections are valid.

**Interrogatory No. 18**

**A.    Plaintiff's Statement**

Interrogatory No. 18 seeks information concerning a statement in the 2007 Wachovia Corporation Annual Report. The interrogatory seeks the identity of documents that identify the foreign entities that purchased assets from a Wachovia subsidiary, the identity of the Wachovia subsidiary, and what the assets were and the identity of the Wachovia/Wells Fargo individual with the most knowledge of this subject. The interrogatory also seeks the identity of documents that identify the $2.0 billion in loans transferred to the loan portfolio. The interrogatory, defendants response, and points and authorities are in the Joint Statement (Dkt. No. 45, p. 43 - 46).

In his July 15, 2013 letter (Exhibit 1), plaintiff refutes defendants' Joint statement response and authorities In their July 22, 2013 letter (Exhibit 5), defendants' stand by their previous objections and claim that the information sought is not relevant to the allegations in the TAC. In his August 7, 2013 letter (Exhibit 8), plaintiff argues that he has already stated his basis for discovery in the Joint Statement (Dkt. No. 145) and in his July 15, 2013 letter.

Plaintiff asks the Court to find that defendants' reply is evasive and incomplete and, pursuant to FRCP 37(a)(4), a failure to respond. Plaintiff asks the Court to compel defendants to provide a full and honest response to Interrogatory No. 18.

## B. __Defendants' Statement__

As an initial matter, Plaintiff exceeds the scope of permissible interrogatories.  Not only had Plaintiff exceeded 25 interrogatories by the time Plaintiff asserted interrogatory No. 18, but it contains three distinct questions, each of which should count as a separate interrogatory.

Moreover, the interrogatory is overbroad and seek irrelevant information.  Wells Fargo does not have to produce information related to loans made to other persons and, in fact, cannot produce such information under federal privacy laws.[4]  Plaintiff has not made an adequate

---

[4] "The [Graham-Leach-Bilbrey Act] as enacted to address financial institutions' 'affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." *Newcomb v. Cambridge Home Loans, Inc.*, 2012 WL 966482, at * 6 (D. Hawaii, Mar. 20, 2012) (citing 15 U.S.C. § 6801(a)).  Wells Fargo qualifies as a "financial institution" under the statute pursuant to 15 U.S.C. § 6809(3) (defining "'financial institution" as "any institution the business of which is

showing regarding the relevancy of information sought.  Plaintiff merely asserts conclusory allegations that the documents are relevant because Plaintiff has a claim for fraud.  It is also irrelevant in terms of time.  Plaintiff seeks information contained in an Annual Report (a public document filed with the Securities and Exchange Commission) from 2007.  This case concerns conduct by the parties beginning in 2009.  (TAC ¶¶ 15 *et seq.*)  The requested information is not relevant to any claim or defense in this case.

In addition, the interrogatory impermissibly seeks disclosure of confidential and proprietary business information of Wells Fargo regarding its presumed revenues – revenue figures that, once again, are not relevant to Plaintiff's case.  Courts have held that potential injury may result from the disclosure of confidential and proprietary business information, in that competitors could use such information "to duplicate [plaintiffs'] products, compete for [their] customers, or interfere with [their] business plan and thereby gain a competitive advantage in the marketplace."  *Intel Corp. v. Via Tech., Inc.,* 198 F.R.D. 525, 531 (N.D. Cal. 2000). Confidential business information may include "financial information."  *In re Adobe*, 141 F.R.D. 155, 158 (N.D. Cal. 1992).  Examples of items regarded as commercial or financial information include: business sales statistics; research data; technical designs; customer and supplier lists; profit and loss data; overhead and operating costs; and information on financial condition. *See Landfair v. United States Dep't of the Army*, 645 F. Supp. 325, 327 (D.D.C. 1986).

Thus, Plaintiff's motion to compel is meritless.

## Interrogatory No. 19

### A.    Plaintiff's statement

Interrogatory No. 19 seeks the identification of documents Wells Fargo has prepared in response to a USDOT Comptroller of the Currency Consent Order. The interrogatory, defendants response, and points and authorities are in the Joint Statement (Dkt. No. 145, p. 46 - 49).

---

engaging in financial activities as described in [12 U.S.C § 1843(k)(4)(A)]", which states that "financial activities" includes "lending").

