1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DENNLY R. BECKER, et al.,                    No.  2:10-cv-02799 TLN KJN PS

12                  Plaintiffs,

13          v.                                     ORDER

14   WELLS FARGO BANK, NA, INC., et al.,

15                  Defendants.

16

17          Currently pending before the court are two discovery motions.[1]  Defendant Wells Fargo

18   Bank, NA, Inc. ("defendant") filed the first motion on August 15, 2013, seeking to strike

19   plaintiff's expert disclosure for lack of relevance to the claims in this case.  (ECF No. 155.)

20   Plaintiff Dennly R. Becker ("plaintiff") filed the second motion on August 27, 2013, seeking to

21   compel further interrogatory responses.  (ECF Nos. 158-59.)

22          These matters came on for hearing on September 19, 2013.  Plaintiff appeared on his own

23   behalf.  Attorney David Newman appeared on behalf of defendant.  For the reasons discussed

24   herein as well as on the record in greater detail during the hearing, defendant's motion (ECF No.

25   155) is denied without prejudice and plaintiff's motion (ECF Nos. 158-59) is granted in part and

26   denied in part.

27   _____

28   [1]  This action proceeds before this court pursuant to Eastern District of California Local Rule
     302(c)(21) and 28 U.S.C. § 636(b)(1).

                                                1

1    I.      BACKGROUND

2         A.  Motion To Strike Handwriting Expert

3         Defendant's motion (ECF No. 155) seeks to strike both parties' expert disclosures from

4    the docket.  On July 2, 2013, plaintiff filed an expert witness disclosure for a handwriting expert

5    (ECF No. 151) pursuant to the court's order of January 10, 2013, which required the parties to

6    "designate in writing and file with the court . . . the names of all experts they propose to tender at

7    trial… on or before July 1, 2013."[2]   (ECF No. 140.)  Plaintiff's handwriting expert opines that

8    robo-signing occurred upon various foreclosure documents that plaintiff believes pertain to his

9    case.  (ECF No. 151 at 13.)

10        On August 1, 2013, defendant filed a rebuttal expert witness disclosure for its own

11   competing handwriting expert.  (ECF No. 154.)

12        On August 15, 2013, the parties filed a joint statement pursuant to Local Rule 251(c).

13   (ECF No. 155.)  In this joint statement, defendant argues that plaintiff's expert disclosure should

14   be stricken from the docket for lack of relevance.  (ECF No. 155 at 9.)  Defendant argues that

15   handwriting experts are irrelevant to this case because plaintiff's claims concerning robo-signing

16   and forged foreclosure documents have all been dismissed.  (ECF Nos. 115 at 10-11, 123, 155 at

17   5-9.)  In response, plaintiff argues that the handwriting expert is relevant to defendant's potential

18   defenses, as well as to plaintiff's other claims including negligence, emotional distress, and unfair

19   competition.  (ECF No. 155 at 10-12.)

20        B.  Motion To Compel Further Responses To Interrogatories

21        Plaintiff's discovery motion (ECF Nos. 158-59) seeks further responses to certain

22   interrogatories he propounded upon defendant in two separate sets.  This is not the first time

23   plaintiff has sought to compel defendant's further responses to these interrogatories.  (See ECF

24   Nos. 145-46.)  The court previously denied plaintiff's motion to compel further responses, but did

---

25   [2]   Plaintiff's expert disclosure was filed one day past the deadline of July 1, 2013.  Defendant's
26   papers explain that defendant is aware of the issue but defendant is not seeking to strike the expert
     disclosure on the basis that plaintiff's expert disclosure was late.  (ECF No. 155 at 3.)  As a
27   separate matter, the court notes that both parties exceeded the scope of the court's order by filing
     not only their experts' names but also their experts' resumes and portions of their reports.  (ECF
28   Nos. 151, 154.)

1   so without prejudice and ordered the parties to continue meeting and conferring in good faith to

2   attempt to resolve their dispute.  (ECF No. 152.)  In ordering the parties to continue meeting and

3   conferring, the court found that plaintiff's "second set" of interrogatories appeared to reflect the

4   parties' continued meet and confer efforts regarding the "first set" of interrogatories.  (Id.)  In

5   other words, it appeared that the second set of interrogatories were "not 'new' interrogatories but

6   rather 'refinements' of" plaintiff's original interrogatories numbering 6, 7, 11, 13, 14, and 16.

7   (ECF No. 149 at 3.)

8       The court also previously noted that plaintiff conceded his second set of interrogatories

9   constituted a "reword[ing]" of his first set.  (ECF No. 145 at 4.)  Plaintiff previously explained

10  that he drafted the second set of interrogatories after agreeing to revise his original interrogatories

11  during a meet and confer conference with defendant's counsel, and that the second set

12  "correspond[s] to some of the interrogatories in set one but require[s] more information."  (Id. at

13  9.)  Plaintiff further explained that, after conferring with defendant's counsel about disputes

14  pertaining to the first set of interrogatories, plaintiff "said he would review and possibly rewrite

15  and resubmit several interrogatories including numbers 6, 7, 11, 13, 14, 16, 17, and 18."[3]  (Id. at

16  13.)  Plaintiff also previously stated that he "reworded and resubmitted a few of" the original

17  interrogatories "in the spirit of cooperation" after the meet and confer teleconference.  (Id.)

18  Plaintiff also previously attempted to explain that, as to the second set of interrogatories,

19  "Interrogatory No. 6 corresponds to Interrogatory No. 20. Interrogatory Nos. 21, 22, and 23

20  correspond to Interrogatory Nos. 11 and 13."  (Id.)

