UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNLY R. BECKER, ET AL., | No. 2:10-CV-02799-TLN-KJN |
| Plaintiffs, | |
| v. | **ORDER** |
| WELLS FARGO BANK, NA, INC. ET AL., | |
| Defendants. | |

This matter is before the Court pursuant to Plaintiff Dennly Becker's ("Plaintiff") Motion for Application for a Stay Pending Appeal. (ECF No. 208.) Defendant Wells Fargo, Bank, N.A., Inc. ("Defendant") has filed an opposition to Plaintiff's motion (Def's Opp'n, ECF No. 215), and Plaintiff has filed a reply (Pl's Reply, ECF No. 216). The Court has considered the arguments presented by both parties. For the reasons stated below, Plaintiff's Motion to Stay (ECF No. 208) is DENIED.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff lives at and owns both 5462 Betty Circle in Livermore, California and 604 Hardy Place in Lincoln, California. (Def's Statement of Undisputed Facts ("Def.'s SUF"), ECF No. 179-5 at ¶ 1; Decl. of David Newman ("Newman Decl."), ECF No. 179-1 at ¶ 2, Exhibit 1 (Deposition of Dennly Becker) at 37:1–21, 42:24–43:9).) Plaintiff also owns sixteen rental properties in

California, all of which he uses for investment purposes. (ECF No. 179-5 at ¶ 2; ECF No. 179-1 at ¶ 2, Exhibit 1 at 43:18–19, 45:13–20.) The present litigation concerns nine of Plaintiff's sixteen investment properties. (ECF No. 179-5 at ¶ 4.)

Plaintiff purchased the nine investment properties between 2000 and 2005 and financed the purchase of each property with a loan from World Savings Bank, FSB. (ECF No. 179-5 at ¶ 5; Decl. of Michael Dolan ("Dolan Decl."), ECF No. 179-2 at ¶ 14, Exhibits B–J, ECF No. 179-3.) In January of 2008, World Savings Bank, FSB changed its name to Wachovia Mortgage. (ECF No. 179-5 at ¶ 6.) Wachovia Mortgage later underwent a second name change to Wells Fargo Bank Southwest N.A. before merging with Wells Fargo Bank, N.A. in November of 2009. (ECF No. 179-5 at ¶ 6.)

The loans for each of Plaintiff's nine investment properties are memorialized by written promissory notes and are secured by recorded deeds of trust. (ECF No. 179-5 at ¶ 7; ECF No. 179-1 at ¶ 2, Exhibit 1 at 45:7–9; ECF No. 179-2 at ¶ 14; ECF No. 179-3.) Plaintiff is in default for the loans on three of the properties: 865 Shelborne Drive in Tracy, California ("Shelborne Property"); 2416 Third Street in Lincoln, California ("Third Street Property"); and 1895 Larkflower Way in Lincoln, California ("Larkflower Property"). (ECF No. 179-5 at ¶ 9; ECF No. 179-1 at ¶ 2, Exhibit 1 at 52:7–21.)

In August of 2008, prior to any loan defaults, Plaintiff requested that Wells Fargo modify the terms of his loans on his investment properties and was told at that time that there were no modification options for non-owner occupied investment properties. (ECF No. 179-5 at ¶ 13; ECF No. 179-1 at ¶ 4, Exhibit 3 at ¶ 1.) Plaintiff made no further attempts to modify the terms of any of the loans on his nine investment properties until after he had defaulted on the Shelborne Property loan more than one year later. (ECF No. 179-5 at ¶ 14; ECF No. 179-1 at ¶ 2, Exhibit 1 at 62:11–15.) Plaintiff had enough funds to make payments on the three defaulted loans, but made a business decision to default. (ECF No. 179-5 at ¶ 15; ECF No. 179-1 at ¶ 2, Exhibit 1 at 64:2–9, 65:1–3, 100:25–101:12.)

On November 4, 2009, after defaulting on the loan for the Shelborne Property, Plaintiff telephoned Defendant and communicated with a representative regarding the possibility of a loan

1  modification for the loans on his rental properties.  (ECF No. 179-5 at ¶ 25; ECF No. 179-1 at ¶ 2,
2  Exhibit 1 at 70:21–25, 76:19–23.)  During this conversation, Plaintiff verbally provided
3  Defendant's representative his financial information and discussed the possibility of a loan
4  modification.  Defendant's representative told Plaintiff that based on Plaintiff's verbal account of
5  his finances he would be eligible for a modification.  (ECF No. 179-1 at ¶ 2, Exhibit 1 at 74:12–
6  25, Exhibit 1 at 75:1–21, 96:2–23, 131:13–132:5.)  Defendant's representative also determined
7  that Plaintiff did not qualify for the federal Home Affordable Modification Program ("HAMP").
8  (ECF No. 179-5 at ¶ 26; ECF No. 179-2 at ¶ 16; 179-4 at 239.)

