1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DENNLY R. BECKER, et al.,                    No. 2:10-cv-2799-TLN-KJN PS

12              Plaintiffs,

13        v.                                       ORDER AND

14   WELLS FARGO BANK, N.A., et al.,               FINDINGS AND RECOMMENDATIONS

15              Defendants.

16

17        Presently before the court is defendants Wells Fargo Bank, N.A. and Wachovia Mortgage

18   Corporation's ("defendant")[1] motion to disburse the bond funds held by the court with regard to

19   the now-terminated preliminary injunction that was ordered to prevent the foreclosure and sale of

20   the three properties at issue in this action during the pendency of this case.[2]  (ECF No. 250.)  Also

21   before the court is plaintiff Dennly Becker's ("plaintiff") motion to settle the record in this matter

22   pursuant to Federal Rule of Appellate Procedure 10(e) in order to include plaintiff's Statement of

23

24   _____

25   [1] Defendant Wachovia Mortgage Corporation underwent a name change to Wells Fargo Bank
     Southwest N.A. before merging with defendant Wells Fargo Bank, N.A. in November of 2009.
26   (ECF No. 179-5 at ¶ 6.) Because of this merger, the court refers to both defendants named in this
     action as a single entity.
27
     [2] This action proceeds before the undersigned pursuant to Eastern District of California Local
28   Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

                                                    1

Disputed Facts ("SDF")[3] plaintiff claims he filed in paper with the Clerk of Court on March 27, 2014, in connection with his opposition to defendant's motion for summary judgement that plaintiff claims was never docketed despite being considered by the court when deciding defendant's motion for summary judgment.  (ECF No. 253.)  Plaintiff filed an opposition and defendant filed a reply with regard to defendant's motion.  (ECF Nos. 257, 258.)  Defendant filed an opposition to plaintiff's motion.  (ECF No. 256.)   The undersigned has fully considered the parties' briefs and appropriate portions of the record.[4]  For the reasons that follow, the undersigned recommends that defendant's motion be granted.  Furthermore, plaintiff's motion is granted.

I.      Relevant Background[5]

        Plaintiff initiated this action against defendant in the San Joaquin County Superior court on September 15, 2010, alleging four state law causes of action based on fraud and violations of California's Business and Professions Code against defendant concerning defendant's actions in connection with plaintiff's mortgage loan modification efforts for three rental properties located at 865 Shelborne Drive in Tracy, California ("Shelborne Property"); 2416 Third Street in Lincoln, California ("Third Street Property"); and 1895 Larkflower Way in Lincoln, California ("Larkflower Property").  (ECF No. 1-1.)  Defendant removed this case to this court on October 15, 2010, and plaintiff subsequently filed a motion for preliminary injunction that sought to enjoin defendant from foreclosing on the three properties at issue in this litigation.  (ECF Nos. 1, 14.)

        On December 14, 2010, the presiding District Judge granted plaintiff's motion for preliminary injunction and enjoined defendant from foreclosing on the Shelborne Property, the

---

[3] The full title of the document plaintiff claims to have filed with the court is "Statement of Disputed Facts in Support of Plaintiff's Opposition to Wells Fargo's Motion for Summary Judgment or in the Alternative Summary Adjudication."

[4] Both motions were submitted on the record and briefs without oral argument pursuant to Local Rule 230(g).  (ECF No. 259.)

[5] Because the parties are familiar with the factual background of this case, the court relates only those facts relevant to the present motions.

1   Third Street Property, and the Larkflower Property during the pendency of this action.  (ECF No.

2   21.)  Pursuant to this injunction, plaintiff was ordered to post bond in the amount of $500.00

3   within 14 days.  (Id.)  Plaintiff timely posted this amount.