In his July 15, 2013 letter (Exhibit 1), plaintiff refutes defendants' Joint statement response and authorities. In their July 22, 2013 letter (Exhibit 5), defendants' stand by their previous objections, reiterate their Joint Statement arguments, and claim plaintiff's behavior is improper as cautioned by Judge Newman. Plaintiff replies in his August 7, 2013 letter (Exhibit 8).

Plaintiff asks the Court to find that defendants' reply is evasive and incomplete and, pursuant to FRCP 37(a)(4), a failure to respond. Plaintiff asks the Court to compel defendants to provide a full and honest response to Interrogatory No. 19.

## B.   <u>Defendants' Statement</u>

First, Plaintiff's interrogatory is significantly overbroad, and invades the attorney-client privilege and work-product doctrine, as it asks for "all documents" without any specificity whatsoever. Moreover, the interrogatory is vague and ambiguous as to the word "prepared." These issues were raised during the conference of counsel but Plaintiff chose not to revise the interrogatory or limit or narrow the scope in any way, shape, or form.

Second, as explained above, the interrogatory seeks irrelevant information not tied to any of Plaintiff's claims.

Third, the consent order is a separate contract between Wells Fargo and the Treasury Department. Plaintiff is not a party to the Consent Order[5] nor does he have standing as third-party beneficiary to demand production of information related to the performance of that contract – a contract that is **not** the subject of this lawsuit. *Hook v. Ariz., Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir.1992) (modified on other grounds) (a federal consent order is treated as a contract for purposes of enforcement, including the rights of third-party beneficiaries); *United States v. FMC Corp.*, 531 F.3d 813, 815 (9th Cir. 2008) (a third party must show that the parties to the consent decree intended to give that third party a legally binding and enforceable right to that benefit). The Consent Order states: "Nothing in this Stipulation and Consent or this Order,

---

[5] The Consent Order explicitly states that the only parties are the Comptroller of the Currency of the U.S., on the one hand, and Wells Fargo Bank, N.A., on the other. Plaintiff is never mentioned in the Consent Order nor is he a signatory.

express or implied, shall give to any person or entity, other than the parties hereto, and their

successors hereunder, any benefit or any legal or equitable right, remedy, or claim under the

Stipulation and Consent or this Order."  Courts have interpreted similar wording in consent

orders to preclude enforcement by third parties.  *See, e.g., McKesson HBOC, Inc. v. N.Y. State*

*Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir.2003) (contractual text under the heading

"'No Third Party Beneficiaries'":  "'This agreement [and other specified agreements] are not

intended to confer upon any person other than the parties any rights or remedies.'")  Thus,

Plaintiff has no ability to demand information about a contract that is not the subject of this

litigation and of which he is neither a party nor a third party beneficiary.

### 3.      DEFENDANTS' BAD FAITH

A.      **Plaintiff's Statement**

   **Set One Interrogatories**

   Defendants' requested more time to respond to plaintiff's set one interrogatories so they could

make substantive responses. Plaintiff agreed. On April 5, 2013, defendants provided substantive

responses to Interrogatory Nos. 4, 5, 8, 9. The remainder of their responses consisted of evasive

replies, boiler-plate objections, and misrepresentations. Plaintiff scheduled a meet and confer for

April 16, 2013. During the meet and confer, defendants stated they would review several

responses and get back to plaintiff within one to two weeks. They did not.

   During the April 16, 2013 meet and confer, defendants' council encouraged plaintiff to

reword some interrogatories and resubmit them as a second set. If plaintiff did, Wells Fargo

would provide substantive responses. Defendants' counsel states in his declaration (Dkt. No. 149)

concerning the April 16, 2013 meet and confer:

   I also invited - in fact, encouraged - Plaintiff to reword or narrow interrogatory nos. 6, 7,
   11, 13, 14, 16, 17, and 18 so that Wells Fargo might be able to provide further substantive
   responses.

Defendants further state in the Joint Statement (Dkt. No. 145, page 3):

   Then, on May 6, 2013, Plaintiff served Wells Fargo's counsel with a second set of
   interrogatories by mail. Although labeled as a 'second' set, it is really just a rehash of the first

set <u>where the 'new' interrogatories are reworded and/or reorganized along the lines discussed in the meet and confer</u>. Thus, Wells Fargo planned to respond to the 'second' set as it indicated it would do so during the meet and confer, i.e., with modified substantive responses and within the 30 day window allotted by the Federal Rules (with the response deadline being June 11, 2013). (The underline emphasis is by plaintiff.)