21      Presently, in the Joint Statement (ECF No. 159) supporting his pending motion, plaintiff

22  attempts to clarify once and for all that his second set of interrogatories was intended as an

23  entirely new set of interrogatories, not as a meet and confer effort arising from the first set.  (ECF

24  _____

25  [3]  Confusingly, plaintiff also previously explained that as to the reworded and resubmitted
    interrogatories, "[f]or interrogatory nos. 11 and 13, plaintiff noted that Interrogatories 21-23 in

26  the second set correspond to 11 and 13. They do not replace interrogatories 11 and 13.
    Interrogatories 21-23 require more information for a valid response.  Interrogatories 11 and 13 are

27  valid as written and also require defendants to provide the information requested. Therefore, it is
    not premature for plaintiff to seek to compel responses to these interrogatories."  (ECF No. 145 at

28  7.)

1    No. 159 at 29-30.)  Plaintiff seeks to compel further responses to interrogatories in both sets.  (Id.)

2    II.      DISCUSSION

3        A.  Going Forward, Parties May Not File Discovery Disputes Without Leave Of Court

4    As discussed on the record during the hearing, no future written discovery motions will be

5    allowed in this case without leave of court so as to avoid protracted discovery disputes.

6    The new procedure for discovery disputes in this case will be as follows.  The parties must

7    first genuinely attempt to meet and confer to resolve a given discovery dispute.  If good faith

8    meet and confer efforts fail to resolve the dispute, the parties may then contact the undersigned's

9    courtroom deputy to schedule a telephonic conference with the undersigned regarding the

10   dispute.[4]  After scheduling the informal telephone conference with the undersigned, the parties

11   shall file a joint letter to the court numbering no more than two pages.  Pages exceeding this limit

12   will not be considered.  In the two-page joint letter, the parties shall briefly explain what meet and

13   confer efforts they have undertaken to date.  The remainder of the letter will summarize the

14   dispute at issue.  During the informal telephonic discovery conference, both sides will be heard

15   regarding the dispute.  During the telephonic conference, it may become apparent that traditional

16   written briefing will be necessary to fully address the dispute, in which case the court will order

17   such briefing.  Discovery motions made outside the above-described process will be summarily

18   denied.

19   The informal telephonic discovery conferences described above will not necessarily be on

20   the record; however, the court will maintain the power to issue monetary and other sanctions

21   during such conferences, including for failures to meet and confer in good faith or abuses of the

22   discovery process.  Implementation of these telephonic conferences will under no circumstances

23   give the parties a "free pass" to gain the court's audience on every single minor discovery

24   disagreement that may arise.  If the telephonic conferences are abused, sanctions will issue.

25   ////

26   ////

27

28   [4]   The undersigned's courtroom deputy, Matt Caspar, may be reached at (916) 930-4187.

B. <u>Motion To Strike Plaintiff's Expert Witness</u>

During the hearing on September 19, 2013, the court asked defendant's counsel about the timing of defendant's motion to strike.  The undersigned asked whether the motion was premature, and whether the issue of the relevance of plaintiff's handwriting expert would not be more properly raised as a motion *in limine* or in connection with a motion for summary judgment. Defendant responded by reasserting the argument that plaintiff's expert's testimony is irrelevant to the claims in the operative third amended complaint.  (<u>See</u> ECF No. 155 at 5-9.)

For the reasons stated on the record during the hearing, defendant's motion to strike is denied.  However, such denial is without prejudice.  Defendant has not identified a "live" discovery issue describing, for instance, how plaintiff's expert discovery presents an undue burden or expense, or other issues that would warrant judicial intervention at this stage of the proceedings.  As a result, defendant's motion essentially requests an advisory opinion regarding the potential future relevance of an expert whose testimony may or may not ever be introduced as evidence.  The court recognizes that, after more discovery is completed, defendant may be better equipped to compellingly argue that plaintiff's expert cannot possibly be relevant to any claim or defense remaining in this case.  At this juncture, however, defendant has not compellingly shown that there is absolutely no way that plaintiff's handwriting expert might provide relevant testimony.  Therefore, the court denies defendant's motion to strike (ECF No. 155) without prejudice as premature.[5]

C. <u>Defective Joint Statement In Parties' Dispute About Interrogatories</u>

The parties' Joint Statement (ECF No. 159) fails to comply with Local Rule 251 and does not clearly restate each interrogatory and objections and/or response(s) thereto.  Instead, within the Joint Statement plaintiff vaguely refers to various interrogatories, broadly refers to arguments made in a previously-filed Joint Statement, and directs the court to examine previous filings to

---

[5]  As the undersigned warned plaintiff during the hearing, however, if it becomes clear that plaintiff has pursued such expert discovery without a good faith basis as to its relevance, plaintiff may be responsible for defendant's costs, such as those arising from having to needlessly retain a rebuttal expert, depose plaintiff's expert, and plaintiff may be liable for fees and other related expenditures defendant incurred in connection with such expert discovery.

cobble together plaintiff's legal arguments and to discern the exact text of each particular interrogatory. These shortcomings defeat the purpose of the required Joint Statement. See E.D. Cal. L.R. 251. Future Joint Statements failing to strictly comply with the requirements of Local Rule 251 will be summarily rejected. Nevertheless, in this particular instance the court has done the parties' job of collecting the relevant interrogatories and response(s), which were buried in other filings on the court's electronic docket, and has reviewed the legal arguments contained within the operative Joint Statement (ECF No. 159).

     D.  Plaintiff's Interrogatories, Set One

     1.  Interrogatory No. 1, Set One

Plaintiff's Interrogatory No. 1 asks defendant to "identify the following individuals," then proceeds to list 36 different people. (ECF No. 145 at 7-8.) Further, plaintiff defined "identify" as "provide the individual's name, business address, job title, business phone number, home address, and home phone number. If the individual is no longer an employee, indicate such and provide last known home address and home phone number." (Id. at 4.) Through these subparts, plaintiff seeks the identities of individuals who work (or worked) for the bank and who communicated with plaintiff in writing and over the phone over the course of several years concerning different loans and different properties. (ECF No. 159 at 8.)