9       On or about November 21, 2009, Plaintiff received nine letters, each letter corresponding
10  to one of the loans for Plaintiff's nine investment properties, stating that Defendant was unable to
11  modify plaintiff's loans under HAMP.  (ECF No. 179-5 at ¶ 31.)  On or about November 24,
12  2009, Plaintiff received additional letters from Defendant stating that Plaintiff's request for a
13  modification on his loans for several of his properties, including the Larkflower Property and
14  Third Street Property, were denied because of something in his credit report.  (ECF No. 179-5 at ¶
15  33.)  On or about December 1, 2009, Plaintiff received a similar letter concerning the loan for the
16  Shelborne Property.  (ECF No. 179-5 at ¶ 33.)  On December 3, 2009, Plaintiff received a letter
17  from Defendant stating that the loan on the Shelborne Property had been approved for
18  foreclosure.  (ECF No. 179-1 at ¶ 2, Exhibit 1 at 83:7–9.)  On December 7, 2009, Plaintiff sent
19  Defendant a fax asking Defendant to work with him.  (ECF No. 185-3, Exhibit 13.)  By
20  December 12, 2009, Plaintiff had withdrawn his requests for loan modifications for all of the
21  loans on his investment properties except for the loan on the Shelborne Property, for which
22  Plaintiff continued his efforts to obtain a modification.  (ECF No. 179-5 at ¶ 34.)

23       On December 16, 2009, Plaintiff engaged in a phone conversation with Teo, one of
24  Defendant's agents.  (ECF No. 179-1 at ¶ 2, Exhibit 1 at 88:12–14.)  During this conversation,
25  Teo advised Plaintiff that his loan modification could not be approved because the income
26  information he had submitted showed that his income was too low.  (ECF No. 179-5 at ¶ 34; Pl.'s
27  SDF, ECF No. 184-1 at ¶ 22.)  Plaintiff told Teo that he could take money out of his Individual
28  Retirement Account ("IRA") and asked Teo if a withdrawal of $2,000 per month would be

1  adequate to make up for Plaintiff's stated income being too low. (ECF No. 179-5 at ¶ 37; ECF
2  No. 184-1 at ¶ 22.) Teo replied by stating that an additional $2,000 per month would make the
3  difference and encouraged Plaintiff to make the IRA withdrawals and reapply for a modification
4  when he had proof of the additional income; however, Teo did not specifically guarantee that
5  plaintiff would receive a loan modification. (ECF No. 179-1 at ¶ 2, Exhibit 1 at 89:5–10, 94:8–
6  95:5, 95:14–17.) Plaintiff took Teo's statements to mean that if he had an additional $2,000 in
7  monthly income, then he would receive a loan modification. (ECF No. 179-1 at ¶ 2, Exhibit 1 at
8  94:8–95:5.) Defendant never provided Plaintiff with anything in writing stating that Plaintiff's
9  withdrawals from his IRA would guarantee a loan modification. (ECF No. 179-5 at ¶ 39; ECF
10 No. 179-1 at ¶ 2, Exhibit 1 at 4–17.)

11 Around this time, Plaintiff's investments in his IRA were not returning any income. (ECF
12 No. 179-5 at ¶ 44, Third Am. Compl., ECF No. 98 at ¶ 62.) In subsequent months, Plaintiff also
13 indicated to the foreclosure trustee that he was planning on pulling money out of his IRA in order
14 to pay off his three loans that were in foreclosure. (ECF No. 179-5 at ¶ 43; ECF No. 179-1 at ¶ 2,
15 Exhibit 1 at 186:14–17.) Plaintiff made withdrawals of funds from his IRA for the next fourteen
16 months, until early 2011, resulting in a total withdrawal of $28,000. (ECF No. 179-5 at ¶¶ 43, 59;
17 ECF No. 179-1 at ¶ 2, Exhibit 1 at 118:12–119:10.)

18 Between January 2010 and August 2010, Plaintiff continued to communicate with
19 Defendant's representatives via phone and by submitting documents requested by Defendant in
20 an attempt to secure a loan modification. (ECF No. 179-5 at ¶ 47; ECF No. 179-1 at ¶ 2, Exhibit
21 1 at 95:18–25.) On March 10, 2010, Citibank sent a letter to Plaintiff stating that it was
22 suspending his Home Equity Line of Credit because delinquent credit obligations appeared on
23 Plaintiff's credit report, the delinquent credit obligation being Plaintiff's default on the Shelborne
24 Property loan. (ECF No. 184-1 at ¶ 51; ECF No. 179-5 at ¶¶ 19–20; ECF No. 179-1, Exhibit 29.)