4         On July 23, 2012, defendant filed a motion to modify the preliminary injunction to require

5   plaintiff to post additional bond funds in order to further protect against defendant's potential

6   harm if it were decided that defendant had been improperly enjoined.  (ECF No. 107.)  The

7   District Judge granted this motion on September 18, 2012 and ordered that the preliminary

8   injunction be modified to read:  "Plaintiff SHALL POST BOND in the amount of $3,645 per

9   month (or such other amount as the parties may agree to in writing, in the event plaintiff's tenants

10  move out), to be posted no later than the fourteenth calendar day of each month, until further

11  order of this court."  (ECF No. 121 at 2.)  The modified monthly bond amount was based on

12  plaintiff's representation that the amount equaled the combined monthly rental income he

13  obtained from the three properties at issue in this action.  (Id. at 1.)  Plaintiff began making the

14  modified monthly bond deposit in October of 2012, and continued to make monthly deposits in

15  the amount of $3,645 until October of 2014.  In total, plaintiff paid $91,625.00 towards the

16  injunction bond.[6]

17        On August 7, 2014, the undersigned issued findings and recommendations recommending

18  that defendant's motion for summary judgment be granted, that judgment in this case be entered

19  for defendant, and that this case be closed.  (ECF No. 197.)  The District Judge adopted these

20  findings and recommendations in full on September 9, 2014, and entered judgment for defendant.

21  (ECF Nos. 202, 203.)  Plaintiff subsequently appealed this judgment to the Ninth Circuit Court of

22  Appeals.  (ECF No. 205.)  On September 23, 2014, plaintiff filed a motion for restoration of the

23  preliminary injunction pending plaintiff's appeal of this action.  (ECF No. 208.)  On March 5,

24  2014, the District Judge denied plaintiff's motion to restore the preliminary injunction.  (ECF No.

25  236.)  Defendant subsequently filed the present motion for disbursement of bond funds.  (ECF

26  No. 250.)

27

28  ───────────────
[6] $500 initial bond payment + ($3,645 per month modified payment x 25 months) = $91,625.00.
But see the discussion below regarding the timing of the last two payments.

3

1    II.    Defendant's Motion for Disbursement of Bond Funds

2            Defendant requests in its motion that the court issue an order pursuant to Federal Rule of

3    Civil Procedure 65(c) and Local Rule 150(h)[7] directing the Clerk of Court to disburse to

4    defendant $91,635.00 in bond funds deposited over the course of this litigation in connection with

5    the preliminary injunction that plaintiff was granted on December 14, 2010, and that was

6    terminated on September 9, 2014, when judgement was entered in defendant's favor.

7            Rule 65(c) of the Federal Rules of Civil Procedure provides:

8            No restraining order or preliminary injunction shall issue except upon the giving of
9            security by the applicant, in such sum as the court deems proper, for the payment
             of such costs and damages as may be incurred or suffered by any party who is
10           found to have been wrongfully enjoined or restrained.

11   Fed. R. Civ. P. 65(c).  "Under this rule, before a court may execute a bond, it must find the

12   enjoined or restrained party was 'wrongfully enjoined or restrained.'"  Nintendo of Am., Inc. v.

13   Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir. 1994).  "[A] party has been wrongfully

14   enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all

15   along to do what it was enjoined from doing."  Id.

16           After it has been determined that the moving party has been wrongfully enjoined, the

17   court must next determine whether that party is "entitled to have the bond executed in its favor."

18   Id.  "An improperly enjoined party may not demand damages on the bond simply because the

19   injunction was improperly granted."  Matek v. Murat, 862 F.2d 720, 733 (9th Cir. 1988).  Indeed,

20   the party "must demonstrate injury as a consequence of the injunction."  Id.  Nevertheless, the

21   Ninth Circuit Court of Appeals has held that "there is a rebuttable presumption that a wrongfully

22   enjoined party is entitled to have the bond executed and recover provable damages up to the

23   amount of the bond."  Nintendo, 16 F.3d at 1036.  This rebuttable presumption exists in order to

24   "discourage[e] parties from requesting injunctions based on tenuous legal grounds" and ensures

25   that "the party enjoined will usually recover damages," thereby compensating a wrongfully

26

27   [7] Local Rule 150(h) states in relevant part:  "At such time as registry funds are to be disbursed, an
     Order for Disbursement shall be presented to the Court before whom the action is pending for
28   approval and signature."