Plaintiff actually served defendants with his set two interrogatories on May, 1 2013 and not on May 6, 2013. As defendants state above, the second set interrogatories were reworded and/or reorganized along the lines discussed in the meet and confer. Plaintiff kept his part of the agreement, as stated in defendants' own words, and expected full, honest, and substantive responses to the set two interrogatories.

Since defendants did not provide substantive responses to plaintiff's set one interrogatories and did not provide additional responses as agreed in the April 16, 2013 meet and confer, on May 13, 2013 plaintiff provided defendants with a draft Joint Statement concerning the set one interrogatories. After several emails discussing the Joint Statement, on May 22, 2013, defendants' counsel provided the Joint Statement with the bank's portions inserted in the relevant places. Defendants' counsel also informed plaintiff that they would be providing a supplemental response to some of the interrogatories (Exhibit 3 of Dkt. No. 145 is the email string).

At this point, plaintiff had no expectation that the supplemental responses would provide any useful information and considered defendants' intent to provide supplemental responses on the eve of finalizing the Joint Statement a ploy to delay plaintiff's motion. Defendants served plaintiff with their Supplemental Responses on May 22, 2013 (Exhibit 4 of Dkt. No. 145). This is more than three weeks later than their commitment to provide supplemental responses made in the April 16, 2013 meet and confer. The Supplemental Responses purport to be responses to Interrogatory Nos. 1, 2, 6, and 7.

Defendants provided a bit more information for Interrogatory No. 1. As plaintiff suspected, the remainder of the Supplemental Responses do not fully respond to the interrogatories. Plaintiff concluded that more meet and confers would be futile and would only delay plaintiff's motion to compel so plaintiff filed his motion to compel on June 4, 2013. In the Joint Statement,

defendants state that the Supplemental Responses make a motion to compel for interrogatory Nos. 1, 2, 6, and 7 moot (Dkt No. 145, bottom page 3). As plaintiff argues on pages 2 through 4 in the memorandum of points and authorities (Dkt. No. 145), this is a misrepresentation.

**Set Two Interrogatories**

Plaintiff served defendants with the set two interrogatories on May1, 2013. Pursuant to the agreement between the parties achieved during the April 16, 2013 meet and confer, plaintiff expected substantive responses to the set two interrogatories on June 3, 2013. See docket number 146, page 3 for plaintiff's determination that June 3, 2013 was the last day to meet the FRCP time limit for service. Since, once again, defendants did not meet their commitment, plaintiff served defendants with his Notice of Motion and Second Motion to Compel Answers to Interrogatories (Dkt. No. 146) on June 5, 2013. The motion was filed by the Court on June 7, 2013.

Defendants served plaintiff with their responses to plaintiff's set two interrogatories on June 6, 2013. Defendants provided their responses to the Court as Exhibit A of Wells Fargo's Opposition to Plaintiff's Second Motion to Compel Answers to Interrogatories (Dkt. No. 150). In his declaration, defendants' counsel commits perjury when he states plaintiff was served with the responses on June 5, 2013. This is a false statement made under penalty of perjury (See Dkt. No. 153, Becker Declaration, Exhibit 1).

Instead of providing substantive responses within the time allowed by FRCP 33, as the parties agreed in the April 16, 2013 meet and confer, defendants provided only boiler-plate objections three days later than allowed by the FRCPs. Even more disturbing, and demonstrating extreme bad faith on their part, after encouraging plaintiff to propound a second set of interrogatories and agreeing on the wording and organization of the interrogatories,  defendants claim in their responses that the set two interrogatories are harassing and vexatious. Through misrepresentations, defendants' counsel lured plaintiff into using six interrogatories and has delayed plaintiff's discovery efforts.

Plaintiff's motions were defectively filed (Dkt. No. 147). Plaintiff re-noticed the motions with a hearing scheduled for July 11, 2013 (Dkt. No. 148). Defendants filed their oppositions (Dkt. Nos. 149 and 150) on June 27, 2013. On July 5, 2013, the Court denied plaintiff's motions without prejudice. Plaintiff did not clearly explain and support his argument that the defendants' counsel had lured him into propounding the second set of interrogatories and the Court concluded that the set two interrogatories were part of the meet and confer process and ordered the parties to continue the meet and confer process.