Defendant objected on grounds that the interrogatory contains improper subparts that should count as separate interrogatories. (ECF No. 145 at 9-11.) Nevertheless, defendant provided substantive responses to the interrogatories, and while it raised the "exceeds 25" objection in response to Interrogatory No. 1 and all subsequent interrogatories, defendant never refused to respond based solely upon that objection. While defendant argues that the subparts are discrete, severable, and unrelated, plaintiff argues that the "subparts" of Interrogatory No. 1 are all related to ascertaining the identities of witnesses. (ECF No. 159 at 6-9.)

Federal Rule of Civil Procedure 33 provides that, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 33(a)(1). The Advisory Committee Notes

1    to the 1993 Amendments to the Rule, state, in part, that:

2

3              Each party is allowed to serve 25 interrogatories upon any other
                party, but must secure leave of court (or a stipulation from the
4              opposing party) to serve a larger number.  Parties cannot evade this
                presumptive limitation through the device of joining as "subparts"
5              questions that seek information about discrete separate subjects.
                However, a question asking about communications of a particular
6              type should be treated as a single interrogatory even though it
                requests that the time, place, persons present, and contents be stated
7              separately for each such communication.

8    The reference to "discrete" subparts suggests that subparts are not always to be counted as

9    separate interrogatories.  As some courts have explained, interrogatory subparts are to be counted

10   as one interrogatory "if they are logically or factually subsumed within and necessarily related to

11   the primary question."  Safeco of America v. Rawstrom, 181 F.R.D. 441, 445 (C.D. Cal. 1998)

12   (citing Kendall v. GES Exposition Services, Inc., 174 F.R.D. 684, 685 (D. Nev. 1997)).

13        As discussed on the record during the hearing, the subparts to Interrogatory No. 1 are

14   logically or factually subsumed within and necessarily related to the primary question — namely,

15   the identity of percipient witnesses currently or previously employed by defendant —  and

16   therefore only count as one interrogatory.  Fairness requires such interpretation in this particular

17   case, which involves a pro se plaintiff attempting to navigate through the discovery process, and

18   also given that defendant has not suggested any alternative discovery vehicle by which to obtain

19   the information requested.  Contact information for 36 percipient witnesses is indisputably

20   relevant to plaintiff's case.  Document requests and/or depositions would not be a more efficient

21   way of obtaining the requested information.  It would be a rather harsh interpretation of the rules

22   for the court to find that plaintiff "used up" all 25 of his interrogatories just to gain contact

23   information for the percipient witnesses in this case.  Accordingly, plaintiff's Interrogatory No. 1

24   and all of its subparts shall be treated as one interrogatory, and plaintiff's motion to compel is

25   granted as to the "first" dispute about this interrogatory.

26        As to the "second" dispute, plaintiff argues that defendant should provide further

27   responses to this interrogatory.  (ECF No. 159 at 5.)  With respect to whether defendant's further

28   responses should be ordered, defendant compellingly argues that it "provided all the information

7

1   that it can in response to plaintiff's interrogatory, based on a reasonable and diligent search."

2   (ECF No. 159 at 8.)  Defendant is correct that employee privacy rights protect employee contact

3   information, and also that defendant cannot be compelled to produce contact information for third

4   party companies like Cal-Western Reconveyance.   (Id. at 9-11.)   Accordingly, as to the "second

5   issue" regarding Interrogatory No. 1, defendant need not provide further responses to

6   Interrogatory No. 1.[6]

7       2.   *Interrogatory No. 3, Set One*

8       Interrogatory Number 3 asks: "The letters described in Interrogatory No. 1.G. above state

9   that loan modification denials were based in part upon information contained in a credit report.

10  Identify the credit report by date and credit report provider, the information in the credit report

11  and any other information, reasons, documents, criteria, and the documents that contain the

12  criteria, that were in effect at the time of the letters and upon which the loan modification denials

13  were based."  (ECF No. 158 at 29.)

14      Defendant responded with various objections, then ultimately stated in a supplemental

15  response that it would produce the credit report in question as part of its document production.

16  (ECF No. 158 at 30.)

17      Plaintiff now argues that defendant must do more than produce the credit report in order to

18  fully respond to the interrogatory; plaintiff argues that the interrogatory calls for more

19  information than just the credit report.  (ECF No. 159 at 10-12.)  Defendant argues that the credit

20  report itself is a sufficient response to the interrogatory.  (Id.)

21  ////

22

23  [6]  Plaintiff represented during the hearing that he may have been wrong in identifying one of
    these percipient witnesses as "Carl Saris."  The parties are therefore ordered to meet and confer to
24  ascertain whether alternate name spellings may reveal the correct identity of this particular
    witness.  Similarly, defendant is ordered to provide contact information for individuals identified
25  in defendant's records as having communicated with plaintiff about his requested modification(s)
    during the time period alleged in the operative pleading — to the extent records exist that would
26  reveal the names of individuals participating in such communications — even if such individuals
    are not specifically identified within Interrogatory No. 1.  Such "contact information" need not
27  include home addresses or similar information for defendant's current employees, so long as
    those employees may be reached through defense counsel.
28

As discussed on the record during the hearing, plaintiff's motion is denied with respect to Interrogatory No. 3.  While the interrogatory does seek more information than the single credit report, the interrogatory is vague and ambiguous (as defendant's objection stated) beyond the "credit report" component.  The interrogatory first targets the "credit report," then broadly expands to target "any other" documents, information, criteria, reasons, etc. contributing to the denial of plaintiff's loan modification request.  In this particular interrogatory, reference to "all documents" is vague and confusing.  Given its structure, the request is most logically read as a request about a "credit report."