25 On or about April 26, 2010, Plaintiff received from Defendant a forbearance agreement
26 for the loan on the Shelborne Property, which was sent to Plaintiff in order to determine his
27 willingness to make monthly mortgage payments on his loan and required Plaintiff to make three
28 monthly payments in conformity with the terms of the agreement. (ECF No. 179-5 at ¶ 52; ECF

4

No. 179-1, Exhibit 1 at 107:19–25.) The forbearance agreement permitted Plaintiff to apply for a permanent modification of the loan after all three payments had been made, but also required that Plaintiff provide further documentation of his financial information showing he qualified for such a modification. (ECF No. 179-5 at ¶ 54.) Plaintiff signed and returned the forbearance agreement on May 6, 2010. (ECF No. 179-5 at ¶ 53; ECF No. 179-1, Exhibit 1 at 109:12–14.) Plaintiff made all three payments listed in the forbearance agreement, but received another denial letter on August 17, 2010. (ECF No. 179-5 at ¶¶ 55–57; ECF No. 179-1, Exhibit 1at 115:9–10, 115:19–116:6.) After this denial, Plaintiff filed the present lawsuit on September 16, 2010. (ECF No. 179-1, Exhibit 1 at 166:7–17.)

A Notice of Default ("NOD") was posted on the Third Street Property and recorded with the Placer County Recorder's Office on September 23, 2010. (ECF No. 179-5 at ¶ 67; ECF No. 179-1, Exhibit 1 at 153:11–18.) A NOD was posted on the Shelborne Property and recorded with the San Joaquin County Recorder's Office on September 30, 2010. (ECF No. 179-5 at ¶ 67; ECF No. 179-1, Exhibit 1 at 153:11–18.) A NOD was posted on the Larkflower Property and recorded with the Placer County Recorder's Office on October 4, 2010. (ECF No. 179-5 at ¶ 67; ECF No. 179-1, Exhibit 1 at 153:11–18.)

On December 14, 2010, this Court granted Plaintiff's motion for injunctive relief in order to maintain the status quo while the merits of this case were decided. (ECF No. 179-5 at ¶ 69; Order Granting Pl.'s Mot. for Preliminary Injunction, ECF No. 21.) On February 27, 2014, Defendant moved for summary judgment. (ECF No. 179.) On August 7, 2014, Magistrate Judge Kendall Newman issued a finding and recommendation, recommending that Defendant's motion for summary judgment be granted in full and judgment entered for Defendant. (*See* F&R, ECF No. 197.) On September 9, 2014, this Court adopted Magistrate Judge Newman's finding and recommendation. (*See* Order, ECF No. 202.) Judgment was entered for Defendant, and this case was subsequently closed. (Judgment, ECF No. 203.) Plaintiff has filed an appeal with the Ninth Circuit. (Not. of Appeal, ECF No. 204.) On September 23, 2014, Plaintiff filed the instant motion to stay. (ECF No. 208.)

**II.     STANDARDS OF LAW**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the [p]laintiff is entitled to such relief." *Winter v. Natural Resources Defense Counsel, Inc.*, 555 U.S. 7, 22 (2008). The relevant factors in determining whether to 'restore' the preliminary injunction and 'stay' the judgment are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors are the most critical. *Nken v. Holder*, 556 U.S. 418, 434 (2009). " 'A stay is not a matter of right, even if irreparable injury might otherwise result.' " *Id.* at 433 (2009) (quoting *Virginian R. Co. v. U.S.*, 47 S. Ct. 222, 228 (1926). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (internal quotations omitted). The moving party bears the burden of showing that the circumstances justify an exercise of that discretion. *Id.* at 433–34.

**III.    ANALYSIS**

Plaintiff's arguments in support of injunctive relief parallel the arguments made in support of his summary judgment motion. The Court has ruled on these arguments, and therefore minimally revisits them within the context of its preliminary injunction/motion to stay analysis.

   A.     *Likelihood of Success*

In order for Plaintiff to prevail, he must show a likelihood of success on the merits. *Nken*, 556 U.S. at 434. "It is not enough that the chance of success on the merits be 'better than negligible.'" *Id.* More than a mere possibility of success is required for relief to be granted. *Id.* Here, the Court need not opine on Plaintiff's probability of success because the Court has already determined this case on the merits and granted Defendants summary judgment on all of Plaintiff's claims. (*See* Order Adopting F&R, ECF No. 202.) Plaintiff has not provided this Court with any information or case law that would support Plaintiff's request for a stay or persuade this Court that Plaintiff's appeal will be meritorious. Thus, the Court finds that this factor weighs in favor of

denying Plaintiff's motion.