                                                        4

1    enjoined party for the injuries it suffered by not being able to engage in the activity it was

2    wrongfully enjoined from carrying out.  Id. at 1037; see also Newspaper & Periodical Drivers' &

3    Helpers' Union, Local 921 v. San Francisco Newspaper Agency, 89 F.3d 629, 631 (9th Cir.

4    1996).  "Damages on an injunction bond are limited to those actually and proximately resulting

5    from the effect of the injunction itself, as opposed to litigation expenses independent of the

6    injunction." Sionix Corp. v. Moorehead, 299 F. Supp. 2d 1082, 1086 (S.D. Cal. 2003) (citing

7    Matek, 862 F.2d at 733).

8           Even though there is a presumption that an improperly enjoined party is entitled to

9    execution on the bond, "[t]his standard 'provides an equitable means by which courts can decline

10   to impose damages on the rare party who has lost a case on the merits but nevertheless should not

11   suffer the execution of the preliminary injunction bond.'" Sionix Corp. v. Moorehead, 299 F.

12   Supp. 2d 1082, 1086 (S.D. Cal. 2003) (quoting Nintendo, 16 F.3d at 1037).   However, the court

13   will not exercise this discretion to deviate from the general presumption unless the case presents

14   particularly good reasons for doing so, such as when the wrongfully enjoined party fails to

15   mitigate its damages resulting from the preliminary injunction.  Id. (citing Coyne–Delany Co. v.

16   Capital Dev. Bd. of the State of Illinois, 717 F.2d 385, 392 (7th Cir.1983)).

17          Here, defendant claims that it was wrongfully enjoined by the preliminary injunction that

18   was issued on December 14, 2010, because the court's grant of summary judgment in this action

19   in defendant's favor demonstrates that defendant had the right all along to foreclose on the three

20   properties at issue in this action.  The court further affirmed this right when it declined plaintiff's

21   request to "restore" the preliminary injunction during the pendency of plaintiff's appeal of this

22   action.  (ECF No. 236.)  The undersigned concurs that the record makes clear that defendant was

23   wrongfully enjoined by the preliminary injunction.  Accordingly, defendant successfully

24   demonstrates that it meets the first requirement for the court to grant its request to disburse the

25   bond funds held in connection with the preliminary injunction.

26          Next, defendant must demonstrate that it is "entitled to have the bond executed in its

27   favor" by proving that it suffered damages in the amount of the bond as a result of being

28   improperly enjoined.  Nintendo, 16 F.3d at 1036; Matek, 862 F.2d at 733.  Defendant contends

1   that it is entitled to the entire bond amount posted by plaintiff because it has suffered damages

2   well exceeding this amount as a result of the improper preliminary injunction.  Defendant claims

3   that the delay in its ability to foreclose on and sell the three properties at issue in this action has

4   resulted in a loss of the interest that accrued on the mortgages for the three properties during the

5   time the preliminary injunction was in place that was not fully offset by the sale of the properties

6   after the preliminary injunction had been terminated.  Defendant argues that had it not been

7   enjoined, it could have foreclosed on and sold the three properties back in 2010 without suffering

8   the accrual of additional unpaid interest on each mortgage.

9          As an initial matter, the court notes that the $91,635.00 amount defendant claims to have

10   been deposited as bond funds is inaccurate.  A review of the docket shows that $91,625.00 has

11   been deposited in conjunction with the injunction bond.  More importantly, the docket reflects

12   that plaintiff made two $3,645.00 payments after judgment was entered on September 9, 2014.

13   The judgment in defendant's favor automatically terminated the preliminary injunction on

14   September 9, 2014.  Plaintiff's two additional payments were made on September 11, 2014, and

15   October 14, 2014, respectively, and both payments were posted to cover time periods after the

16   September 9, 2014 judgment date.  Accordingly, defendant is not entitled to these additional

17   payments as part of the bond for which it may recover.  The maximum amount of the bond to

18   which defendant may prove itself entitled is $84,335.00.