To better explain defendants' bad faith clearly in his motions, on July 3, 2013, plaintiff served defendants with his replies (Dkt. No. 153) to their opposition. The replies were filed by the Court on July 5, 2013, the same day the Court issued its order. Plaintiff asks the Court to consider his replies (Dkt. No. 153) along with this motion and conclude that the defendants have acted in bad faith, should be sanctioned, served their responses to plaintiff's set two interrogatories beyond the FRCP 33 time limit, and should be compelled to answer the set one interrogatories at issue and all of the set two interrogatories.

## B.    Defendant's Statement

Wells Fargo objects to Plaintiff's inclusion of this 'section' in the Joint Statement because it is (1) not authorized by the Local Rules and (2) is redundant of Plaintiff's request for sanctions that is set forth below. This section adds nothing to the substance of the discovery dispute. Plaintiff includes this section merely to smear Wells Fargo and its counsel. This is neither necessary nor proper. Wells Fargo will not respond to each accusation and smear from Plaintiff. Wells Fargo believes that such petty and irrelevant discourse is a waste of this Court's limited judicial resources and detracts from the Court's ability to reach the merits of the parties' disputes. Wells Fargo has provided substantive responses and legitimate objections to the interrogatories. Wells Fargo has engaged in an extensive meet and confer process with Plaintiff. Any refusal by Wells Fargo to provide further responses was and is with substantial justification. Given the totality of the circumstances and the credible evidence before the Court, **including this Court's prior ruling in which it denied Plaintiff's motions to compel and strongly**

**admonished Plaintiff for his conduct during the discovery process** (Doc. # 152), there is no basis to find that Wells Fargo has acted in bad faith.  Indeed, the fact that Wells Fargo's counsel volunteered to assist Plaintiff by filing this Joint Statement electronically indicates that Wells Fargo and its counsel are trying in good faith to resolve this dispute and minimize the burden to Plaintiff and the Court.

### 4.   SET TWO INTERROGATORIES

As discussed above, during the meet and confer of April 16, 2013, the parties agreed that if plaintiff reworded some of his interrogatories and provided them as a second set, defendants would provide substantive responses within the FRCP 33 time limits. As plaintiff explains in his replies (Dkt. No. 153) with arguments and exhibits, plaintiff served defendants with his set two interrogatories on May 1, 2013. The interrogatories were, in defendants' counsel's own words, reworded along the lines discussed in the meet and confer. As plaintiff also argues in his replies, defendants should have served plaintiff with their responses by June 3, 2013. Instead, exhibits in the replies demonstrate they served the responses on June 6, 2013. Contrary to the agreement in the April 16, 2013 meet and confer, the responses are nothing but boiler-plate objections.

The parties have attempted to resolve the set two interrogatories but have not been successful.

In defendants July 22, 2013 letter (Exhibit 5), defendants argue that the second set is just part of the meet and confer process concerning the first set of interrogatories and that there was no time limit to respond. This statement is another misrepresentation by defendants and contradicts their previous statements concerning the second set. As noted above, defendants' counsel has stated that he encouraged plaintiff to reword, and resubmit some of the interrogatories so that Wells Fargo could provide substantive responses (Declaration for Dkt. No. 149). Defendants' counsel also stated that plaintiff reworded the interrogatories as agreed and that Wells Fargo planned to respond with modified substantive responses within the 30 day window allotted by the Federal Rules (Dkt. No. 145, page 3).

In their July 22, 2013 letter, defendants also state they stand by their objections but will provide additional information for Interrogatory Nos. 20 through 24. Wells Fargo also states it will provide additional information concerning the corporate succession. Concerning Interrogatory No. 25, Wells Fargo states all individuals have been identified in response to Interrogatory No. 1. Wells Fargo served plaintiff its Revised and Supplemental Responses on August 2, 2013. Plaintiff responded to defendants' July 22, 2013 letter and Supplemental Responses in his August 7, 2013 letter (Exhibit 8). In this letter, plaintiff argues that defendants' responses are evasive and nonresponsive. Plaintiff also states that further meet and confers seem futile and asks defendants to provide full and honest replies by August 12, 2013. Defendants have not responded to this request.