However, the second half of the interrogatory will be treated as a separate interrogatory. The parties shall meet and confer about exactly what plaintiff is seeking in the portion of the interrogatory targeting "any other" documents, information, and the like, and defendant shall provide a response identifying the documents "upon which the loan denials were based."

3.  *Interrogatory No. 7, Set One*

Interrogatory No. 7 states, "Plaintiff received a January 6, 2010[,] letter from Sharon Zuniga stating that plaintiff had withdrawn his request for a Shelborne loan modification. Identify the documents and information used to conclude that plaintiff had withdrawn his request for Shelborne loan modification."  (ECF No. 158 at 30.)

Defendant ultimately responded to this interrogatory, in pertinent part: "Plaintiff indicated in late 2009 and early 2010 that he would not be willing and/or able to comply with the requirements of a loan modification and therefore did not desire to proceed with one.  Moreover, on various dates, including November 4, 2009, [p]laintiff was informed that he did not qualify for a HAMP loan modification and declined further assistance.  In addition, in late 2009 and early 2010, [p]laintiff requested further loan modification but failed to provide the necessary documents."  (ECF No. 158 at 31.)

Plaintiff argues that defendant's response is incomplete, explaining that the interrogatory requests "the identification of documents and information used to conclude that [he] had withdrawn his request for a loan modification."  (ECF No. 159 at 12-13.)  Defendant argues that its response is sufficient.  (Id. at 13.)

9

As discussed on the record during the hearing, plaintiff's motion is granted with respect to Interrogatory No. 7.  The interrogatory explicitly asks for both documents and information, and, putting aside the compound nature of the question, defendant's response provides neither. Defendant does not specifically identify any documents or other "information" it used to conclude that plaintiff withdrew his application for a loan modification.  Defendant shall respond and identify the *documents* defendant used to draw this conclusion.  Defendant shall also specifically identify non-document "information" responsive to the request.  For instance, using the phrasing in defendant's response to the interrogatory, defendant shall explain how plaintiff "indicated" that he did not desire to proceed with a modification.

Defense counsel represented that over 9,000 pages of documents have been produced to plaintiff, and that responsive documents were within the production.  Accordingly, as discussed at the hearing, the parties are ordered to further meet and confer to identify which produced documents are responsive to this interrogatory, and defendant is ordered to supplement its response to this interrogatory so as to specifically identify the Bates-stamped numbers of the documents responsive to this interrogatory.

    4.  *Interrogatories Nos. 10 & 12, Set One*

Plaintiff expressly stated that he does not ask to compel further responses to these two interrogatories, but that he wants the court to consider defendant's responses for purposes of showing bad faith.  (ECF No. 159 at 13-17.)  Accordingly, the court will not examine these discovery requests and responses.

    5.  *Interrogatories Nos. 11 & 13, Set One*

Interrogatory Nos. 11 and 13 ask defendant to explain how certain documents establish that Wells Fargo and Wachovia actually became the owners/holders/etc. of plaintiff's loans, and ask for the explanations to include citations to portions of the California Commercial Code.  (ECF No. 158 at 32-33.)

Defendant's responses make no mention of the California Commercial Code, but they do explain:

> Plaintiff borrowed millions of dollars from World Savings Bank.
> World Savings Bank was a federal savings bank.  It was renamed

10

Wachovia Mortgage, FSB on December 31, 2007.   Effective November 1, 2009, Wachovia Mortgage, FSB was converted to a national bank with the name Wells Fargo Bank Southwest, N.A., and merged with and into Wells Fargo Bank, N.A.  Wells Fargo will also produce documents evidencing this corporate succession as part of its document production in responses to Plaintiff's First Set of Requests For Production Of Documents.

(ECF No. 158 at 32-33.)

Plaintiff argues that defendant's response is deficient because it makes no mention of the California Commercial Code, and also because "the responses are false."  (ECF No. 159 at 17.)

Defendant argues that its responses are sufficient, and that there is no requirement that the responses make mention of the California Commercial Code.  (Id. at 17-19.)

Plaintiff's motion is denied with respect to Interrogatory Nos. 11 & 13.  Defendant's explanation of corporate succession adequately responds to the broad interrogatories.  Plaintiff's argument that defendant's responses "are false" is not well-taken, and plaintiff has not compellingly explained how the stated responses are otherwise improper.

6.  *Interrogatory No. 17, Set One*

Interrogatory No. 17 asks, "The Wells Fargo & Company Annual Report 2011 on page 5 states: Since the beginning of 2009 through the end of 2011, we have [c]ompleted more than 728,000 active trial or completed mortgage modifications . . . [.]  Of the 728,000 active trial mortgage modifications, how many of those trial mortgage modifications resulted in permanent mortgage modifications?  How much revenue did those trial mortgage modifications generate for Wells Fargo & Company or its subsidiaries?"  (ECF No. 145 at 40-43.)

Defendant responded to Interrogatory No. 17 by objecting on grounds of overbreadth, undue burden, irrelevance, vagueness, ambiguity, as well as the attorney-client privilege and work product doctrine.  (ECF No. 145 at 52.)  However, defendant did not specifically explain how responding to the interrogatory would be especially burdensome.  Defendant argued that plaintiff's case is about plaintiff's loans, not the loans of others.  Defendant essentially stands on its objections and refuses to substantively respond to this request.  Defendant notes that plaintiff completely refused to narrow or tailor this interrogatory.  (Id. at 21.)

////

11

1    Plaintiff argues that, of the 728,000 modifications referenced in the annual report, the

2    number of trial modifications that defendant made into permanent modifications is relevant to this

3    case because if defendant never granted any permanent modifications, such evidence would

4    suggest that it was being dishonest by telling plaintiff that he was being considered for a

5    modification.  (Id. at 18-20.)  Plaintiff argues that evidence of defendant's intent to grant a

6    permanent modification (or lack of such intent) bears on his claims of false representations by

7    defendant during his own loan modification discussions.  (Id.)