### B.     *Irreparable Harm in the Absence of Preliminary Relief*

"A party moving for a stay pending appeal must show that irreparable harm is probable absent a stay.  If the party cannot make this showing, then a stay may not issue, regardless of the movant's proof regarding the other stay factors…. As controlling law dictates that a stay may not issue in cases, where, as here, the movant has failed to show probable irreparable harm, an analysis of the remaining factors is not necessary." *Brianna v. Pittsburg Unified Sch. Dist.*, No. 13-cv-04446-KAW, 2014 U.S. Dist. LEXIS 107849, at *3–4 (N.D. Cal. Aug. 5, 2014) (denying motion) (internal citation omitted).  "Economic injury alone does not support a finding of irreparable harm." *Rent-A-Center v. Canyon Television*, 944 F.2d 597, 603 (9th Cir. 1991).

Plaintiff's main contention is that "if the preliminary injunction is not restored, Wells Fargo will foreclose on Plaintiff's properties and Plaintiff will suffer irreparable injury." (ECF No. 208 at 12.)   The fact that a foreclosure is imminent does not in itself satisfy the irreparable harm standard.  "Whether a particular foreclosure constitutes irreparable harm turns in part on the reasons for foreclosure." *See Mandrigues v. World Sav., Inc.*, No. C 07-4497 JF (RS), 2009 WL 160213, at *3 (N.D. Cal. Jan. 20, 2009) (citing *Parker v. U.S. Dep't of Agric.*, 879 F.2d 1362, 1367–68 (6th Cir. 1989) (finding that foreclosure did not constitute irreparable harm where borrower declined to avail itself of remedies offered by lender)); *Alcaraz v. Wachovia Mortgage FSB*, No. CV F 08–1640 LJO, 2009 WL 30297, at *4 (E.D. Cal. Jan. 6, 2009) (denying motion for preliminary injunction because while the "loss of a home is a serious injury[,] .... the record suggests that [the plaintiff] sought a loan beyond her financial means and expectation of job loss[,] ... [and the] resulting harm does not alone entitle her to injunctive relief")).

Here, Plaintiff has defaulted on multiple rental properties that he owns.  Thus, the harm that Plaintiff asserts is not that of losing his home but rather the loss of financial gain from the rental properties. *See Rent-A-Ctr.*, 944 F.2d at 603.  Although Plaintiff would also stand to lose the properties themselves, this Court cannot find that a foreclosure of the property would cause Plaintiff irreparable harm in light of the Court's determination that Plaintiff cannot succeed on his claims.  The foreclosures are the result of Plaintiff's failure to make payments on the properties.

Under the circumstances, loss of the property is not irreparable injury. In fact, continuing to delay foreclosure after close to five years of litigation could cause irreparable harm to Defendants' interests. Thus, this factor weighs in favor of denying Plaintiff's motion.

### C. Balance of Equities (Whether a Stay Will Substantially Injure the Other Parties)

"The purpose of preliminary injunctive relief is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined." *Heflebower v. U.S. Bank Nat. Ass'n*, No. CV F 13-1121 LJO MJS, 2013 WL 3864214, at *18 (E.D. Cal. July 23, 2013) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, (1981)). Plaintiff fails to demonstrate that the balance of equities warrants his requested injunctive relief. In fact, the balance of equities weighs in Defendants' favor as the record suggests that Plaintiff has had access to the property and rental income from the property without payment of outstanding amounts owed. *See Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1210 (E.D. Cal. 2013) (finding that the balance of equities weighed in the defendants' favor where the plaintiffs had unauthorized access to the property without payment of outstanding amounts owed). Thus, this factor weighs in favor of denying Plaintiff's motion.

### D. Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)). "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr., So. Cal. v. Maxwell–Jolly*, 572 F.3d 644, 659 (2009) (internal quotation marks and citations omitted), *vacated and remanded on other grounds*, 132 S. Ct. 1204 (2012).

No meaningful public interest supports injunctive relief. Granting injunctive relief would be a disservice to the public interest by allowing Plaintiff to preclude foreclosure after this Court has already determined the merits of this case.

///

## IV. CONCLUSION

This Court has already ruled on the merits of Plaintiff's case and granted summary judgment for Defendants. Plaintiff has failed to satisfy the relevant factors to 'restore' the preliminary injunction and 'stay' the judgment. Neither Plaintiff nor the record suggests a fair chance of success on the merits or irreparable harm. As such, Plaintiff's Motion for Application for a Stay Pending Appeal (ECF No. 208) is DENIED.

IT IS SO ORDERED.

Dated: March 4, 2015

Troy L. Nunley
United States District Judge