19          In support of its argument that it is entitled to the entirety of the bond funds, defendant

20   provides evidence of its loss with regard to each of the three properties resulting from the

21   improper injunction.  With respect to the Shelborne Property, defendant provides a copy of a

22   payoff statement for the property that shows that as of November 16, 2010, just under one month

23   prior to the date the preliminary injunction was ordered, the total amount plaintiff owed defendant

24   under the mortgage was $299,879.36.  (Decl. of Robert A. Bailey ("Bailey Decl.") at ¶ 3, Exhibit

25   2 (ECF No. 250 at 8, 19).)  Defendant also provides a copy of the trustee's deed upon sale for the

26   Shelborne Property that indicates that the outstanding debt plaintiff owed on the mortgage for that

27   property was $381,301.98 at the time of its sale on November 6, 2014, when the property was

28   ////

6

1  sold for $292,700.00.  (ECF No. 151-1, Exhibit A.)[8]  These documents indicate that defendant

2  suffered a loss of roughly $80,000 in additional interest on the mortgage it held against the

3  Shelborne Property that had accrued during the time it was enjoined from foreclosure by the

4  preliminary injunction.  Had defendant not been wrongfully enjoined from foreclosing on the

5  property at the time the injunction was issued in late 2010, the roughly 4 years' worth of

6  additional unpaid interest would not have accrued.

7        With regard to the Third Street Property, defendant similarly provides a copy of a payoff

8  statement for the property that shows that as of November 16, 2010, the total amount plaintiff

9  owed defendant under the mortgage was $295,397.92.  (Bailey Decl. at ¶ 3, Exhibit 4 (ECF No.

10  250 at 8, 30).)  A copy of the trustee's deed upon sale for this property dated February 26, 2015,

11  demonstrates that plaintiff's unpaid mortgage debt on that date was $375,827.97 and that this

12  property was sold for $280,083.00.  (ECF No. 151-1, Exhibit B.)  As with the documents

13  defendant submits with respect to the Shelborne Property, these documents demonstrate that

14  defendant sustained a loss of roughly $80,000 in additional interest that accrued on the mortgage

15  for this property during the period the injunction was in effect.

16        Finally, defendant states that while it has not yet foreclosed on the Larkflower Property, it

17  still lost the additional interest that accrued during the imposition of the injunction.  In support of

18  this argument, defendant provides a copy of a payoff statement for the property that shows that as

19  of November 17, 2010, plaintiff owed a total of $289,292.24, had a principal balance on loan of

20  $272,986.96, and was required to pay an interest rate of 7.04%.  (Bailey Decl. at ¶ 3, Exhibit 3

21  (ECF No. 250 at 8, 25).)  The document indicates that the interest on the principal balance

22

23  [8] Defendant requests that the court take judicial notice of the following:  (1) the Trustee's Deed
    Upon Sale for the Shelborne Property dated November 13, 2014, and recorded on November 20,
24  2014, in the official records of the Placer County Recorder as Document No. 2014-117451, and
    (2) Trustee's Deed Upon Sale for the Third Street Property dated February 26, 2015, and recorded
25  on March 3, 2015, in the official records of the Placer County Recorder as Document No. 2015-
    0015128-00.  (ECF No. 251.)  Plaintiff does not object to this request.  These documents are
26  appropriate for judicial notice because they are public records that are "not subject to reasonable
    dispute."  Fed. R. Evid. 201(b); see also Austin v. Ocwen Loan Servicing, LLC, 2014 WL
27  3845182, at *1 (E.D. Cal. Aug. 1, 2014) (granting request for judicial notice of deed of trust and
    trust transfer deed).  Accordingly, defendant's request is granted.
28

1   accrued at a rate of $52.65 per diem.  (Id.)  Defendant claims that when this per diem amount is

2   multiplied by the 1,364 days between December 14, 2010, the date the injunction was ordered,

3   and September 9, 2014, the date the injunction was terminated by the entry of judgment in

4   defendant's favor, $71,814.60 in additional unpaid interest accrued on the mortgage for this

5   property.  Defendant has not yet attempted to foreclose on this property despite having had the

6   ability to do so since the judgment was entered in its favor.  However, plaintiff indicates in his

7   opposition that defendant has not done so because the two parties have been negotiating a

8   possible modification of the terms of the mortgage in order to allow plaintiff to keep the property

9   while paying the interest that has accrued during the time the injunction was in effect.  (ECF No.