Based on the above, plaintiff asks the Court to find that plaintiff complied with the meet and confer of April 16, 2013 and served plaintiff with a second set of interrogatories on May 1, 2013. Plaintiff asks the Court to find that defendants agreed to respond to the second set pursuant to FRCP 33 and that the limit to respond was June 3, 2013. Plaintiff asks the Court to find that defendants did not serve their responses until June 6, 2013. Plaintiff asks the Court to find that since the defendants did not meet the FRCP 33 time limits, they have waived all objections, including whether the number of interrogatories have been exceed in the first set of interrogatories. Absent extension of good cause, failure to timely respond to interrogatories generally constitutes waiver of any objections thereto [FRCP 33(b)(4); *Davis v. Fendler* (9th Cir. 1981) 650 F2d 1160; *Starlight Int'l, Inc. v. Herlihy* (D KS 1998) 181 FRD 494, 497 - mistake in calendaring deadline for objections was not good cause for relief from waiver; see also *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.* (ED PA 1999) 187 FRD 528, 529].

Based on the above, plaintiff asks the Court to compel full and honest responses to plaintiff's second set of interrogatories.

**B.   Defendants' Statement.**

As an initial matter, Wells Fargo objects to this 'section' because it does not conform with Local Rule 251.  Plaintiff has no set out each discovery request, each corresponding

responses, and a statement of the reasons why further responses are warranted.  Based on this fact alone, this motion should be denied.

In addition, Wells Fargo's responses to the Second Set are proper.  Wells Fargo has provided revised and supplemental response to interrogatory numbers 20-24, while interrogatory number 25 is duplicative of interrogatory number 1, to which Wells Fargo provided a substantive response.  Interrogatory numbers 20-24 are once again designed to further Plaintiff's 'theory' that Wells Fargo does not have the right to service Plaintiff's loans nor the authority to foreclose.  (Plaintiff has mutated this 'theory' several times over the course of this litigation.  At one point, Plaintiff asserted that Wells Fargo did not have the right to foreclose because "'Mexican drug cartels' are the true holders of his notes."  (Doc. # 49, p. 29, l. 9.)  This Court disregarded that theory entirely.)  As explained at length herein, Wells Fargo's responses are sufficient even though Plaintiff does not like the responses because they do not conform to his erroneous theory.  Plaintiff provides no legal or factual basis in the Joint Statement to compel further responses.

## 5.   SANCTIONS

### A.   Plaintiff's Statement

Plaintiff asks the Court to sanction defendants for their bad faith actions that include perjury, misrepresentations, evasive responses, and incomplete responses. Plaintiff has made his arguments for sanctions in this document, the Joint Statement (Dkt. No. 145, MP&A, pages 3 & 4) and in his replies (Dkt. No. 153). However plaintiff is not seeking an extension to discovery at this time. Based on defendants' bad faith, plaintiff asks the Court to sanction the defendants as requested in the Joint Statement (Dkt. No. 145).

### B.   Defendants' Statement

There is no basis to impose sanctions against Wells Fargo because it has acted with substantial justification in opposing Plaintiff's motion to compel.

Sanctions under Rule 37 cannot be imposed if the losing party acted with "substantial justification." F.R.C.P. 37(a)(4)(A). Parties satisfy the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the

motion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541 (1988); *see also* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288 (2d ed. 1994) ("Making a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule."). For example, "[w]hen there is no controlling precedent on the issue, and counsel marshals what authority there is in support of her position, the position she articulates will be found to be substantially justified even if she does not prevail." *Cobell v. Norton*, 226 F.R.D. 67, 90-91 (D.D.C. 2005) (citation omitted); *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 161 F.R.D. 309, 314 (E.D.Pa.1995) (declining to impose sanctions where position was not completely without basis in the law).

Here, sanctions are not appropriate because Wells Fargo acted with substantial justification. Wells Fargo's objections to the discovery are not asserted in bad faith and have solid foundation in the law, including the objection that Plaintiff has exceeded the permissible number of interrogatories. Moreover, Wells Fargo acted in good faith by meeting and conferring with Plaintiff about the discovery responses, agreeing to conduct further investigation, and supplementing its responses to several interrogatories. Indeed, Plaintiff conceded during the meet and confer (as he does in the Joint Statement) that numerous interrogatories were improper as written and needed to be revised in order to enable Wells Fargo to provide further responses. This is exactly why Plaintiff served a second set of interrogatories.