8    As discussed on the record during the hearing, plaintiff has articulated a basis for

9    relevance — albeit a rather tenuous one — and defendant has not yet explained how responding

10   to the interrogatory would cause it undue burden.  Plaintiff wants only the number of trial

11   modifications that became permanent modifications; he does not want particular details about

12   728,000 other loans.  It is true that plaintiff's case is about *his* loans and requested modifications,

13   not about others' loans and whether defendant properly or improperly modified them.  However,

14   plaintiff compellingly argues that the number of times defendant has permitted a trial

15   modification to transform into a permanent modification has at least some degree of relevance to

16   the fraud and unfair business practices claims in this case.  As plaintiff notes, if defendant never

17   permitted a single trial modification to transform into a permanent modification, this is relevant to

18   the issue of defendant's intent to deceive plaintiff during his loan modification discussions.  In

19   other words, if defendant never granted any permanent modifications, this might be strong

20   evidence that defendant intended to deceive plaintiff when its employees allegedly promised him

21   such a modification.  Indeed, as described in the excerpt below, plaintiff alleges that he was

22   explicitly told he would receive a permanent modification if he took certain steps.  Discovering

23   whether defendant ever (or rarely) allowed trial modifications to transform into permanent

24   modifications could conceivably be relevant to defendant's intent to deceive during loan

25   modification negotiations with plaintiff.

26   As noted in the order denying defendant's motion to dismiss the fraud claim (ECF No.

27   137 at 7-9):

28
    Plaintiff alleges that defendants told him his loans "would be"
    modified if he took certain steps, such as supplying additional

12

documentation, and that in reliance on these statements he proceeded with withdrawing monies from his IRA prematurely, among other things. (Third Am. Compl. ¶¶ 17 ("modification would be processed quickly"); 19 ("$2000 would make the difference" in his obtaining a modification); 24 ("Ms. Vasquez said this [lowered payment] was acceptable to Wachovia"); 27 ("Saris said plaintiff would quickly receive loan modifications"); 28(a) ("he said plaintiff would get the modifications"); 28(c) ("Saris stated the Wachovia computer showed that plaintiff would be quickly given loan modifications"); 28(d)-(f) (alleging defendants made multiple misrepresentations to plaintiff that his documentation had "not been received" when it actually had been received, that he had "withdrawn" his modification requests when he had not actually withdrawn them, that his modification requests were "closed because of missing documentation or information" when he actually had supplied such documentation and information, and that his modification request "fell out of the system because of missing documentation" that was not actually missing from defendants' system); 32 (alleging a lowered credit score resulted from defendants' purposefully delaying plaintiff's loan modification process); 33-37 (alleging that defendants' agent "Teo" told plaintiff to make monthly withdrawals from his retirement account to qualify for the modification, and alleging that plaintiff actually made such withdrawals in reliance on the representation).)

Taking plaintiff's well-pleaded allegations as true, as the court must at this procedural posture, plaintiff has alleged material misrepresentations of fact with respect to the requested loan modifications, his reliance on defendants' representations thereon, and resulting damages in the form of, among other things, premature withdrawals from his IRA accounts resulting in loss of tax-deferred income. Plaintiff alleges that he materially changed his behavior, i.e., that he made such withdrawals in actual reliance upon defendants' representations. (Id. ¶¶ 31-32, 37.) Accordingly, defendants' motion is denied in this regard.

[. . .]

Defendants also argue that plaintiff fails to allege an "intent to deceive." (Mot. to Dismiss at 5.) This argument is not well-taken. For instance, plaintiff alleges that defendants knew they had received certain documents from plaintiff, as reflected by defendants' internal computer tracking programs, and yet purposefully told him that no such documents had been received. (Third Am. Comp. ¶¶ 28(d)-(e), 29, 55.) Plaintiff also alleges defendants acted with the intent to "extract[] money from the plaintiff upon threat of seizing his property." (Id. ¶ 6.) Taking well-pleaded allegations in plaintiff's favor, as the court must do at this procedural posture, the undersigned cannot conclude that plaintiff has failed to adequately allege defendants' intent to defraud.

(Order, ECF No. 137 at 7-9.)

Accordingly, the parties are ordered to further meet and confer regarding Interrogatory No. 17, so as to determine that plaintiff wants only a number, not details about 728,000 other

13

1   loans.  Further, if defendant argues that providing the sheer number of trial modifications that

2   transformed into permanent modifications is truly overly burdensome, defendant must actually

3   *explain why* and provide details.  The current briefing before the court fails to provide any

4   detailed explanation as to why the response would be unduly burdensome.

5        In the Joint Statement, defendant compellingly argues that the interrogatory is actually

6   two interrogatories: one about the number of permanent modifications, the other about "revenue"

7   generated by modifications.  (ECF No. 159 at 19.)  This point is well-taken.  Accordingly, the

8   second half of Interrogatory No. 17 shall hereafter be considered a second standalone

9   interrogatory.  Unlike his argument about the number of trial modifications that became

10  permanent modifications, plaintiff does not compellingly state a basis for the relevance of

11  defendant's *revenues* from modifications.  It seems plaintiff wants to show that defendant had a

12  financial motive to string him along during the modification process; however, nationwide

13  revenues from modifications do not clearly reveal a financial motive for misconduct, and in any

14  event, defendant has compellingly argued that revealing these revenue figures would needlessly

15  impinge upon defendant's confidential/proprietary business information.  Accordingly, at present,

16  plaintiff's motion is denied as to the second half of Interrogatory No. 17 — (i.e., the portion

17  regarding "revenues" from the 728,000 modifications).