10  257 at 9.)  Therefore, there is no indication that defendant has failed to reasonably mitigate its

11  damages on this mortgage at this juncture.  Furthermore, there is no indication in the parties'

12  briefing that the alleged modification efforts being advanced by plaintiff will result in an actual

13  modification of the loan that would recompense defendant for the interest that accrued during the

14  time the injunction was in place.  Therefore, defendant also demonstrates that it has lost roughly

15  $70,000 in additional unpaid interest on the Larkflower Property.

16        In sum, defendant demonstrates that it has suffered damages as a result of being

17  improperly enjoined in the form of lost interest that far exceeds the total bond amount.  Even if

18  the amount of interest on the unsold Larkflower Property is removed from the equation, and a

19  conservative estimate is used to determine the amount of additional unrecompensed interest that

20  accrued on the other two properties while the injunction was in place,[9] it is clear that the amount

21  of additional interest defendant lost as a result of being improperly enjoined far exceeds the

22  amount of the cash bond posted by plaintiff.  Accordingly, defendant demonstrates that it is

23

24  [9] Because the evidence defendant provides in support of its contention with respect to the two
    foreclosed properties demonstrates only the amounts owed on the mortgages about a month prior
25  to the imposition of the injunction and 2-to-4 months after the injunction was lifted, the specific
    amounts of lost interest defendant claims with respect to each loan does not perfectly reflect the
26  actual interest that accrued during the injunction's duration.  Nevertheless, even a conservative
    estimate of the actual amount of interest that accrued during the exact period the injunction was in
27  place indicates that defendant's loss as result of the injunction far exceeds the maximum of
    $84,335.00 in bond funds that defendant could claim.
28

1    presumptively entitled to disbursement of the entire bond amount.  See <u>Nintendo</u>, 16 F.3d at

2    1036.

3           Nevertheless, plaintiff asserts in his opposition that defendant's motion for disbursement

4    was filed in bad faith and, therefore, should be totally denied.  Plaintiff first claims that defendant

5    is trying to deceive the court that it suffered damages equal to or in excess of the total bond

6    amount because defendant did not disclose in its motion that it was the highest bidder and

7    purchaser of the Third Street Property at the February 26, 2015 sale, and that it later sold that

8    property to a third party for an amount greater than its purchase price just prior to filing its motion

9    for disbursement.  Plaintiff claims that the sale of this property to the third party significantly

10   mitigated any damages defendant may have suffered as a result of the preliminary injunction

11   because defendant obtained a profit through this sale.  However, this argument appears to be

12   based purely on plaintiff's own guesswork as to the price at which defendant sold the property to

13   the third party because plaintiff admits that he is unaware of the amount for which defendant

14   actually sold the property.

15          Moreover, even assuming plaintiff's claims regarding the later sale to a third party are

16   true, this alleged fact does not nullify the fact that defendant still lost roughly $80,000 in unpaid

17   interest that had accrued during the time the injunction was in effect through the February 26,

18   2015 foreclosure sale.  Under California's non-judicial foreclosure law, the mortgage defendant

19   held against plaintiff with regard to this property was deemed satisfied in full at the time

20   defendant purchased the property at the February 26, 2015 foreclosure sale despite the fact that it

21   purchased the property for far less than the $375,827.97 plaintiff owed on the mortgage at that

22   time.  <u>See</u> Cal. Code of Civ. Proc. § 580d(a).  Defendant could not seek out a deficiency judgment