Moreover, although Plaintiff 'disputes' many of the answers provided by Wells Fargo, this of course does not mean that such answers are either improper or incorrect. For example, Plaintiff attaches an "Exhibit 2" (Motion p. 6, l. 2) to his declaration (again, neither the exhibit nor the declaration were provided in the Joint Statement) that supposedly shows that Wells Fargo's responses to Interrogatory Nos. 10, 12, 14, 15, and 16 are 'false.' Those interrogatories asked about how, when, and where Wells Fargo supposedly acquired the loans from the originating lender, World Savings Bank, FSB. (Of course, the loans were not 'acquired'; World Savings merged with Wells Fargo.) In any event, Exhibit 2 supposedly shows that one of

Plaintiff's loans was subsequently obtained by Fannie Mae. Notably, those interrogatories do **not** ask about any sale/transfer/etc. after Wells Fargo 'acquired' the loans. They only ask about events prior to Wells Fargo's 'acquisition.' As such, Exhibit 2 and Plaintiff's statement that Wells Fargo's responses are 'false' are completely inapposite. That is just one of the many examples where Plaintiff attempts to move to compel a further response simply because he does not like the response given, not because the response is insufficient or improper. Yet that is not a basis to grant a motion to compel.

Plaintiff's request for compensation for the purchase for two practice guides also fails because he cites no authority for the proposition that Wells Fargo must reimburse him for those items. Such items are a natural part of litigation initiated by Plaintiff; Wells Fargo cannot be compelled to finance Plaintiff's litigation. Moreover, Plaintiff cannot recover costs/fees because he is in pro per. *See, e.g., Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365, 1366 (Fed Cir. 2002) (a court cannot award sanctions to a pro se attorney under Federal Rule of Civil Procedure 37); *Guru Denim, Inc. v. Hayes*, 2010 WL 1854020, at *10 (CD. Cal. May 6, 2010) ("because Defendant is proceeding pro se, he is not entitled to recover attorney fees as a sanction" under Rule 37); *Mayock v. Immigration and Naturalization Service*, 736 F. Supp. 1561, 1562 (N.D. Cal. 1990) (concluding that a pro se attorney does not "incur" fees and, accordingly, cannot recover attorney fees where the statute provides for an award of fees "incurred").

In its July 5, 2013 order denying Plaintiff's two motions to compel further interrogatory responses (Doc. # 152), the Court fairly evaluated the situation and noted that much of the disagreement and confusion arising out of Plaintiff's discovery requests stems from the fact that Plaintiff may "misunderstand what the meet and confer process entails with respect to written discovery." Plaintiff seems to (incorrectly) believe that the very fact of a disagreement between the parties evidences Wells Fargo's 'bad faith' conduct warranting sanctions. Plaintiff's position is factually and legally erroneous. The parties' rather extensive meet and confer attempts indicates only that they have reached an impasse on several issues. Given the facts and the law,

there is nothing to suggest that Wells Fargo has acted without substantial justification.

Therefore, sanctions are not appropriate.[6]

## 6.   CONCLUSION

**A.   Plaintiff's Statement**

Based on the above, plaintiff asks the Court to find that Interrogatory No. 1 is one interrogatory, to compel defendants to fully and honestly respond to set one Interrogatory Nos. 3, 7, 11, 13, 17, 18, and 19 and to fully and honestly respond to the set two interrogatories without objections. Plaintiff further asks the Court to find that defendants have acted in bad faith concerning the interrogatories and to sanction defendants as requested.

**B.   Defendants' Statement**

The Court should deny Plaintiff's motion in its entirety.  As an initial matter, the Joint Statement drafted by Plaintiff does not conform with the requirements of Local Rule 251. Moreover, Wells Fargo's responses and objections to the interrogatories are appropriate and proper.  Plaintiff has not satisfied his burden of refuting Wells Fargo's position.  Finally, sanctions are not warranted against Wells Fargo because it has acted with substantial justification in presenting its responses and objections.

Respectfully submitted,

Dated: August xx, 2013                    ___/s_____
                                          Dennly R. Becker

Dated: September 3, 2013                  ANGLIN, FLEWELLING RASMUSSEN,
                                          CAMPBELL & TRYTTEN, LLP

                                          By: /s/ David M. Newman
                                              David M. Newman
                                              Attorneys for Wells Fargo

---

[6] Wells Fargo herein refrains from requesting sanctions against Plaintiff (as it refrained from requesting sanctions against Plaintiff in the parties' Joint Statement re: Plaintiff's expert witness disclosure.)  Nevertheless, in light of Plaintiff's conduct – including his filing of two premature motions to compel that this Court denied *sua sponte* based on procedural irregularities – Wells Fargo reserves the right to refer to Plaintiff's conduct as a basis for sanctions in the future, should the occasion arise.