18        7.  *Interrogatory No. 18, Set One*

19        Interrogatory No. 18 asks about a statement in Wachovia's 2007 Annual Report regarding

20  "foreign entities" purchasing assets from a Wachovia subsidiary and regarding transfers of loan

21  portfolios, and asks defendant to "identify documents" revealing the identities of the "foreign

22  entities," to identify the person most knowledgeable on the issue, and to specify which loans were

23  transferred.  (ECF No. 145 at 54.)

24        Defendant responded with various objections on grounds of overbreadth, relevance,

25  vagueness, ambiguity, privilege, trade secret, and confidential or proprietary information, among

26  others.  (Id. at 55.)  Plaintiff argues that defendant's response is "evasive and incomplete."  (ECF

27  No. 159 at 22.)

28  ////

1    Defendant argues that the interrogatory should count as three distinct questions, and each

2    should count as a separate interrogatory.[7]  (Id.)  Defendant argues that the annual report from

3    2007 predates all alleged actions in this case, which is based upon events beginning in 2009.

4    Defendant also stands on its objections and offers no substantive response.  (Id.)

5    As discussed on the record during the hearing, plaintiff's motion is denied with respect to

6    Interrogatory No. 18.  Defendant is correct that plaintiff has not articulated the relevance of a

7    2007 statement to alleged loan-modification-negotiation events that all occurred in 2009 and

8    thereafter.  Plaintiff essentially contends that his loan was at some point not owned by defendant

9    such that its foreclosure activities were improper, and that the requested information is directly

10   relevant to this fraud claim.  (ECF No. 159 at 22.)  However, even accepting plaintiff's very

11   tenuous theory of relevance, the court cannot permit the broad sort of "fishing expedition"

12   envisioned by this request.  Moreover, plaintiff could have met and conferred to narrow the scope

13   of this broad request, yet he refused to do so.

14       8.   *Interrogatory No. 19, Set One*

15   Interrogatory No. 19 asks defendant to "identify all documents that Wells Fargo has

16   prepared in response to" a consent order between itself and the U.S. Department of Treasury in

17   The Matter of Wells Fargo Bank, NA, Sioux Falls, South Dakota AA-EC-11-19.  (ECF No. 145

18   at 57.)

19   Defendant responded with objections on various grounds, including overbreadth,

20   irrelevance, vagueness, ambiguity, privilege, work product, and confidential/proprietary/trade

21   secret information.  (Id.)  Defendant argues that it is overbroad to request "all documents," and

22   that the interrogatory is vague as to what "prepared" means.  (ECF No. 159 at 24.)  Defendant

23   also argues that whatever documents were "prepared" in response to the consent order are not

24   relevant to the claims or defenses in this particular case, which involves only plaintiff and his

25   particular loans.  Defendant argues that it raised these issues to plaintiff during the meet and

26   confer process, but that plaintiff refused to revise his interrogatory in any way.  (Id.)  Defendant

27

28   [7]  Given that the undersigned denies plaintiff's motion with respect to Interrogatory No. 18, the
     undersigned declines to construe the interrogatory as three separate interrogatories at this time.

15

1    also argues that because plaintiff is not an intended third party beneficiary to the agreement, he

2    cannot assert the agreement or collect documents "prepared" in response to the agreement

3    because this litigation does not involve that agreement.  (Id.)

4         Plaintiff argues, among other things, that defendant's response is "evasive and

5    incomplete."  (ECF No. 159 at 23-24.)

6         As discussed on the record during the hearing, plaintiff's motion is denied with respect to

7    Interrogatory No. 19.  The request is overbroad, vague as to "prepared," and plaintiff has not

8    articulated a compelling ground for the relevance of the requested information to this particular

9    case.  Thus, the court need not reach defendant's "third party beneficiary" arguments.

10        E.  Plaintiff's Interrogatories, Set Two

11        As a previous order noted, plaintiff's central argument about his "second set" of

12   interrogatories is that defendant's late response thereto means that defendant has waived its

13   objections:

> [D]uring the meet and confer teleconference on April 16, 2013,
> plaintiff agreed to revise some of his interrogatories and defendant
> agreed to wait and respond to those revisions rather than to
> plaintiff's original interrogatories.[8]  (Declaration of David Newman
> ("Newman Decl."), ECF No. 149-1 at ¶ 2.)  A few weeks thereafter,
> plaintiff served the "second set" of interrogatories.   About two
> weeks later, on May 13, 2013, plaintiff served a draft motion to
> compel upon defendant and sought defendant's input in a Joint
> Statement regarding the disputes about the "first set" of
> interrogatories.  (ECF No. 145 at 14.)  Plaintiff filed his first motion
> to compel and a joint statement on June 4, 2013.  (ECF No. 145.)
> Plaintiff filed his second motion to compel responses to the "second
> set" just three days later on June 7, 2013, and did so without first
> seeking to meet and confer with defendant's counsel based on
> plaintiff's belief that defendant had failed to timely respond to the
> "second set" of interrogatories.  (ECF No. 146 at 2.)

22   (Order issued July 5, 2013, ECF No. 152 (denying plaintiff's motions to compel without

23   prejudice).)

24        Once again, plaintiff's entire argument — within the operative Joint Statement, that is —

25   regarding his second set of interrogatories is that defendant was three days late in serving its

---

[8]   The parties dispute the date the "second set" of interrogatories were served.  Defendant
previously asserted that plaintiff served the "second set" of interrogatories on May 6, 2013.  (ECF
No. 145 at 14.)  Plaintiff asserted that he served the "second set" of interrogatories upon
defendant by mail on May 1, 2013.  (ECF No. 146 at 2.)

1   responses, such that defendant has waived its objections.  (ECF No. 159 at 29.)  Plaintiff argues

2   that he served Set Two on May 1, 2013, that defendant's responses were due on June 3, 2013, and

3   that defendant actually served objections-only responses three days late, on June 6, 2013.  (Id.)