23   against plaintiff to obtain the amount it lost on the mortgage, <u>id.</u>, and much of the deficiency was

24   a result of the additional interest that accrued during the time the injunction was in place.  The

25   loss defendant suffered as a result of being unable to foreclose before the additional interest had

26   accrued was realized at the time of the foreclosure sale.  It is of no consequence that defendant

27   later sold the property to a third party for an alleged profit.  Therefore, defendant's omission of

28   the fact that it later sold the property to a third party was not done in bad faith because it is

1   irrelevant to the issue presented by defendant's motion.  Furthermore, plaintiff's argument fails to

2   rebut the fact that defendant's motion demonstrates that defendant suffered damages in the form

3   of lost interest with regard to the Third Street Property.

4          Plaintiff also argues that defendant improperly seeks to obtain a retroactive increase in the

5   bond amount it may recover.  Generally, a wrongfully enjoined party may not recover damages in

6   excess of the bond amount.  Sprint Communications Co. L.P. v. CAT Communications Int'l, Inc.,

7   335 F.3d 235, 240 (3d Cir. 2003).  In this case, however, defendant clearly states that it seeks to

8   recover only the bond funds already held by the court and nothing more.  (See ECF No. 250 at 5.)

9   Accordingly, plaintiff's argument lacks merit.

10         Next, plaintiff argues that defendant's use of non-judicial foreclosure to sell the Shelborne

11  and Third Street properties means that defendant could not have suffered damages in the form of

12  the interest accruing on the loans for these properties because that interest was extinguished

13  pursuant to California Code of Civil Procedure § 580d.  Plaintiff claims that defendant's motion

14  to obtain the bond amount with respect to these two properties is merely an improper attempt to

15  indirectly obtain the extinguished unpaid interest on these loans.

16         Plaintiff is correct that, pursuant to California Code of Civil Procedure § 580d, a

17  mortgagee who forecloses on a mortgage via a non-judicial sale generally may not recover a

18  deficiency judgment for the portion of the mortgage debt not covered by the sale price.  Cal. Code

19  Civ. P. § 580d(a).  However, "California's antideficiency laws do not preclude a creditor from

20  pursuing all security given to collateralize an indebtedness."  Hodges v. Mark, 49 Cal. App. 4th

21  651, 656 (1996).  Subparagraph (b) of § 580d sets forth an exception to the general anti-

22  deficiency rule for "guarantor[s], pledgor[s] or other sureties with respect to the deficiency."  Id.

23  § 508d(b).  This exception allows such creditors to satisfy a liability they have with respect to the

24  deficiency "in whole or in part from other collateral pledged to secure the obligation that is the

25  subject of the deficiency."  Id.  Here, the bond defendant seeks to have disbursed was posted in

26  order to secure against future harm defendant could suffer as a result of being wrongfully

27  enjoined from foreclosing on the three properties at issue in this action.  In other words, the bond

28  constituted "other collateral" that was pledged to secure defendant's interest in the properties that

10

1    are the subject of the deficiency.  Therefore, the bond falls within the type of liability excepted

2    from the general antideficiency rule by § 508d(b) and defendant may recover this amount

3    regardless of the fact that it has foreclosed on two of the properties at issue in this matter for less

4    than plaintiff's unpaid debt on those properties.

5         Finally, plaintiff asserts that defendant fails to prove its damages with regard to the

6    Larkflower Property because instead of foreclosing on the mortgage on that property, defendant

7    decided to work with plaintiff to modify the terms of the loan in a manner that incorporates the

8    interest that has accrued in the time since the preliminary injunction was ordered.  Plaintiff claims

9    that this potential future modification means that defendant will not be damaged by the unpaid

10    interest because defendant would stand to recover the entire loan amount including any accrued

11    interest if the modification were granted.  However, plaintiff's assertion is based on pure

12    speculation that not only will a modification of this loan occur, but that defendant will ultimately

13    be compensated for the total amount of the interest that accrued while the preliminary injunction

14    was in effect.  Moreover, even if it were assumed that a loan modification will occur and

15    defendant will recover all outstanding debt on this mortgage, the interest amount defendant

16    proves it has lost with regard the other two properties at issue in this action still exceeds the

17    $84,335.00 to which defendant may claim.