4        Plaintiff thus asks the court "to find that plaintiff . . . served plaintiff with a second set of

5   interrogatories on May 1, 2013," to find that defendant "agreed to respond to the second set

6   pursuant to FRCP 33 and that the limit to respond was June 3, 2013," and that defendant "did not

7   serve their responses until June 6, 2013," such that it has "waived all objections, including

8   whether the number of interrogatories have been exceeded in the first set of interrogatories."

9   (ECF No. 159 at 30.)

10        Plaintiff argues that "absent extension of good cause," failure to timely respond to

11   interrogatories waives objections thereto.  (Id. (citing Fed. R. Civ. P. 33(b)(4); Davis v. Fendler,

12   650 F.2d 1154, 1160 (9th Cir. 1981) ("Generally, in the absence of an extension of time or good

13   cause, the failure to object to interrogatories within the time fixed by [Federal Rule of Civil

14   Procedure] 33 constitutes a waiver of any objection.").)

15        Defendant summarily argues that all of its responses to the Set Two interrogatories are

16   sufficient and proper.  (ECF No. 159 at 31.)  Because neither party sets forth the interrogatories or

17   develops legal arguments thereon within the operative Joint Statement, however, any substantive

18   disputes about the Set Two interrogatories — other than plaintiff's "wavier of objections"

19   argument — have not been properly placed before the court at this time.  Accordingly, plaintiff's

20   motion is denied with respect to his Set Two interrogatories, except as expressly addressed below.

21        Moreover, given the confusion resulting from plaintiff's awkward attempt to "reword"

22   some of his Set One interrogatories and simultaneously to propound brand new interrogatories, all

23   under the heading of Set Two interrogatories, it is certainly understandable that defendant

24   legitimately failed to realize that plaintiff intended all Set Two interrogatories to constitute brand

25   new interrogatories with a new 30-day response deadline.  It is certainly possible that defendant

26   considered the Set Two interrogatories to amount to a pro se plaintiff's continued meet and confer

27   efforts regarding Set One.  Accordingly, "good cause" exists in which to grant defendant relief

28   from the waiver of any objections to the extent they were technically three days late.  Fed. R. Civ.

1   P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good

2   cause, excuses the failure.")  In any event, defendant has provided substantive responses to the

3   Set Two interrogatories.

4           As stated above, because the Set Two interrogatories were not individually discussed in

5   the operative Joint Statement, and because plaintiff's only argument addressed the potential

6   waiver of defendant's objections, the court declined to further address the individual

7   interrogatories in Set Two during the hearing.  However, the undersigned ordered plaintiff and

8   defense counsel to spend time in the jury room after the hearing to conduct further meet and

9   confer efforts regarding the Set Two interrogatories.  Following this in-person meet and confer

10  attempt, the parties asked the undersigned for clarification regarding four of the interrogatories in

11  Set Two, namely Nos. 21-24.  The court reconvened, and the parties went on record with their

12  request for the court's clarification.

13          Defendant argued that the court's denials of plaintiff's motion with respect to

14  Interrogatories Nos. 11 & 13 effectively amounted to denials of the similarly-worded

15  Interrogatories Nos. 21-24.  Plaintiff argued that the court's rulings with respect to Interrogatories

16  Nos. 11 & 13 did not amount to denials of Interrogatories Nos. 21-24 because the interrogatories

17  are not identical.  The court considered the parties' arguments and, for the reasons discussed on

18  the record during the hearing, determined that Interrogatories Nos. 22 & 23 were sufficiently

19  similar to Interrogatories Nos. 11 &13 such that, to the extent plaintiff intended to compel further

20  responses to Interrogatories Nos. 22 & 23, plaintiff's motion is denied.  With respect to

21  Interrogatories Nos. 21 & 24, however, the undersigned determined that those interrogatories

22  were sufficiently different from Interrogatories Nos. 11 & 13 such that defendant must provide

23  certain information in response to those interrogatories.  Defense counsel represented that

24  defendant has already provided responses to Interrogatories Nos. 21 & 24, and has produced

25  documents relating to the requested information.  Plaintiff represented that the only documents

26  produced are general corporate succession documents, none of which make specific mention of

27  his individual loans, and that no documents have been specifically *identified* as responsive to this

28  interrogatory.  Accordingly, as stated on the record, defendant is to provide supplemental

1    responses to Interrogatories Nos. 21 & 24 so as to specifically identify, with Bates-stamped

2    numbers, which produced documents respond to these particular interrogatories.

3        F.    Sanctions

4        Plaintiff asked that the court award him sanctions in light of various examples of alleged

5    "bad faith" by defense counsel.  (ECF No. 159 at 25-29, 31-34.)  In particular, plaintiff argues

6    that defendant has engaged in bad faith "includ[ing] perjury, misrepresentations, evasive

7    responses, and incomplete responses," and that defendant should be sanctioned.  (Id. at 31.)

8    However, plaintiff has not compellingly shown that sanctions are warranted here.  What appears

9    to have occurred are disagreements and misunderstandings that sometimes occur in the course of

10   civil discovery, and these misunderstandings have been exacerbated in this case due in part to

11   plaintiff's pro se status.  For instance, this particular discovery dispute began with significant

12   confusion — for the court and for the parties — regarding whether plaintiff's second set of

13   interrogatories amounted to an entirely new set of interrogatories or was intended as a mere

14   continuation of meet and confer efforts regarding plaintiff's first set of interrogatories.  For these

15   and the other reasons stated on the record during the hearing, the undersigned declines to award

16   the requested sanctions.