18         Plaintiff's opposition fails to rebut the presumption that defendant is entitled to

19    disbursement of the entire bond amount for the damages it demonstrates it suffered as a result of

20    being wrongfully enjoined.  Accordingly, the undersigned recommends that the Clerk of Court be

21    directed to disburse $84,335.00 in bond funds to defendant.  The undersigned further

22    recommends that the Clerk of Court be directed to refund to plaintiff any funds remaining in the

23    preliminary injunction bond account after the disbursement to defendant.

24    III.     <u>Plaintiff's Motion to Settle the Record</u>

25         Also before the court is plaintiff's motion to settle the district court record.  (ECF No.

26    253.)  Through this motion, plaintiff requests the court to exercise its discretion pursuant to

27    Federal Rule of Appellate Procedure 10(e) to correct the docket by including a copy of plaintiff's

28    SDF he claims was filed with the court on March 27, 2014, and served on defendant as part of his

11

1    opposition to defendant's motion for summary judgment, but was never actually docketed on the

2    court's ECF system.  Plaintiff further contends that he also provided the undersigned with a

3    courtesy copy of his SDF for consideration when deciding defendant's motion for summary

4    judgment, which the undersigned referred to throughout the findings and recommendations issued

5    on August 7, 2014.  Finally, plaintiff claims that while a document docketed at ECF No. 184-1 is

6    titled as plaintiff's "Statement of Disputed Facts," it is actually a copy of plaintiff's exhibits 3

7    through 8 in support of plaintiff's opposition to defendant's motion to dismiss and appears to

8    have been docketed in error.  Attached to plaintiff's motion are two copies of the SDF plaintiff

9    requests to have docketed.  (ECF No. 253, Exhibits 1, 3.)

10           Defendant notes in its opposition to plaintiff's motion that it "has no objection, per se, to

11   Plaintiff's request to settle the record as to his [SDF]."  (ECF No. 256 at 1.)  Nevertheless,

12   defendant opposes plaintiff's motion on the ground that plaintiff appears to seek to add to the

13   record versions of his SDF that differ from the one originally served on defendant and

14   purportedly filed with the court.  Defendant contends that neither version of the SDF plaintiff

15   proffers with his motion are the true and correct copy of the SDF plaintiff served on defendant

16   and purportedly filed with the court because one copy contains marginalia and other markings

17   that do not appear on the version originally served on defendant and the other copy is not signed

18   by plaintiff.  Defendant states that other than its objection to docketing the versions of the SDF

19   provided by plaintiff, it does not oppose the court granting plaintiff's motion provided that the

20   court is able to docket a true and correct copy of the SDF that was actually provided to the court

21   in connection with plaintiff's opposition to defendant's motion for summary judgment.

22           Plaintiff admits in his motion that the two versions of the SDF attached to his motion are

23   different from the one he claims to have filed with the court in the ways described in defendant's

24   opposition.  Nevertheless, plaintiff requests in the alternative that the court order that a copy of

25   the SDF that plaintiff originally filed with the Clerk of Court on March 27, 2014, be docketed if it

26   determines that neither copy of the SDF attached to plaintiff's motion is sufficient because of

27   their differences to the copy considered by the court.

28   ////

1

Rule 10 (e) of Federal Rules of Appellate Procedure provides in pertinent part:

2

(e) Correction or Modification of the Record.

3

4

(1) If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.

5

6

(2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:

7

8

(A) on stipulation of the parties;

9

(B) by the district court before or after the record has been forwarded; or

10

(C) by the court of appeals.

11

12

(3) All other questions as to the form and content of the record must be presented to the court of appeals.

13

Fed. R. App. P. 10(e).  "Under Rule 10(e) it is clear that the district court may consider a motion

14

to correct the record even after appeal has been taken."  United States v. Mori, 444 F.2d 240, 246

15

(2d Cir. 1971).

16

Based on a review of the court's own records, it appears that plaintiff did in fact file a

17

copy of the SDF with the Clerk of Court on March 27, 2014, in connection with his opposition to

18

defendant's motion for summary judgment.  Furthermore, it also appears that a copy of plaintiff's

19

exhibits 3 through 8 in support of plaintiff's opposition to defendant's motion for summary

20

judgment were erroneously docketed with the title "Statement of Disputed Facts" in place of the

21

document plaintiff intended to serve as his SDF.  (See ECF No. 184-1.)  Furthermore, the

22

undersigned received a courtesy copy of plaintiff's SDF in connection with his opposition to

23

defendant's motion for summary judgment that appears to be the exact same document as the one

24

proffered as plaintiff's exhibit 3 to the present motion with the only differences being that

25

plaintiff signed the courtesy copy and not the copy presented with his present motion.  It is also

26

clear that the undersigned considered and referenced the document plaintiff intended to serve as

27

his SDF in the August 7, 2014 findings and recommendations.[10]  Nevertheless, because the copies

28

---

[10] While the undersigned relied on the courtesy copy of plaintiff's SDF in developing the findings

1    of the SDF plaintiff proffers with his motion differ from the copy considered by the court, the

2    court will not order that either version be docketed.  Instead, the court grants plaintiff's alternative

3    request that the copy filed with the Clerk of Court on March 27, 2014, be added to the record.

4           Given the apparent docketing error, the fact that the court considered and referenced the

5    SDF plaintiff requests to have added to the record, and defendant's non-opposition to the addition

6    of a true and correct copy of the SDF to the record, plaintiff's motion to settle the record is

7    granted.  Accordingly, the Clerk of Court is directed to replace the document currently docketed

8    as ECF No. 184-1 with the document entitled "Statement of Disputed Facts in Support of

9    Plaintiff's Opposition to Wells Fargo's Motion for Summary Judgment or in the Alternative

10   Summary Adjudication" filed by plaintiff in paper with the Clerk of Court on March 27, 2014.

11   IV.    Conclusion

12          Based on the foregoing, IT IS HEREBY ORDERED that:

13          1.     Plaintiff's motion to settle the record (ECF No.  253) is granted; and

14          2.     The Clerk of Court is directed to replace the document currently docketed as ECF

15   No. 184-1 with the document entitled "Statement of Disputed Facts in Support of Plaintiff's

16   Opposition to Wells Fargo's Motion for Summary Judgment or in the Alternative Summary

17   Adjudication" filed by plaintiff in paper with the Clerk of Court on March 27, 2014.

18          Furthermore, IT IS HEREBY RECOMMENDED that:

19          1.     Defendant's motion for disbursement of bond funds (ECF No. 250) be granted;

20          2.     The Clerk of Court be directed to disburse $84,335.00 of the preliminary

21   injunction bond funds to defendant Wells Fargo Bank, NA, Inc.; and

22          3.     The Clerk of Court be directed to refund to plaintiff Dennly R. Becker any funds

23   remaining in the preliminary injunction bond account after the disbursement to defendant.

24   ////

25   _____

26   and recommendation regarding defendant's motion for summary judgment and cited to the
     substance of that document on a number of occasions, the undersigned cited to the document filed

27   as plaintiff's "Statement of Disputed Facts" at ECF No. 184-1when referring to the SDF under
     the erroneous assumption that that document was a docketed copy of the document plaintiff

28   provided to the court as a courtesy copy.  (See, e.g., ECF No. 197 at 4, 9-11, 17, 20.)

1    These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

3    days after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6    shall be served on all parties and filed with the court within fourteen (14) days after service of the

7    objections.  The parties are advised that failure to file objections within the specified time may

8    waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

9    Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

10    IT IS SO ORDERED AND RECOMMENDED.

11   Dated:  June 9, 2015

12

13   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15