17       G.    Plaintiff Has Reached His Limit Of 25 Interrogatories

18       Plaintiff has now reached his 25-interrogatory limit.  Fed. R. Civ. P. 33(a).  As discussed

19   on the record during the hearing, between his first and second sets of interrogatories (with

20   interrogatories numbering 1 through 19 and 20 through 25, respectively), plaintiff has

21   propounded more than 25 interrogatories to date.  Further, as described above, some

22   interrogatories that are labeled as a single interrogatory actually amount to two interrogatories,

23   such as Interrogatory Nos. 3 & 17.  "Unless otherwise stipulated or ordered by the court, a party

24   may serve on any other party no more than 25 written interrogatories . . ."  Fed. R. Civ. P. 33(a).

25   Accordingly, plaintiff may not propound any "new" interrogatories absent a stipulation from

26   defendant, or, alternatively, absent plaintiff's significant showing to the court as to why

27   interrogatories in excess of the limit should be permitted and as to why such additional

28   interrogatories would be consistent with Federal Rule of Civil Procedure 26(b)(2).

19

For all the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Going forward in this case, the parties may not file any written discovery motions in this case without leave of court.  The new procedure for discovery disputes in this case will be as described above.  Discovery motions made outside the above-described process will be summarily denied.

2. Defendant's motion to strike (ECF No. 155) is denied without prejudice as premature.

3. Plaintiff's motion to compel further responses to interrogatories (ECF Nos. 158-59) is granted in part and denied in part.

    a.  Plaintiff's motion is partially granted with respect to Interrogatory No. 1.  Interrogatory No. 1 and all of its subparts shall be treated as one interrogatory.  However, defendant need not provide further responses to Interrogatory No. 1, as defendant has substantively responded to the interrogatory notwithstanding the "subparts" objection.

    b.  The parties are also ordered to meet and confer to ascertain whether alternate name spellings may reveal the correct identity of the witness plaintiff identified as "Carl Saris."  Similarly, defendant is ordered to provide contact information for individuals identified in defendant's records as having communicated with plaintiff about his requested modification(s) during the time period alleged in the operative pleading, even if such individuals are not specifically identified within Interrogatory No. 1.  However, such "contact information" need not include home addresses or other information for defendant's current employees, so long as those employees may be reached through defense counsel.

    c.  Plaintiff's motion is denied with respect to Interrogatory No. 3, as defendant represents that it will produce the credit report in question.  However, Interrogatory No. 3 will be treated as two interrogatories, the first targeting a credit report, the second targeting "other" documents, information, and the like, *aside from* the credit report in question.  The parties shall meet and confer

about exactly what plaintiff is seeking in the portion of the interrogatory targeting "any other" documents and information, and defendant shall provide a substantive response identifying the documents "upon which the loan denials were based."

d. Plaintiff's motion is granted with respect to Interrogatory No. 7. Defendant's response does not specifically identify any "documents" or other "information" that it used to conclude that plaintiff withdrew his application for a loan modification. The parties are ordered to further meet and confer to identify which produced documents are responsive to this interrogatory, and defendant is ordered to supplement its response so as to specifically identify the Bates-stamped numbers of the documents responsive to this interrogatory.

e. To the extent plaintiff intended his motion to compel further responses to Interrogatories Nos. 10 & 12, the motion is denied.

f. Plaintiff's motion is denied with respect to Interrogatory Nos. 11 & 13. Defendant's explanation of corporate succession adequately responds to the broad interrogatories. Plaintiff's argument that defendant's responses "are false" is not well-taken, and plaintiff has not compellingly explained how the stated responses are otherwise improper.

g. With respect to the "first half" of Interrogatory No. 17, the parties are ordered to further meet and confer so as to confirm whether plaintiff wants only a number, not details about the 728,000 other loans referenced in the request.

    i. If defendant argues that responding with the number of trial modifications that transformed into permanent modifications would cause defendant undue burden, defendant must actually *explain why* and provide details.

    ii. The "second half" of Interrogatory No. 17 regarding "revenues" shall hereafter be considered a second standalone interrogatory. At present, plaintiff's motion is denied as to the "revenues" portion of

Interrogatory No. 17, as plaintiff has not compellingly shown the relevance of this information.  However, if defendant's response to the first half of this interrogatory reveals additional grounds supporting the relevance of "revenues" that defendant earned from modifications, plaintiff may renew his request for a further response.

    h.  Plaintiff's motion is denied with respect to Interrogatory No. 18.

    i.  Plaintiff's motion is denied with respect to Interrogatory No. 19.

4.  With respect to the timeliness of defendant's objections to plaintiff's second set of interrogatories, "good cause" exists in which to grant defendant relief from the waiver of any objections.  Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.")  Given the meet and confer efforts preceding this dispute, it is certainly understandable that defendant legitimately failed to realize that plaintiff intended his Set Two interrogatories to constitute entirely new interrogatories.

5.  Interrogatories Nos. 22 & 23 are sufficiently similar to Interrogatories Nos. 11 &13 such that, to the extent plaintiff intended to compel further responses to Interrogatories Nos. 22 & 23, plaintiff's motion is denied.

6.  Defendant shall provide supplemental responses to Interrogatories Nos. 21 & 24 so as to specifically identify, with Bates-stamped numbers, which produced documents respond to these particular interrogatories.

7.  Sanctions are not awarded in connection with this discovery dispute.

////

////

////

////

////

////

////

8. Plaintiff has propounded more than 25 interrogatories upon defendant to date.  <u>See</u> Fed. R. Civ. P. 33(a).  Accordingly, plaintiff may not propound any "new" interrogatories absent a stipulation from defendant, or, alternatively, absent plaintiff's significant showing to the court as to why interrogatories in excess of the limit should be permitted and as to why such additional interrogatories would be consistent with Federal Rule of Civil Procedure 26(b)(2).

IT IS SO ORDERED.

Dated:  September 24, 2013

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE